## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*,[1] | |
| Debtors. | |
| American Private Equity Partners II, LP, *et al.*, | Civil Action No. 22-cv-302-CFC |
| Petitioners, | Bankruptcy Case No. 12-11564 |
| v. | Adv. Proc. No. 21-51179-CSS |
| Catherine E. Youngman, Litigation Trustee For ASHINC Corporation, | |
| Respondent. | |

**RESPONSE OF CATHERINE E. YOUNGMAN, IN HER CAPACITY AS THE LITIGATION TRUSTEE AND PLAN ADMINISTRATOR FOR ASHINC CORPORATION, TO THE LP DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE PURSUANT TO 28 U.S.C. §157(d) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 5011**

---

[1]     The Debtors in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) (58-0360550); AAINC Corporation (f/k/a Allied Automotive Group, Inc.) (58-2201081); AFBLLC LLC (f/k/a Allied Freight Broker LLC) (59-2876864); ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company) (90-0169283); ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.) (58-1710028); AXALLC LLC (f/k/a Axis Areta, LLC) (45-5215545); AXCCO Canada Company (f/k/a Axis Canada Company) (875688228); AXGINC Corporation (f/k/a Axis Group, Inc.) (58-2204628); Commercial Carriers, Inc. (38-0436930); CTSINC Corporation (f/k/a CT Services, Inc.) (38-2918187); CTLLC LLC (f/k/a Cordin Transport LLC) (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582).   Debtors' address for service of process is 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

Jeffrey H. Zaiger
Judd A. Lindenfeld
ZAIGER LLC
2187 Atlantic Street, 9th Floor
Stamford, CT 06902
Tel.: (917) 572-7701
jzaiger@zaigerllc.com


Douglas J. Pepe
COHEN AND GRESSER LLP
800 Third Avenue
New York, NY 10022
Tel.: (212) 957-7605
dpepe@cohengresser.com

_/s/ Seth A. Niederman_
Seth A. Niederman (DE Bar No. 4588)
FOX ROTHSCHILD LLP
Citizens Bank Center
919 N. Market Street, Suite 300
Wilmington, DE 19801
Tel.: (302) 654-7444
Fax: (302) 656-8920
sniederman@foxrothschild.com

Steven F. Molo (*pro hac vice* pending)
Robert K. Kry (*pro hac vice* pending)
Justin M. Ellis (*pro hac vice* pending)
Ryan Yeh (*pro hac vice* pending)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Tel.: (212) 607-8160
rkry@mololamken.com

Jordan A. Rice (*pro hac vice* pending)
MOLOLAMKEN LLP
300 North LaSalle Street
Chicago, IL  60654
Tel.: (312) 450-6700

*Counsel for the Litigation Trustee and Plan Administrator*

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ................................................................................................. 1

SUMMARY OF ARGUMENT ............................................................................ 2

STATEMENT OF FACTS .................................................................................. 3

I.     Background .............................................................................................. 3

II.    Allied's Bankruptcy Proceeding and the Yucaipa Adversary Proceedings ...................... 5

     A.    The Adverse Decisions Against Yucaipa ............................................ 5

     B.    Yucaipa's Fraudulent Transfers ......................................................... 7

III.    The Adversary Proceeding To Enforce the Judgment ......................... 8

ARGUMENT ...................................................................................................... 9

I.     Mandatory Withdrawal of the Reference Does Not Apply .................. 9

II.    Permissive Withdrawal of the Reference Is Not Appropriate ........... 12

     A.    The Request for Permissive Withdrawal Is Premature ................... 13

     B.    The *Pruitt* Factors Weigh Against Withdrawal of the Reference ...... 15

          1.    Withdrawal Will Not Promote Judicial Economy .................. 16

          2.    The LP Defendants' Purported Right to a Jury Trial Does Not Warrant Withdrawal at This Early Stage ................................... 18

          3.    Withdrawal Will Not Promote Uniform Bankruptcy Administration ........................................................................... 19

          4.    The Motion Is an Attempt at Forum Shopping ....................... 19

          5.    Withdrawal Will Not Expedite the Bankruptcy Process ......... 20

          6.    The Request Is Premature ....................................................... 20

CONCLUSION .................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*In re AgFeed USA, LLC*, 565 B.R. 556 (D. Del. 2016) ................................................3, 15, 16, 20

*In re Allied Sys. Holdings Inc.*,
   556 B.R. 581 (D. Del. 2016) .....................................................................................6

*In re Am. Cap. Equip., LLC*,
   325 B.R. 372 (W.D. Pa. 2005) .................................................................................19

*In re Am. Classic Voyages Co.*,
   337 B.R. 509 (D. Del. 2006) ....................................................................................18

*Am. Tel. & Tel. Co. v. Merry*,
   592 F.2d 118 (2d Cir. 1979) .....................................................................................10

*In re Appleseed's Intermediate Holdings, LLC*,
   Civ. No. 11-807, 2011 WL 6293251 (D. Del. Dec. 15, 2011) .................................14

*In re Big V Holding Corp.*,
   CIV.A. 01-233, 2002 WL 1482392 (D. Del. July 11, 2002) ....................................18

*Boggs v. Boggs*,
   520 U.S. 833 (1997) ..................................................................................................12

*In re Boy Scouts of Am.*,
   Civil Action No. 21-392, 2021 WL 4775964 (D. Del. Oct. 13, 2021) .............13, 15

*In re Circle of Yoakum, Tex.*,
   No. Civ. A. 06-328, 2006 WL 2347710 (D. Del. June 23, 2006) .............................16

*Coar v. Kazimir*,
   990 F.2d 1413 (3d Cir. 1993) ...................................................................................10

*In re Cont'l Airlines*,
   138 B.R. 442 (D. Del. 1992) ......................................................................................9

*In re DBSI, Inc.*,
   478 B.R. 192 (Bankr. D. Del. 2012) ........................................................................18

*In re Direct Response Media, Inc.*,
   466 B.R. 626 (Bankr. D. Del. 2012) ........................................................................18

*In re Enron Corp.*,
    318 B.R. 273 (S.D.N.Y. 2004) .................................................................................18

*Feldman v. ABN AMBRO Mortg. Grp., Inc.*,
    No. 19-MC-131, 2020 WL 618604 (E.D. Pa. Feb. 10, 2020) ...................................13

*In re FormTech Indus., LLC*,
    439 B.R. 352 (Bankr. D. Del. 2010) .......................................................................14

*In re Goldschein*,
    241 B.R. 370 (Bankr. D. Md. 1999) .......................................................................11

*Hatzel & Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp.*,
    106 B.R. 367 (D. Del. 1989) ..............................................................................13, 14

*In re Homeland Stores, Inc.*,
    204 B.R. 427 (D. Del. 1997) ...................................................................................12

*In re Liberty State Benefits of Del. Inc.*,
    Civ. No. 14-677, 2015 WL 1137591 (D. Del. Mar. 12, 2015) ................................12

*Logan v. Westchester Fire Ins. Co.*,
    Civil Action No. 10-028, 2011 WL 13382328 (D. Del. Feb. 2, 2011) ....................14

*In re LTC Holdings, Inc.*,
    C.A. No. 18-1987, 2019 WL 4643801 (D. Del. Sept. 24, 2019) ...........13, 18, 19, 20

*Mackey v. Lanier Collection Agency & Serv., Inc.*,
    486 U.S. 825 (1988) ................................................................................................10

*Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*,
    666 F.3d 68 (2d Cir. 2011) ......................................................................................10

*In re Millennium Lab Holdings II, LLC*,
    242 F. Supp. 3d 322 (D. Del. 2017) .......................................................................15

*N.Y. State Conf. of Blue Cross & Blue Shield Trib. Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995) ................................................................................................12

*In re Nortel Networks, Inc.*,
    539 B.R. 704 (D. Del. 2015) ....................................................................... *passim*

*O'Toole v. Arlington Tr. Co.*,
    681 F.2d 94 (1st Cir. 1982) .....................................................................................10

*In re Paragon Offshore PLC*,
    598 B.R. 761 (Bankr. D. Del. 2019) .......................................................................15

*In re Princeton Alt. Income Fund, LP*,
   Civil Action No. 18-9894, 2018 WL 4854639 (D.N.J. Oct. 4, 2018) ....................................20

*In re Pruitt*,
   910 F.2d 1160 (3d Cir. 1990)..............................................................................3, 13, 15, 20

*In re Resorts Int'l, Inc.*,
   372 F.3d 154 (3d Cir. 2004) ............................................................................................17

*Stern v. Marshall*,
   564 U.S. 462 (2011)........................................................................................................15

*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137 (2009).........................................................................................................14

*In re Truong*,
   285 F. App'x 837 (3d Cir. 2008) ....................................................................................17

*In re Vaughan Co., Realtors*,
   493 B.R. 597 (Bankr. D.N.M. 2013) .........................................................................10, 11

*Velis v. Kardanis*,
   949 F.2d 78 (3d Cir. 1991).............................................................................................11

*Wagner v. Galbreth*,
   500 B.R. 42 (D.N.M. 2013) ...........................................................................................11

## STATUTES

28 U.S.C. § 157(b)(3)...........................................................................................................13

28 U.S.C. § 157(c)(1)...........................................................................................................20

28 U.S.C. § 157(d)................................................................................................................12

29 U.S.C. § 1056(d)(1).....................................................................................................10, 11

6 Del. C. § 1304(a)(2) ............................................................................................................8

6 Del. C. § 1305(a) ................................................................................................................8

Catherine E. Youngman, in her capacity as the Litigation Trustee and Plan Administrator (the "Trustee") for ASHINC Corporation (formerly known as Allied Systems Holdings, Inc.) and related Debtors ("Allied," the "Company," or "Debtors"), respectfully submits this response to *LP Defendants' Motion to Withdraw the Reference* (the "Motion") [D.I. 1] in the above-captioned adversary proceeding (the "Adversary Proceeding").

## **INTRODUCTION**

This Adversary Proceeding is part of a complex and lengthy bankruptcy case. Compl. ¶94.[2] For nearly a decade, Debtors' creditors have been enmeshed in litigation against Allied's former controlling shareholder — Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. (together "Yucaipa") — for claims including equitable subordination, recovery and avoidance of fraudulent transfers, breach of contract, and breach of fiduciary duties. In 2021, after years of discovery, motion practice, and appeals, the Bankruptcy Court issued a $132.4 million judgment (the "Judgment") on certain claims against Yucaipa. *Id.* ¶1. The remaining claims were tried in March 2022 and remain *sub judice*. But Yucaipa cannot satisfy the Judgment (or any subsequent judgment that issues) because it brazenly transferred nearly $380 million to investors since 2017 despite a string of unfavorable rulings against it by multiple courts. *Id.* ¶3. The vast majority of these distributions went to the LP Defendants. This Adversary Proceeding seeks to enforce the Bankruptcy Court's Judgment against Yucaipa and the investors to whom it made those fraudulent transfers.

By their Motion, the LP Defendants seek to withdraw the reference as to this Adversary Proceeding. But there is no basis for withdrawal. Mandatory withdrawal does not apply because there is no "substantial and material" question of federal law requiring this Court's consideration.

---

[2]      "Compl." refers to the Trustee's Complaint in the Adversary Proceeding, Del. Bankr. Adv. 21-51179. *See* Adv. Pro. D.I. 1. "Adv. Pro. D.I. __" refers to documents filed in the Adversary Proceeding.

Nor is there any cause for permissive withdrawal.  The Bankruptcy Court is intimately familiar with the parties, facts, and procedural history, having presided over Allied's bankruptcy and its many related adversary proceedings for nearly a decade.  Moreover, Yucaipa's protracted efforts to conceal its improper transfers were raised in, and uncovered by, the Bankruptcy Court.  This Court should see the LP Defendants' Motion for what it is — an effort to escape the Bankruptcy Court that is already familiar with Yucaipa's bad conduct at issue in this Adversary Proceeding.

The request to withdraw the reference should be denied.

## <u>SUMMARY OF ARGUMENT</u>

1.  **<u>Withdrawing the reference is not mandatory</u>**.  Although the LP Defendants raise a purported defense under ERISA's anti-alienation provision, it is settled that this provision only protects benefit payments to **_plan beneficiaries_**.  It does not allow ERISA plans to retain ill-gotten gains from investment activities.  The Bankruptcy Court can thus reject the LP Defendants' makeweight ERISA defense based on a straightforward application of settled law.

2.  **<u>Permissive withdrawal of the reference is also not warranted</u>**.

   a.  The LP Defendants assert that withdrawal is appropriate because the claims in the Adversary Proceeding are non-core bankruptcy claims over which the Bankruptcy Court lacks authority to enter a final judgment.  But that assertion is premature.  The LP Defendants have not asked the Bankruptcy Court to determine the core/non-core status of the claims, and bankruptcy courts, not district courts, typically make that determination first.  In any event, the claims asserted are core bankruptcy claims, as they seek enforcement of the Bankruptcy Court's order in another core proceeding.  But even if the claims are non-core, permissive withdrawal remains inappropriate.  "[T]he mere fact the Complaint asserts non-core claims does not mandate withdrawal."  _In re_

*AgFeed USA, LLC*, 565 B.R. 556, 564 (D. Del. 2016).   To the contrary, bankruptcy courts routinely address pretrial matters, including dispositive motions and discovery disputes, for non-core claims.   The Bankruptcy Court should handle pretrial matters in this case and then transfer it to this Court if, and when, it is ready for trial.

b.  The permissive withdrawal factors set forth in *In re Pruitt*, 910 F.2d 1160 (3d Cir. 1990), also weigh against withdrawal.   The LP Defendants cannot overcome the heavy presumption that bankruptcy proceedings like these should be adjudicated in bankruptcy court — especially where, as here, the Bankruptcy Court has already handled these complex cases for nearly a decade.   The Court should reject their attempt at forum-shopping and allow pretrial proceedings to go forward in the Bankruptcy Court.

## STATEMENT OF FACTS

I.  **BACKGROUND**

Allied operated a car hauling company that transported new vehicles in North America.  Compl. ¶54.  When Allied emerged from an earlier bankruptcy in May 2007, Yucaipa held 67% of its equity and controlled its board of directors.  *Id*. ¶¶57-58, 60.  Allied's exit financing included a $265 million First Lien facility and a $50 million Second Lien facility.  *Id.* ¶60.  The First Lien Credit Agreement ("FLCA") and the Second Lien Credit Agreement ("SLCA") each provided that only a "Requisite Lender" — one or more lenders holding more than 50% of the debt — could direct the facilities' agent to take certain actions on behalf of all lenders.  *Id.* ¶64.

Allied's financial condition continued to deteriorate post-emergence, and a Third Amendment to the FLCA was agreed upon with the First Lien lenders in spring 2008.  That Third Amendment permitted Yucaipa to purchase a limited amount of restricted term loans that

did not carry any voting rights or the ability to act as a Requisite Lender. Compl. ¶67. The Third Amendment to the FLCA also obligated Yucaipa to make a significant capital contribution to the Company upon any such purchase. *Id.* A Third Amendment to the SLCA was also entered which placed no restrictions on Yucaipa's ability to acquire Second Lien debt, and provided Yucaipa a unilateral right to convert some, or all, of its Second Lien debt into preferred shares of Allied. *Id.* ¶68. Yucaipa purchased Second Lien debt at a steep discount and contributed $20 million of that Second Lien debt to Allied. *Id.* ¶69. These maneuvers, however, did not create enough liquidity for Allied to satisfy its obligations. *Id.* ¶70. After Allied defaulted on covenants in the FLCA, the First Lien lenders were poised to exercise their remedies, threatening to wipe out Yucaipa's equity investment. *Id.* ¶¶71-72.

With its investments in peril, Yucaipa tried to become the Requisite Lender under the FLCA. Compl. ¶73. In August 2009, Yucaipa purchased more than 50% of Allied's First Lien debt from another lender and simultaneously caused Allied to enter a later-voided Fourth Amendment to the FLCA removing the various restrictions on the acquisition in the Third Amendment. *Id.* ¶¶79-80. Following Yucaipa's August 2009 acquisition of First Lien debt, the First Lien Agent, CIT Group/Business Credit, Inc. ("CIT") refused to recognize the legality of the Fourth Amendment and Yucaipa's purported Requisite Lender status. *Id.* ¶¶61, 85. CIT litigated these issues, and sought specific performance of Yucaipa's required capital contribution, in a Georgia state lawsuit. *Id.* ¶86. Following over two years of litigation, CIT settled on its own behalf but not on behalf of Allied's other First Lien lenders. *Id.* ¶87.

On January 18, 2012, First Lien lenders BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd., and Spectrum Investment Partners, L.P. (together, "BD/S") sued Yucaipa in New York state court, seeking to invalidate the Fourth Amendment. Compl. ¶88. The New York Court sided with BD/S, and that decision was affirmed on appeal. *Id.* ¶¶90-92.

## II.    ALLIED'S BANKRUPTCY PROCEEDING AND THE YUCAIPA ADVERSARY PROCEEDINGS

### A.    The Adverse Decisions Against Yucaipa

In May 2012, while the New York lawsuit was ongoing, BD/S filed an involuntary petition for bankruptcy against Allied in the Delaware Bankruptcy Court.  Compl. ¶ 93.  The next month, Allied filed voluntary bankruptcy petitions.  *Id.* ¶ 94.  The bankruptcy cases were assigned to Judge Christopher Sontchi.  *Id.* ¶ 97.  As relevant here, Allied's creditors filed two adversary proceedings against Yucaipa in the Bankruptcy Court (the "Yucaipa Adversary Proceedings").  *Id.* ¶¶ 1, 95.[3]  Allied also filed a third, related adversary proceeding (the "Allied Adversary Proceeding").[4]  The Yucaipa Adversary Proceedings sought hundreds of millions of dollars in damages from Yucaipa for various claims, including breach of the FLCA's capital contribution requirements, recovery and avoidance of fraudulent transfers, breaches of fiduciary duties, and equitable subordination of Yucaipa's debt holdings.  *Id.* ¶ 96.

In December 2015, the Bankruptcy Court confirmed Allied's Chapter 11 Plan of Reorganization.  Del. Chapter 11, D.I. 3383.[5]  The Confirmation Order appointed Catherine Youngman as the Trustee of the Litigation Trust created by the Plan and as the Plan Administrator for the Debtors' estates.  *Id.* ¶¶ 20, 22.  Under the Plan, the Trustee is responsible for prosecuting Litigation Claims (as defined in the Plan) on behalf of the Debtors' estates, including the Yucaipa Adversary Proceedings and related actions.  Del. Chapter 11, D.I. 3360-1

---

[3]    The two actions are (i) the "Estate Action" commenced by Allied's Official Committee of Unsecured Creditors in 2013, and (ii) the "Lender Action" commenced by BD/S and the Co-Administrative Agents under the FLCA in 2014.  Compl. ¶¶ 1, 95.  The Yucaipa Adversary Proceedings are administered under Del. Bankr. Adv. 13-50530 and Del. Bankr. Adv. 14-50971 but were coordinated and have been jointly prosecuted by the Trustee as addressed herein.

[4]    Allied's October 2012 complaint sought a judicial declaration regarding the validity and enforceability of the Third and Fourth Amendments, and to determine which of Allied's First Lien Lenders constitutes the Requisite Lender.  Del. Bankr. Adv. 12-50947.

[5]    "Del. Chapter 11, D.I. ___" refers to documents filed in the Delaware Chapter 11 Case, Del. Bankr. Case No. 12-11564.

("Plan") at 3-10 (definitions); Plan § 5.10(b).  The Trustee was substituted as plaintiff in the Yucaipa Adversary Proceedings.  *See* Trustee's Proposed Post-Trial Findings ("Post-Trial Findings") at 9 n.27, Yucaipa Adv. Pro. D.I. 1003 (Apr. 21, 2022).[6]  Under the Plan, the Bankruptcy Court retained "exclusive jurisdiction" to, among other things, "hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Litigation Claims" and to "enforce all orders, judgments . . . and rulings entered in connection with the Chapter 11 Cases or provided for under the Plan." Plan §§ 9.1(e), (*l*).

The Yucaipa Adversary Proceedings have a complex and lengthy history.[7]  Among other things, the Bankruptcy Court adjudicated cross-claims and a counterclaim asserted by Yucaipa against BD/S, motions to strike Yucaipa's affirmative defenses, and various discovery disputes. *See* Post-Trial Findings ¶¶ 12, 16, 19.  In August 2013, the Bankruptcy Court granted partial summary judgment in the Estate Action and the Allied Adversary Proceeding, holding that (1) BD/S, not Yucaipa, were Requisite Lenders; (2) the Third Amendment was valid; and (3) Yucaipa was collaterally estopped from asserting the Fourth Amendment's validity.  Compl. ¶ 97.  Yucaipa appealed those decisions and lost.  *See In re Allied Sys. Holdings Inc.*, 556 B.R. 581, 608-09 (D. Del. 2016), *aff'd*, *In re ASHINC Corp.*, 683 F. App'x 131, 142 (3d Cir. 2017).

Yucaipa thus knew by at least early 2017 that the Fourth Amendment was invalid and that the Third Amendment, along with its capital contribution requirements, was binding. Compl. ¶ 98 (quoting Yucaipa's counsel's admission that these rulings meant Yucaipa breached

---

[6]     "Yucaipa Adv. Pro. D.I. __" refers to documents filed in the Yucaipa Adversary Proceedings, Del. Bankr. Adv. 13-50530.

[7]     The detailed 117-page Summary Judgment Opinion notes the "long and arduous" litigation history preceding this Adversary Proceeding.  *See* Yucaipa Adv. Pro., D.I. 825 at 7.

the FLCA).   Additional adverse rulings by 2017 eliminated Yucaipa's discernable defenses, crossclaims, and counterclaim in the Yucaipa Adversary Proceedings.  *Id.* ¶99.

Extensive discovery in the Yucaipa Adversary Proceedings, including 45 depositions, concluded in January 2020.  Post-Trial Findings ¶25.  On May 4, 2021, the Bankruptcy Court issued an Opinion and Order granting in part and denying in part the Trustee's and Yucaipa's cross-motions for summary judgment.  Yucaipa Adv. Pro. D.I. 825 (the "2021 SJ Decision").  On June 23, 2021, the Bankruptcy Court issued the Judgment awarding the Trustee damages of approximately $132.4 million.  Post-Trial Findings ¶32.  Yucaipa has not satisfied the Judgment and has represented in court filings and post-Judgment discovery responses that it does not have sufficient assets to pay it.  Compl. ¶2.

In March 2022, the Bankruptcy Court conducted a seven-day trial on the remaining claims in the Yucaipa Adversary Proceedings: (1) breach of fiduciary duty, (2) equitable subordination, and (3) breach of the implied covenant of good faith and fair dealing.  Post-Trial Findings at p.1.  The parties are waiting for the Bankruptcy Court's post-trial decision.

**B.      Yucaipa's Fraudulent Transfers**

Despite the pendency of the Yucaipa Adversary Proceedings and a string of adverse decisions, Yucaipa transferred approximately $379.7 million to its investors (including Yucaipa insiders) between October 2017 and May 2019.  Compl. ¶¶103-104.  Yucaipa concealed those transfers from the Trustee for years.  In May 2019, the Trustee's counsel noticed a deposition for Yucaipa's corporate representative.  *Id.* ¶109.  Despite being told that one of the topics to be addressed was Yucaipa's ability to satisfy any judgment, the corporate representative was unable to give testimony about it.  *Id.* ¶¶110-112.  In July 2020, after Yucaipa's refusal to disclose the identity of recipients of transfers reached an impasse, the Trustee filed a motion for discovery in the Bankruptcy Court, which Yucaipa opposed.  *Id.* ¶¶114-15.  The Bankruptcy Court later

granted Rule 2004 discovery by Order entered in July 2021. *Id.* ¶ 120. Yucaipa's productions allowed the Trustee to identify the transfers alleged in the Complaint. *Id.*

Yucaipa also tried unsuccessfully to delay enforcement of the Judgment. It sought a stay of the Judgment pending appeal but refused to post any bond. Compl. ¶¶ 122-124. The Bankruptcy and District Court granted short stays which expired in August 2021. *Id.* To date, Yucaipa has not satisfied any portion of the Judgment. *Id.* ¶ 126.

## III.   THE ADVERSARY PROCEEDING TO ENFORCE THE JUDGMENT

In October 2021, the Trustee filed the Adversary Proceeding at issue here. The Complaint names as defendants Yucaipa and its investors that received fraudulent transfers from Yucaipa (the "Transferee Defendants"). Compl. ¶ 4. The Transferee Defendants include the 26 LP Defendants who filed this Motion.[8] As the LP Defendants acknowledge, they are Yucaipa's limited partners. Defs. Br. 2. The Complaint asserts three counts: (1) avoidance and recovery of actual fraudulent transfers under the Uniform Fraudulent Transfer Act (UFTA), 6 Del. C. § 1304(a)(1); (2) avoidance and recovery of constructive fraudulent transfers under the UFTA, 6 Del. C. §§ 1304(a)(2), 1305(a); and (3) a declaratory judgment that Yucaipa's General Partner is liable for Yucaipa's debts. Compl. ¶¶ 129-150.

The Adversary Proceeding is still in its early stages. The LP Defendants have yet to file any response to the Complaint or participate in discovery. By stipulations, their response is currently due 30 days after (1) the issuance of a post-trial opinion by the Bankruptcy Court adjudicating the remaining claims in the Yucaipa Adversary Proceedings; or (2) written notice by the Trustee. Adv. Pro. D.I. 59.

---

[8]   Defendants Board of Fire and Police Pension Commissioners of the City of Los Angeles and the Los Angeles City Employees' Retirement System (together, the "LA Funds") did not join the LP Defendants' Motion. Yucaipa and its related entities did not join the Motion either.

## ARGUMENT

I.  **MANDATORY WITHDRAWAL OF THE REFERENCE DOES NOT APPLY**

Twelve of the twenty-six LP Defendants — representing only 32% of the nearly $380 million of transfers at issue — allege that the reference must be withdrawn because they intend to argue that the Trustee's claims are barred by the anti-alienation provision of the federal Employment Retirement Income Security Act ("ERISA").  Defs. Br. 7-8.  But the LP Defendants cite no on-point authority supporting their defense and fail to identify any "substantial and material" question of federal law requiring this Court's consideration.

Mandatory withdrawal applies only when "(1) consideration of [federal] law outside of [the Bankruptcy Code] is necessary for the resolution of the case or proceeding; and (2) the consideration of federal law outside the Bankruptcy Code necessary to resolve the proceeding is substantial and material."  *In re Cont'l Airlines*, 138 B.R. 442, 444-45 (D. Del. 1992).  The parties seeking withdrawal "bear[] the burden of demonstrating that a substantial and material consideration of nonbankruptcy law is necessary to resolve the case."  *Id.* at 445.  This prong requires "meaningful consideration" of federal law, which includes "deciding an issue of first impression or analyzing the law beyond applying it to the facts of the case."  *In re Nortel Networks, Inc.*, 539 B.R. 704, 708 (D. Del. 2015) (citing *Continental Airlines*, 138 B.R. at 447).  Raising a federal law issue is not enough.  Otherwise, litigants would have "an 'escape hatch' through which most bankruptcy matters could routinely be removed to the district court."  *Id.*

Here, the LP Defendants cannot satisfy their burden of demonstrating that their purported ERISA anti-alienation defense raises a "substantial and material" question of federal law.  As a threshold matter, the LP Defendants concede that this purported defense is inapplicable to the majority of movants, and it also has no application to Yucaipa (whose conduct is at issue in this

case).  Defs. Br. 7-8.  Moreover, as to the remaining defendants, the purported ERISA defense can be rejected by "simple application" of settled law to the facts.  *Nortel*, 539 B.R. at 708.

ERISA's anti-alienation provision states that "[e]ach [ERISA] pension plan shall provide that ***benefits provided under the plan*** may not be assigned or alienated."  29 U.S.C. § 1056(d)(1) (emphasis added).   "[A]s indicated by the legislative history, the anti-alienation provision is intended to 'protect ***plan beneficiaries*** by ensuring that plan assets are used only for payment of benefits.'"  *Coar v. Kazimir*, 990 F.2d 1413, 1420 (3d Cir. 1993) (emphasis added).  It protects beneficiaries from their "own financial improvidence in dealing with third parties."  *Am. Tel. & Tel. Co. v. Merry*, 592 F.2d 118, 124 (2d Cir. 1979).

Cases applying the anti-alienation provision thus routinely distinguish between ***benefits*** to beneficiaries, which might be subject to the anti-alienation provision, and ***assets*** of the plan, which are not.  For example, the Second Circuit has squarely held that "undistributed funds held in trust . . . do not constitute 'benefits' within the meaning of the anti-alienation provisions," and that the "***anti-alienation rule does not prevent pension plan assets from being used to satisfy a judicial judgment that has been entered against the plan itself***."  *Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68, 73 (2d Cir. 2011) (emphasis added); *see also Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 826 (1988) (ERISA "clearly contemplates the enforcement of money judgments against a plan"); *O'Toole v. Arlington Tr. Co.*, 681 F.2d 94, 96 (1st Cir. 1982) (the anti-alienation provision is "***directed at 'benefits provided,'*** not the corpus of the fund.") (emphasis added).

Relatedly, courts have not hesitated to allow fraudulent transfer claims to proceed against ERISA plans where the claims relate to the plans' investment activities as opposed to attempts by plan beneficiaries to alienate or assign their benefits under the plan.  *In re Vaughan Co., Realtors*, 493 B.R. 597 (Bankr. D.N.M. 2013), is instructive.  In that case, the court allowed a

fraudulent transfer claim to proceed against an ERISA plan that invested in an alleged Ponzi scheme. *Id.* at 607. The court reasoned that the anti-alienation provision did not apply because there was no "enforceable right [to] be obtained from *a participant or beneficiary*." *Id.* at 606 (emphasis in original). Further, the court's decision was not based on an "exception" to the anti-alienation provision because the provision does not apply at all when a participant or beneficiary is not involved. *Id.*; *see also Wagner v. Galbreth*, 500 B.R. 42, 49-50 (D.N.M. 2013) (similar).

That distinction is fatal to the LP Defendants' ERISA arguments here. Yucaipa is not a "participant or beneficiary" in the twelve LP Defendants' ERISA plans. Yucaipa's fraudulent transfers to those Defendants thus have nothing to do with ERISA's anti-alienation provision because they do not implicate any attempt to assign or alienate any "*benefits provided under* the plan." 29 U.S.C. § 1056(d)(1) (emphasis added). The fact that the fraudulent transfer claims may seek to recover *assets* that the plans illegitimately obtained through their investment activities is not enough. The claims have nothing to do with any *benefits* under an ERISA plan.

The Third Circuit has gone even further and stated that ERISA's anti-assignment provision does not apply to fraudulent transfer claims at all. In *Velis v. Kardanis,* 949 F.2d 78 (3d Cir. 1991), the court explained that, through ERISA's anti-alienation provision, "Congress intended to provide protection against the claims of creditors for a person's interest in pension plans, *unless vulnerable to challenge as fraudulent conveyances or voidable preferences*." *Id.* at 82 (emphasis added); *see also In re Goldschein*, 241 B.R. 370, 379 (Bankr. D. Md. 1999) (anti-alienation provision "protect[s] a beneficiary's interest in *legitimate* Plan assets . . . [and does] not preclude the avoidance of fraudulent transfers" (emphasis added)).[9]

---

[9]     The Bankruptcy Court can reject the LP Defendants' ERISA defense without going that far. Even if ERISA's anti-alienation clause applies to a fraudulent transfer claim seeking to recover *plan benefits* (for example, where a plan beneficiary fraudulently transfers assets to his

The LP Defendants do not cite any authority applying ERISA's anti-alienation provision to fraudulent transfers received in connection with a plan's investment activities.  Neither of the two Supreme Court cases relied upon in the Motion deal with fraudulent transfer claims against an ERISA plan itself.[10]  The LP Defendants' reliance on *In re Homeland Stores, Inc.*, 204 B.R. 427 (D. Del. 1997), is similarly misplaced.  That case did not address ERISA's anti-alienation provision at all; it merely supports the proposition that ***some*** ERISA questions could support mandatory withdrawal.  The case certainly does not stand for the proposition that insubstantial ERISA claims unsupported by any relevant precedent suffice.

The LP Defendants insist, without support, that the single legal issue they have identified involves "complex interactions between Delaware fraudulent transfer law and ERISA anti-alienation provisions."  Defs. Br. 10.  But a mere "conclusory argument" is not enough to justify mandatory withdrawal.  *In re Liberty State Benefits of Del. Inc.*, Civ. No. 14-677, 2015 WL 1137591, at *3 (D. Del. Mar. 12, 2015).  The LP Defendants' argument ignores the plain text of the ERISA anti-alienation provision and contradicts precedent.  Rejecting those insubstantial claims "merely requires deciding how the law applies to the facts of the case."  *Nortel*, 539 B.R. at 708.  Mandatory withdrawal therefore is not appropriate under 28 U.S.C. § 157(d).

## II.   PERMISSIVE WITHDRAWAL OF THE REFERENCE IS NOT APPROPRIATE

The LP Defendants alternatively argue that this Court should withdraw the reference for "cause shown."  28 U.S.C. § 157(d).  "The 'cause shown' requirement in section 157(d) creates a 'presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy

---

own investment account in the plan), it does not reach the claims here that have nothing to do with plan benefits at all.

[10]     *See Boggs v. Boggs*, 520 U.S. 833, 839-40 (1997) (state community property laws); *N.Y. State Conf. of Blue Cross & Blue Shield Trib. Plans v. Travelers Ins. Co.*, 514 U.S. 645, 649 (1995) (New York statute collecting surcharges from patients).

court unless rebutted by a contravening policy.'" *Hatzel & Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989).  As a result, cause "will be present in only a narrow set of circumstances." *In re LTC Holdings, Inc.*, C.A. No. 18-1987, 2019 WL 4643801, at *4 (D. Del. Sept. 24, 2019) (quoting *Pruitt*, 910 F.2d at 1171 (Mansmann, J., concurring)).

The Third Circuit has set forth five factors for "determining whether cause exists to withdraw the reference: (1) promoting uniformity in bankruptcy administration, (2) reducing forum shopping and confusion, (3) fostering the economical use of the debtors' and creditors' resources, (4) expediting the bankruptcy process, and (5) the timing of the request for withdrawal." *LTC*, 2019 WL 4643801, at *4 (citing *Pruitt*, 910 F.2d at 1168).  The LP Defendants acknowledge these factors but sidestep the high bar for permissive withdrawal. Defs. Br. 11-12.  These factors are not weighted "on a scale in equipoise" — instead, the party seeking withdrawal must "overcome a scale already heavily weighted against withdrawal." *Feldman v. ABN AMBRO Mortg. Grp., Inc.*, No. 19-MC-131, 2020 WL 618604, at *7 (E.D. Pa. Feb. 10, 2020); *see also In re Boy Scouts of Am.*, Civil Action No. 21-392, 2021 WL 4775964, at *2 (D. Del. Oct. 13, 2021).  The LP Defendants cannot overcome that presumption here.

### A.     The Request for Permissive Withdrawal Is Premature

The LP Defendants' primary argument for permissive withdrawal turns on their assertion that the Adversary Proceeding is a "non-core" bankruptcy proceeding. Defs. Br. 12.  But determining core/non-core status in the first instance is the province of the bankruptcy courts.  The Bankruptcy Code provides that "***[t]he bankruptcy judge shall determine***, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."  28 U.S.C. § 157(b)(3) (emphasis added).  The LP Defendants' own authority acknowledges that "[m]otions to withdraw the reference have been denied as premature where the bankruptcy court was not

first given a chance to determine the core/non-core status of the claims." *In re Appleseed's Intermediate Holdings, LLC*, Civ. No. 11-807, 2011 WL 6293251, at *2 n.5 (D. Del. Dec. 15, 2011).

The LP Defendants did not ask the Bankruptcy Court to determine whether the claims in the Adversary Proceeding are core or non-core. They "must look first to the bankruptcy court to make this determination." *Hatzel*, 106 B.R. at 370. That approach is logical because " ' the full record of the bankruptcy proceedings [is] essential to making' the core/non-core determination." *Logan v. Westchester Fire Ins. Co.*, Civil Action No. 10-028, 2011 WL 13382328, at *2 (D. Del. Feb. 2, 2011). The LP Defendants' failure to seek, much less obtain, a ruling from the Bankruptcy Court on the claims' core/non-core status is grounds enough to deny their motion as premature.

In any event, the claims in the Adversary Proceeding are "core" bankruptcy claims because they seek to enforce a judgment that was itself an exercise of the Bankruptcy Court's core jurisdiction. "Enforcement and interpretation of orders issued in core proceedings are also considered core proceedings within the bankruptcy court's jurisdiction." *In re FormTech Indus., LLC*, 439 B.R. 352, 357 (Bankr. D. Del. 2010); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (bankruptcy court "plainly [has] jurisdiction to interpret and enforce its own prior orders"). Through the Adversary Proceeding, the Trustee seeks to enforce and collect a $132 million Judgment entered by the Bankruptcy Court. Compl. ¶ 1. The Bankruptcy Court held that it had "core" jurisdiction over the claims supporting that Judgment. 2021 SJ Decision at 6. Claims seeking enforcement of that Judgment are therefore core claims as well. *See In re FormTech Indus., LLC*, 439 B.R. at 357.

The LP Defendants make the conclusory claim that the Bankruptcy Court may lack constitutional authority to enter a final judgment over the Adversary Proceeding claims. Defs.

Br. 15-16.  That argument is also premature, as the Adversary Proceeding is in its early stages and the Bankruptcy Court is fully capable of handling pretrial matters.  *AgFeed*, 565 B.R. at 566.  And contrary to the LP Defendants' suggestion, *Stern v. Marshall*, 564 U.S. 462 (2011), does not resolve this issue.  Defs. Br. 15.  Judge Sontchi has cautioned that *Stern* "should be read narrowly" and that its holding was "isolated" to the one issue before the Court in that case, which is not at issue here.[11]  *In re Paragon Offshore PLC*, 598 B.R. 761, 774 (Bankr. D. Del. 2019).  The Bankruptcy Court is better suited to decide in the first instance whether *Stern* affects its authority to enter final judgments in this case.  *Cf. In re Millennium Lab Holdings II, LLC*, 242 F. Supp. 3d 322 (D. Del. 2017) (remanding for bankruptcy court to consider and clarify its ruling that it had constitutional authority to approve nonconsensual releases under *Stern*).

### B.    The *Pruitt* Factors Weigh Against Withdrawal of the Reference

Even assuming the claims are non-core (they are not), withdrawal is not warranted under the *Pruitt* factors.  The LP Defendants try to elevate the core/non-core status of the claims to be the most important consideration, citing a pair of unpublished decisions from 2011 describing it as a "threshold determination" or "guid[ing]" analysis.  Defs. Br. 12.  But that consideration is not dispositive or even the most important factor.  "[T]he mere fact the Complaint asserts non-core claims does not mandate withdrawal."  *AgFeed*, 565 B.R. at 564; *see also Boy Scouts*, 2021 WL 4775964, at *2 (whether proceeding is core or non-core is "one" of several factors).  The LP

---

[11]    At least one of the LP Defendants, Western Conference of Teamsters Pension Trust Fund, filed a proof of claim for approximately $3.5 million in Allied's bankruptcy cases.  *See* Chapter 11 Case, Proof of Claim Docket, Claim No. 483.  As the LP Defendants admit, whether that proof of claim is related to the Trustee's fraudulent transfer claim may affect the Bankruptcy Court's authority to enter a final judgment as to Western Conference.  Defs. Br. 15.  The LP Defendants assert that Western Conference's proof of claim is "entirely unrelated to the fraudulent transfer claims in the Complaint."  Defs. Br. 15 n.13.  The Bankruptcy Court, familiar with the claims filed in the Chapter 11 case, is better suited to decide that issue.

Defendants fail to show that the complete set of *Pruitt* factors weigh so heavily in their favor as to overcome the strong presumption against withdrawal.

### 1. *Withdrawal Will Not Promote Judicial Economy*

The economical use of the debtors', creditors', and the court's resources is "an especially important consideration" that counsels heavily against withdrawal. *In re Circle of Yoakum, Tex.*, No. Civ. A. 06-328, 2006 WL 2347710, at *2 (D. Del. June 23, 2006). Withdrawal is not appropriate where, as here, the Bankruptcy Court is familiar with the parties, facts, and procedural history of the case. *Id.* at *2. Not allowing the Bankruptcy Court to decide pretrial matters would "result in unnecessary expenses for the parties, particularly given that dispositive motions and settlement may resolve the proceeding [before] trial." *AgFeed*, 565 B.R. at 565.

The Bankruptcy Court has presided over Allied's bankruptcy since 2012, including the Yucaipa Adversary Proceedings, which have a "long and arduous" history. 2021 SJ Decision at 7. The LP Defendants claim that those cases relate "exclusively to prepetition conduct" and are "completely independent from the facts and legal theories . . . in the [current] Adversary Proceeding." Defs. Br. 18-19. But Yucaipa's fraudulent transfers to the Transferee Defendants were closely related to the bankruptcy cases; they were clear attempts to evade massive liability and the eventual Judgment. Compl. ¶4. Yucaipa tried to conceal those transfers, including by opposing discovery in the Bankruptcy Court. *Id.* ¶¶114-120. The Bankruptcy Court's knowledge of this history, especially Yucaipa's conduct and behavior, is central to the Adversary Proceeding. *See* Yucaipa Adv. Pro. D.I. 864 (Tr. of Hr'g (7/6/21) at 34:11-13) ("[The Court]: "[Yucaipa is] probably hopelessly insolvent, unless there's some sort of veil piercing or a fraudulent conveyance action goes forward."); *see also* Yucaipa Adv. Pro. D.I. 929 (Tr. of Hr'g (2/8/22) at 15:21-23) ("[T]he undisputed facts prove as a matter of law that [Yucaipa] acted in bad faith.").

The LP Defendants miss the mark by asserting that Judge Sontchi's upcoming retirement on June 30, 2022 somehow eliminates the Bankruptcy Court's familiarity with the case. Defs. Br. 19. The claims at issue are being prosecuted by a Bankruptcy Court-appointed Trustee, pursuant to the bankruptcy Plan, arising from litigation supervised for a decade by the Bankruptcy Court, in order to collect a Judgment over which the Bankruptcy Court explicitly retained jurisdiction. No court is better suited to address these claims than the Bankruptcy Court.[12]

The LP Defendants further argue that the actions that form the basis of the claims are "alleged to have occurred years *after* confirmation" and thus present the type of "post-confirmation litigation . . . suited to permissive withdrawal." Defs. Br. 17. On the contrary, bankruptcy courts routinely adjudicate post-confirmation litigation like the Adversary Proceeding. As the Third Circuit explained in *In re Resorts International, Inc.*, 372 F.3d 154 (3d Cir. 2004), "litigation trusts by their nature maintain a connection to the bankruptcy even after the plan has been confirmed." *Id.* at 167; *see also In re Truong,* 285 F. App'x 837, 840 (3d Cir. 2008) (affirming bankruptcy court's order avoiding further fraudulent transfers after initial grant of summary judgment). The Adversary Proceeding here is closely related to Allied's bank-ruptcy. The Chapter 11 Plan expressly contemplated that the Bankruptcy Court would retain jurisdiction over the Litigation Claims, including to enforce any judgment or adjudicate the Yucaipa Adversary Proceedings and related actions. Plan at 3-10; Plan § 5.10(b). And the Bankruptcy Court has power to "enforce and implement its prior summary judgment order[ ] and void any future fraudulent transfers" in defiance of its Judgment. *Truong*, 285 F. App'x at 840.

---

[12]    Moreover, any bankruptcy judge replacing Judge Sontchi will have the benefit of the Bankruptcy Court's institutional knowledge. And Judge Karen B. Owens, who is not retiring, was temporarily assigned the Yucaipa Adversary Proceedings from June 18, 2019 through August 5, 2020. Post-Trial Findings at 10 n.34.

2.      *The LP Defendants' Purported Right to a Jury Trial Does Not Warrant
Withdrawal at This Early Stage*

The LP Defendants argue that, if the claims are non-core, the Bankruptcy Court's

inability to conduct a jury trial weighs in favor of withdrawal.  Defs. Br. 17-18.  But withdrawal

requests based on a party's right to a jury trial are premature where the cases are not "trial ready"

and the proceedings could be resolved through dispositive motions or settlement, eliminating the

need for trial altogether.  *LTC*, 2019 WL 4643801, at *6 (collecting cases).  "Where, as here, a

case is in the early stages with unresolved pre-trial matters," withdrawal is inappropriate because

"one can only speculate when [the case] will proceed to trial, if at all."  *Id.*; *see also In re Am.

Classic Voyages Co.*, 337 B.R. 509, 512 (D. Del. 2006); *In re Big V Holding Corp.*, CIV.A. 01-

233, 2002 WL 1482392, at *1 (D. Del. July 11, 2002).

Allowing the Bankruptcy Court to decide pretrial matters makes good sense.  The

Bankruptcy Court is familiar with the parties, facts, and history of the Adversary Proceeding, and

is "well-equipped to handle all pretrial issues."  *LTC*, 2019 WL 4643901 at *6.[13]  Discovery

disputes are presently pending before the Bankruptcy Court.[14]  Moreover, the Bankruptcy

Court's role is similar to "that of a magistrate [judge that handles] pre-trial issues."  *Nortel*, 539

B.R. at 710.  And the LP Defendants have not identified any reasons why they would be

prejudiced by the Bankruptcy Court adjudicating matters before trial.  *See In re Enron Corp.*,

---

[13]     The LP Defendants' argument that the Bankruptcy Court's "specialized skills" lack
relevance (at 17) is baseless.  Bankruptcy courts routinely adjudicate fraudulent transfer claims.
*See, e.g.*, *In re DBSI, Inc.*, 478 B.R. 192, 198 (Bankr. D. Del. 2012) ("[F]raudulent transfer
claims are routine in bankruptcy cases"); *In re Direct Response Media, Inc.*, 466 B.R. 626, 644
(Bankr. D. Del. 2012) (such claims are "a significant portion of [the Court's] typical docket").

[14]     The Trustee recently sought additional discovery from Yucaipa in light of evidence that
Yucaipa further dissipated approximately $4.5 million of assets over the past several months
notwithstanding representations to the Bankruptcy Court to the contrary.  *See* Del. Chapter 11,
D.I 4219 (Letter from Trustee's counsel to Judge Sontchi dated April 28, 2022).  Yucaipa filed a
response to that letter on May 2, 2022.  *See* Del. Chapter 11, D.I. 4220 (Letter from Yucaipa's
counsel to Judge Sontchi dated May 2, 2022).

318 B.R. 273, 276 (S.D.N.Y. 2004).

### 3.      *Withdrawal Will Not Promote Uniform Bankruptcy Administration*

The LP Defendants suggest that, because the Adversary Proceeding only involves state law claims, its resolution will not ensure "uniform bankruptcy administration."  Defs. Br. 16. But even where only state law claims are involved, claims that are "related to" the bankruptcy cases still "support[] retention by the Bankruptcy Court."  *LTC*, 2019 WL 4643801, at *7.  That is especially true here, because the Adversary Proceeding seeks enforcement of the Bankruptcy Court's Judgment, and Yucaipa's efforts to conceal improper transfers were front and center in proceedings before the Bankruptcy Court.

### 4.      *The Motion Is an Attempt at Forum Shopping*

The Motion is a thinly-veiled attempt to avoid a singularly unfavorable forum for Yucaipa (whose wrongdoing underlies the LP Defendants' liability).  The Bankruptcy Court is familiar with Yucaipa's scorched-earth tactics and attempts to evade the Judgment.  As it commented, Yucaipa has "carri[ed] on [] delays . . . to the immediate and irreparable detriment of [Allied's] creditors and [] estate."  Yucaipa Adv. Pro. D.I. 907 at 17.  Thus, "[i]t is reasonable to assume that one motivating factor behind [this] motion to withdraw the reference is securing a more friendly forum."  *In re Am. Cap. Equip., LLC*, 325 B.R. 372, 378-79 (W.D. Pa. 2005).  The LP Defendants again raise their purported anti-alienation defense.  Defs. Br. 16.  But just because "this Court has more experience overseeing" certain litigation "does not detract from the Bankruptcy Court's proficiency in helping this Court effectively adjudicate such cases."  *Nortel*, 539 B.R. at 710.  In any case, the defense fails under settled law and will play only a minor role in this case.  Less than a third of the transfers were made to ERISA plans.  Defs. Br. 8.

### 5.      *Withdrawal Will Not Expedite the Bankruptcy Process*

With this factor, the LP Defendants rehash their argument that, if the claims are non-core, withdrawal will expedite matters by skipping a "round of appeals." Defs. Br. 19.  That is not enough reason to prevent a bankruptcy court from handling pretrial matters and submitting its findings and recommendations to the district court.  *LTC*, 2019 WL 4643801, at *5.  Courts have not found concerns about "so-called 'two-tiered court review' . . . substantial enough to warrant withdrawal." *Id.*  Rather, "the complex framework of bankruptcy jurisdiction . . . may make such a result unavoidable." *AgFeed*, 565 B.R. at 566.

Even in non-core cases, "the bankruptcy court is given the power to submit proposed findings of fact and conclusions of law to the district court." *AgFeed*, 565 B.R. at 564 (citing 28 U.S.C. § 157(c)(1)).  Congress thus "contemplated the district court will have the benefit of the bankruptcy judge's findings of fact and conclusions of law."  *In re Princeton Alt. Income Fund, LP*, Civil Action No. 18-9894, 2018 WL 4854639, at *2 (D.N.J. Oct. 4, 2018).  Withdrawal at this early stage would "in effect, derail[] the appellate process provided by statute." *Pruitt*, 910 F.2d at 1168.

### 6.      *The Request Is Premature*

The LP Defendants finally urge (at 20) that their request is timely.  If anything, it is premature.  The Bankruptcy Court has not even had a chance to decide if the claims are core or non-core.  Once the case is trial-ready, the Court can reconsider this Motion.  *See LTC*, 2019 WL 4643801, at *8 (allowing withdrawal motion "at such time as [the case] is ready for trial").

## <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully submits that the LP Defendants' Motion to withdraw the reference should be denied.

Dated:    May 2, 2022                                          Respectfully submitted,


                                                                  _/s/ Seth A. Niederman_____
Jeffrey H. Zaiger                                             Seth A. Niederman (DE Bar No. 4588)
Judd A. Lindenfeld                                           FOX ROTHSCHILD LLP
ZAIGER LLC                                                   Citizens Bank Center
2187 Atlantic Street, 9th Floor                             919 N. Market Street, Suite 300
Stamford, CT 06902                                          Wilmington, DE 19801
Tel.: (917) 572-7701                                        Tel.: (302) 654-7444
jzaiger@zaigerllc.com                                       Fax: (302) 656-8920
                                                             sniederman@foxrothschild.com

Douglas J. Pepe                                              Steven F. Molo (*pro hac vice* pending)
COHEN AND GRESSER LLP                                       Robert K. Kry (*pro hac vice* pending)
800 Third Avenue                                            Justin M. Ellis (*pro hac vice* pending)
New York, NY 10022                                          Ryan Yeh (*pro hac vice* pending)
Tel.: (212) 957-7605                                        MOLOLAMKEN LLP
dpepe@cohengresser.com                                      430 Park Avenue
                                                             New York, NY 10022
                                                             Tel.: (212) 607-8160
                                                             rkry@mololamken.com

                                                             Jordan A. Rice (*pro hac vice* pending)
                                                             MOLOLAMKEN LLP
                                                             300 North LaSalle Street
                                                             Chicago, IL  60654
                                                             Tel.: (312) 450-6700


*Counsel for the Litigation Trustee and Plan Administrator*