## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ASHINC Corporation, *et al*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 12-11564 (CSS)<br>(Jointly Administered) |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS,<br><br>Plaintiff,<br><br>v.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, LLC, YUCAIPA AMERICAN MANAGEMENT, LLC, AMERICAN AIRLINES MASTER FIXED BENEFIT PENSION PLAN TRUST, AMERICAN PRIVATE EQUITY PARTNERS II, LP, AUTOMOTIVE MACHINISTS PENSION TRUST, BOARD OF FIRE AND POLICE PENSION COMMISSIONERS OF THE CITY OF LOS ANGELES, CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, CARPENTERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA, COLLER PARTNERS 702 LP INCORPORATED, CLOUSE | Adv. Proc. No. 21-51179 (CSS) |

---

[1]  The Debtors in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) (58- 0360550); AAINC Corporation (f/k/a Allied Automotive Group, Inc.) (58-2201081); AFBLLC LLC (f/k/a Allied Freight Broker LLC) (59-2876864); ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company) (90- 0169283); ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.) (58-1710028); AXALLC LLC (f/k/a Axis Areta, LLC) (45- 5215545); AXCCO Canada Company (f/k/a Axis Canada Company) (875688228); AXGINC Corporation (f/k/a Axis Group, Inc.) (58-2204628); Commercial Carriers, Inc. (38-0436930); CTSINC Corporation (f/k/a CT Services, Inc.) (38-2918187); CTLLC LLC (f/k/a Cordin Transport LLC) (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38- 2349563); and Terminal Services LLC (91-0847582).

S.A., CONSOLIDATED RETIREMENT FUND,
IAM PRIVATE EQUITY, LLC, ILGWU DEATH
BENEFIT FUND 4, INTERNATIONAL SIF
SICAV SA, LOCALS 302 & 612 OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS – EMPLOYERS, CONSTRUCTION
INDUSTRY RETIREMENT TRUST, LOS
ANGELES CITY EMPLOYEES' RETIREMENT
SYSTEM, NATIONAL RETIREMENT FUND,
NEW MEXICO STATE INVESTMENT
COUNCIL, NEW MEXICO STATE
INVESTMENT COUNCIL LAND GRANT
PERMANENT FUND, NEW MEXICO STATE
INVESTMENT COUNCIL SEVERANCE TAX
PERMANENT FUND, NEW YORK CITY
EMPLOYEES' RETIREMENT SYSTEM, NEW
YORK CITY FIRE DEPARTMENT PENSION
FUND, NEW YORK CITY POLICE PENSION
FUND, NORTHEAST CARPENTERS PENSION
FUND, PACIFIC COAST ROOFERS PENSION
PLAN, SANBA II INVESTMENT AUTHORITY,
STATE STREET BANK AND TRUST
COMPANY (AS TRUSTEE ON BEHALF OF
AMERICAN AIRLINES MASTER FIXED
BENEFIT PENSION PLAN TRUST);
STEAMSHIP TRADE ASSOCIATION OF
BALTIMORE, INC. – INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION (AFL-CIO)
PENSION FUND, TEACHERS' RETIREMENT
SYSTEM OF THE CITY OF NEW YORK,
UNITED FOOD AND COMMERCIAL
WORKERS INTERNATIONAL UNION
PENSION PLAN FOR EMPLOYEES, WESTERN
CONFERENCE OF TEAMSTERS PENSION
TRUST

Defendants.

## YUCAIPA AMERICAN ALLIANCE FUND I, LLC AND YUCAIPA AMERICAN MANAGEMENT, LLC'S MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................. 1

II.  STATEMENT PURSUANT TO FED. R. BANKR. P. 7012 AND
     LOCAL RULE 7012-1 ......................................................................... 3

III. STATEMENT OF THE FACTS ............................................................. 3

     A.   Allied's Chapter 11 Cases................................................................. 3

     B.   The Yucaipa Litigation. .................................................................... 6

     C.   Plaintiff Sues the Defendants Under Delaware Law. ............................. 6

IV.  ARGUMENT ...................................................................................... 8

     A.   The Court Lacks Subject Matter Jurisdiction. ...................................... 8

          1.   The Court Has Limited Jurisdiction Post-Confirmation............................ 8

          2.   This is Not a Core Proceeding and Does Not Arise In
               the Chapter 11 Cases.............................................................. 12

          3.   The Court Does Not Have "Related To" Jurisdiction Because
               There is No Close Nexus to the Bankruptcy Plan or Proceeding. ............ 14

          4.   The Plan's Jurisdiction Retention Provisions are Inapplicable................ 17

          5.   The Court Does Not Have Supplemental or Ancillary Jurisdiction
               Over This Proceeding. .............................................................. 19

     B.   In the Alternative, the Court Should Exercise its Discretion to Abstain
          From Hearing This Case. ................................................................. 21

     C.   Count Three of the Complaint is Barred by Delaware's Statute of Limitations... 24

     D.   Count Three of the Complaint is Barred by the Express Terms of the
          Partnership Agreement on Which it is Based. ...................................... 26

          1.   Plaintiff Cannot Enforce Section 10.1(b).................................... 27

          2.   The General Partner is Not Required to Take Action Under
               Section 10.1(b). ...................................................................... 29

     E.   Counts One and Two of the Complaint Must Be Dismissed to the Extent
          They Seek Avoidance of Transfers Made More Than Three Years Ago. ............ 30

V.   CONCLUSION...................................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Patel (In re Diplomat Constr., Inc.)*
   512 B.R. 721 (Bankr. N.D. Ga. 2014) ................................................................. 20, 24

*Bass v. Denney (In re Bass)*
   171 F.3d 1016 (5th Cir. 1999) ................................................................................ 20

*Beard v. Braunstein*
   914 F.2d 434 (3d Cir. 1990)................................................................................... 24

*Boyer v. Conte (In re Import & Mini Car Parts, Ltd., Inc.)*
   200 B.R. 857 (Bankr. D. Ind. 1996)................................................................ 17, 20

*Brinckerhoff v. Enbridge Energy Co.*
   67 A.3d 369 (Del. 2013) ........................................................................................ 14

*Britamco Underwriters, Inc. v. C.J.H., Inc.*
   845 F. Supp. 1090 (E.D. Pa. 1994), aff'd, 37 F.3d 1485 (3rd Cir. 1994) ................................ 7

*Broadhollow Funding, LLC v. Bank of Am., N.A. (In re Am. Home Mortg.)*
   390 B.R. 120 (Bankr. D. Del. 2008) ..................................................................... 23

*CGU Life Ins. Co. of Am. v. Metro. Mortg. & Sec. Co.*
   131 F. Supp. 2d 670 (E.D. Pa. 2001) ...................................................................... 7

*Daimler Chrysler Corp. v. Cuno*
   547 U.S. 332 (2006)................................................................................................ 8

*Diamond v. Friedman (In re Century City Doctors Hospital, LLC)*
   466 B.R. 1 (Bankr. C.D. Cal. 2012)....................................................................... 31

*Donaldson v. Bernstein*
   104 F.3d 547 (3d Cir. 1997)................................................................................... 12

*Fairchild Liquidating Trust v. New York (In re Fairchild Corp.)*
   452 B.R. 525 (Bankr. Del. 2011)......................................................... 8, 9, 16, 17

*Faulkner v. Eagle View Capital Mmgt. (In re Heritage Org., L.L.C.)*
   454 B.R. 353 (Bankr. N.D. Tex. 2011) ............................................................ 15, 19

*Freeman v. Williamson*
   383 Ill. App. 3d 933 (2008) ................................................................................... 31

*Gavin/Solmonese LLC v. Citadel Energy Partners LLC (In re Citadel Watford
   City Disposal Partners)*
   603 B.R. 897 (Bankr. D. Del. May 2, 2019)........................................................... 29

*GE Capital Corp. v. Teo*
   2001 U.S. Dist. LEXIS 22266, at *12-13 (D.N.J. Dec. 14, 2001)............................ 24

*Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*
   583 A.2d 1378 (Del. Super. 1990) ......................................................................... 28

*Halvajian v. Bank of N.Y., N.A.,*
   191 B.R. 56 (D. N.J. 1995) .................................................................................... 20

*In re DHP Holdings II Corp.*
   435 B.R. 220 (Bankr. D. Del. 2010) ................................................................ 22, 23

DOCS_DE:238468.5 96991/001

*In re Exide Techs.*
544 F.3d 196 (3d Cir. 2008) ........................................................................ 9, 14

*In re Integrated Health Servs., Inc.*
291 B.R. 615 (Bankr. D. Del. 2003) ................................................................ 23

*In re Pennysaver USA Publ'g, LLC*
587 B.R. 43 (Bankr. D. Del. 2018) .................................................................. 11

*In re PennySaver USA Publishing, LLC*
587 B.R. 445 (Bankr. D. Del 2018) ................................................................. 29

*In re PRS Ins. Grp., Inc.*
445 B.R. 402 (Bankr. D. Del. 2011) ................................................................ 17

*In re Resorts Int'l, Inc.*
372 F.3d 154 (3d Cir. 2004).................................................. 2, 8, 9, 10, 11, 13, 14, 15, 17, 18

*Insituform of N. Am., Inc. v. Chandler*
534 A.2d 257 (Del. Ch. 1987).......................................................................... 28

*Jeffrey L. Miller Invs., Inc. v. Premier Realty Advisors, LLC (In re Jeffrey L. Miller Invs., Inc.)*
Nos. 8:16-bk-10036-MGW, 8:21-ap-00150-MGW, 2021 Bankr. LEXIS 2771,
at *2 (Bankr. M.D. Fla. Sep. 30, 2021).......................................................... 20

*Kehr Packages, Inc. v. Fidelcor, Inc.*
926 F.2d 1406 (3d. Cir. 1991)........................................................................... 8

*Marshall & Ilsley Trust. Co., N.A. v. Lapides (In re Transcolor Corp.)*
2007 Bankr. LEXIS 3436, *1, *9; 2007 WL 2916408 (Bankr. D. Md. 2007) ............ 16, 20, 21

*Miller v. Conte*
203 B.R. 124 (N.D. Ind. 1996), *aff'd sub nom. In re Mini Car Parts, Ltd., Inc.*,
97 F.3d 1454 (7th Cir. 1996)............................................................................ 17

*Pacor, Inc. v. Higgins (In re Pacor)*
743 F.2d 984 (3d Cir. 1984)............................................................................... 9

*Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*
998 F.2d 1192 (3d. Cir. 1993)........................................................................... 27

*Quadrant Structured Prods. Co. v. Vertin*
2015 Del. Ch. LEXIS 266, 2015 WL 6157759, at *20 (Del. Ch. Oct. 20, 2015),
*aff'd*, 151 A.3d 447 (Del. 2016)....................................................................... 14

*Reclaimant Corp. v. Deutsch*
211 A.3d 976 (Conn. 2019) .............................................................................. 31

*Samson Res. Co. v. J. Aron & Co. (In re Semcrude, L.P.)*
2010 Bankr. LEXIS 4567, at *57 (Bankr. D. Del. Dec. 13, 2010) ........................... 20

*Stuchen v. Duty Free Int'l, Inc.*
1996 Del. Super. LEXIS 187, 1996 WL 33167249, at *9 (Del. Super. Apr. 22, 1996).......... 28

*Sunseri v. Moen*
382 Ill. App. 3d 821 (2008) ............................................................................. 26

*Sunseri v. Proctor*
487 F. Supp. 2d 905 (E.D. Mich. 2007), *aff'd*, 286 F. App'x 930 (6th Cir. 2008)............ 26

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
51 U.S. 308, 127 S.Ct. 2499 (2007)................................................................. 27

iii

*Things Remembered, Inc. v. Petrarca*
  516 U.S. 124 (1995) ............................................................................................. 9

*Torkelsen v. Maggio (In re Guild & Gallery Plus)*
  72 F.3d 1171 (3d Cir. 1996) ............................................................................... 13

*Triad Guar. Ins. v. Am. Home Mortg. Inv. Corp. (In re Am. Home Mortg. Holding)*
  477 B.R. 517 (Bankr. D. Del. 2012) ........................................................... 9, 15, 18

*Valley Nat'l Bank v. A.E. Rouse & Co.*
  121 F.3d 1332 (9th Cir. 1997) ...................................................................... 25, 26

*Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*
  No. 2020-0194-KSJM, 2020 Del. Ch. LEXIS 311, at *5 (Ch. Oct. 8, 2020) ........... 13

*Walker v. Cadle Co. (In re Walker)*
  51 F.3d 562 (5th Cir. 1995) ............................................................................... 20

## Statutes

6 Del. C. § 15-307(c) ............................................................................................. 25

6 Del. C. § 17-1002 ............................................................................................... 29

6 Del. C. § 17-403(a) ............................................................................................. 25

6 Del. C. § 17-607(c) ........................................................................................ 30, 31

6. Del. C. § 17-607(a) ............................................................................................ 31

10 Del. C. § 8106 .................................................................................................. 26

11 U.S.C. § 157(e) ................................................................................................. 24

28 U.S.C. § 1334 ........................................................................... 8, 12, 18, 20, 22

28 U.S.C. § 1334(c)(1) .................................................................................. 2, 21, 24

28 U.S.C. § 1367 ................................................................................................... 20

28 U.S.C. § 157(b)(2)(H) ....................................................................................... 14

## Rules

Del. Bankr.L.R. 7012-1 ........................................................................................... 3

Fed. R. Bankr. P. 5011 .......................................................................................... 21

Fed. R. Bankr. P. 7012 ............................................................................................ 3

Fed. R. Bankr. P. 7012(b) ........................................................................................ 2

Fed. R. Bankr. P. 7069 .......................................................................................... 19

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 2

Fed. R. Civ. P. 69(a)(1) .......................................................................................... 19

iv

Yucaipa American Alliance Fund I, LLC and Yucaipa American Management, LLC, ("Defendants") hereby move (this "Motion"), for the reasons set forth herein, to dismiss the complaint [D.I. 1] filed in the above-captioned adversary proceeding by Plaintiff Catherine E. Youngman, in her capacity as the Litigation Trustee and Plan Administrator for ASHINC Corporation and related debtors (the "Trustee" or "Plaintiff").  In support of this Motion, the Defendants respectfully state as follows:

**I.**
**PRELIMINARY STATEMENT**[2]

The Court lacks jurisdiction over this proceeding.  Plaintiff filed this action in her capacity as a judgment creditor of Yucaipa, a non-debtor, following this Court's entry of a judgment against Yucaipa in an adversary proceeding that was commenced nearly ten years ago. None of the Defendants named in the Plaintiff's Complaint are parties to that adversary proceeding.  Moreover, none of the Defendants were parties to Allied's Chapter 11 Cases; only one – out of more than 30 – even filed a proof of claim in the Chapter 11 Cases.

The Plaintiff asserts three causes of action in the Complaint, each of which arises entirely under state law.  Two of the claims invoke Delaware's version of the Uniform Fraudulent Transfer Act and the third claim seeks to impose liability on the general partner of a limited partnership under Delaware law.  In short, this proceeding (i) was brought by a non-debtor (*i.e.*, Plaintiff, acting on behalf of an entity created following the termination of the Debtors' estates, whose rights and claims have been intentionally separated from the estates), (ii) against non-debtors, and (iii) involves exclusively non-core issues of state law.

---

[2] All capitalized terms used in this section have the definitions assigned to those terms below.

Importantly, the Debtors' plan of reorganization was confirmed by an order entered approximately six years ago.  All of the transfers that Plaintiff seeks to avoid were made years *after* the Plan was confirmed.  Complaint, at 103 (alleging that relevant transfers were made between October 2017 and May 2019).  The state law claims asserted in the Complaint do not "arise under" the Bankruptcy Code, nor do they "arise in" or "relate to" any bankruptcy case. Certainly, none of those claims affect an integral aspect of the bankruptcy process or bear a close nexus to the Plan sufficient to provide this court with post-confirmation jurisdiction over this proceeding.  *See In re Resorts Int'l, Inc.*, 372 F.3d 154, 167 (3d Cir. 2004) [hereafter, *Resorts*]. As a result, this Court lacks jurisdiction over this proceeding and should dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Bankruptcy Procedure 7012(b).  In the alternative, the Court should exercise its discretion to abstain from hearing the dispute under 28 U.S.C. § 1334(c)(1), so that Plaintiff's claims may be heard in a more appropriate forum.  In fact, Plaintiff filed a nearly identical complaint in Los Angeles County Superior Court on October 7, 2021.  *See Youngman v. Yucaipa American Alliance Fund I, LLC, et al.*, Case No. 21STCV37137 (Cal. Super Ct.) (the "California Action").

If the Court determines not to dismiss or abstain from hearing this proceeding for the reasons summarized above, it should still dismiss Count Three of the Complaint because that claim is barred by Delaware's statute of limitations and Section 10.1(b) of the Partnership Agreements is not enforceable by Plaintiff or by its own terms.  Moreover, pursuant to Delaware law, Counts One and Two must be dismissed to the extent Plaintiff seeks to recover transfers with respect to which more than three years has passed since the date of the transfer.

2

**II.**
**STATEMENT PURSUANT TO FED. R. BANKR. P. 7012 AND LOCAL RULE 7012-1**

Pursuant to Bankruptcy Rule 7012 and Local Rule 7012-1, the Defendants do not consent to the entry of final orders or judgments by the Court.

**III.**
**STATEMENT OF THE FACTS**

**A.    Allied's Chapter 11 Cases.**

On May 17, 2012 (the "Petition Date"), involuntary chapter 11 cases were commenced against Allied Systems Holdings, Inc. ("Allied Holdings") and Allied Systems, Ltd. (L.P.) ("Allied Systems").  *See* Case. No. 12-11564 (CSS) ("Main Case"), D.I. 1.  On June 10, 2012, Allied Holdings and Allied Systems consented to entry of orders for relief and caused seventeen direct and indirect subsidiaries of Allied Holdings to file voluntary petitions (collectively, the "Debtors").  *See* Main Case, D.I. 68, 88.  In 2012 and 2013, the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases (the "Chapter 11 Cases")  and certain individual creditors commenced adversary proceedings (the "Adversary Proceedings")[3] against Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. (collectively, "Yucaipa") alleging, among other things, that Yucaipa was liable for breach of contract and breach of fiduciary duty due to certain actions that Yucaipa was alleged to have taken years prior to the Petition Date.

On December 9, 2015, the Court entered an order (the "Confirmation Order") confirming the Debtors' Modified First Amended Joint Chapter 11 Plan of Reorganization Proposed by the

---

[3] Adversary Proceeding No. 13-50530 ("Estate Action") was commenced against Yucaipa on February 1, 2013. Complaint, at 95.  Adversary Proceeding No. 14-50971 ("Lender Action") was commenced against Yucaipa on November 19, 2014.  *Id.*

3

Debtors, the Committee and the First Lien Agents (the "Plan").  *See* Main Case, D.I. 3383.

Pursuant to the Confirmation Order, the "Litigation Claims" were vested in the ASHINC

Litigation Trust (the "Trust") and ultimately, Plaintiff was appointed the "Litigation Trustee" of

the Trust ("the Trustee").  *See* Confirmation Order ¶21.  The Plan defined the "Litigation

Claims" to include the "Estate Claims," which term was defined to mean:

> all claims of the Debtors' Estates asserted in the Amended Complaint
> and any additional claims of the Debtors' Estates arising out of, or
> related to, the facts and circumstances described in the Amended
> Complaint, including defendants not named in the Amended Complaint.[4]

Plan, §§1.2(102) and 1.2(71).

Section 9.1(e) of the Plan purported to reserve jurisdiction in the Court over certain

proceedings, including the Litigation Claims, except as otherwise ordered by the Court:

> Under Bankruptcy Code Sections 105(a) and 1142, and notwithstanding
> entry of the Confirmation Order and occurrence of the Effective Date,
> and ***except as otherwise ordered by the Bankruptcy Court***, the
> Bankruptcy Court shall retain exclusive jurisdiction over all matters
> arising out of, and related to, the Chapter 11 Cases and the Plan to the
> fullest extent permitted by law, including, without limitation, jurisdiction
> to:
>
> . . . .
>
> (e) hear and determine any and all adversary proceedings, motions,
> applications, and contested or litigated matters arising out of, under, or
> related to, the Litigation Claims or the Chapter 11 Cases, including,
> without limitation, any matters arising out of the asset purchase
> agreements evidencing the Sale, the JCT Sale Order, and the SBDRE

---

[4] The "Amended Complaint" is defined to mean:

> the Official Committee of Unsecured Creditors' Amended Complaint for (I) Equitable
> Subordination, (II) Recharacterization, (III) Breach of Contract, (IV) Specific Performance, (V)
> Breaches of Fiduciary Duties, (VI) Aiding and Abetting Breaches of Fiduciary Duties, (VII)
> Avoidance and Recovery of Avoidable Transfers, and (VIII) Disallowance of Certain Claims
> [Adv. Pro. Docket No. 76], filed on March 14, 2013 in the adversary proceeding captioned The
> Official Committee of Unsecured Creditors of Allied Systems Holdings, Inc. v. Yucaipa American
> Alliance Fund I, L.P., et al., Adv. Pro. No. 13-50530 (CSS).

Plan §1.2(21).

DOCS_DE:238468.5 96991/001

Sale Order;

Plan, §9.1(e) (emphasis added).

However, pursuant to Paragraph 54 of the Confirmation Order, the Court expressly

overrode Section 9.1(e) of the Plan with respect to the Court's jurisdiction over the Litigation

Claims:

> Notwithstanding anything in the Plan, the Plan Supplement, or this
> Confirmation Order to the contrary, nothing in the Plan, Plan
> Supplement, or this Confirmation Order shall be deemed to (i) provide
> the Bankruptcy Court with jurisdiction over any Litigation Claims and
> any claims involving any of the persons or entities described in Section
> 3.7(e) of the Plan, (ii) limit or impair any named or unnamed defendant's
> right to contest the Bankruptcy Court's jurisdiction over any Litigation
> Claim and any claims involving any of the persons or entities described
> in Section 3.7(e) of the Plan that may be asserted against them, or (iii)
> modify the rights of any person or entity as described in Section 3.7(e) of
> the Plan.

Confirmation Order, at 54.

Section 3.7(e) of the Plan, which is referenced above, further provides:

> The Plan and Confirmation Order shall have no effect on or prejudice in
> any way Yucaipa or the Plan Proponents', Mark Gendregske's, or Brian
> Cullen's (or their successors or assigns) respective rights, claims or
> defenses or be used in any way in any litigation, contested matter,
> adversary proceeding (or any appeal from any order entered in any of the
> foregoing) involving (i) Yucaipa, (ii) the Plan Proponents (or with
> respect to the entities identified in clauses (i) and (ii) their respective
> affiliates (including BDCM Opportunity Fund II, LP, Black Diamond
> CLO 2005-1 Ltd., and Spectrum Investment Partners, L.P.) or officers or
> directors, or any of their respective successors or assigns), or (iii) any of
> the Debtors' current or former officers or directors, provided however,
> that the Plan and Confirmation Order may be used in any litigation,
> contested matter or adversary proceeding seeking to enforce the terms of
> this Plan. This Section 3.7(e) is intended to be applicable to each
> provision of the Plan and shall be included in the Confirmation Order.

Plan, §3.7(e) (emphasis added).

Thus, the Plan expressly disclaims any connection to litigation involving Yucaipa or its

affiliates.  And, as quoted above, paragraph 54 of the Confirmation Order provides that the

DOCS_DE:238468.5 96991/001

jurisdictional provisions of the Plan will be inapplicable to Yucaipa and its affiliates and that the Plan will not modify the rights of Yucaipa or its affiliates.

**B.**     **The Yucaipa Litigation.**

Plaintiff prosecuted the Adversary Proceedings following confirmation of the Plan, and, on May 1, 2020, moved for summary judgment on certain of the claims at issue in the Estate Action.  Estate Action, D.I. 705.  On June 23, 2021, this Court issued the *Judgment* dated June 23, 2021, Estate Action, D.I. 841 (the "Judgment"), against Yucaipa.  Yucaipa subsequently appealed the Judgment, which appeal remains pending before the District Court.  None of the Defendants named in Plaintiff's Complaint are parties to the Adversary Proceedings and none are liable on the Judgment.[5]

**C.**     **Plaintiff Sues the Defendants Under Delaware Law.**

On October 6, 2021, the Trustee filed the Complaint, in its capacity as "a judgment creditor against Yucaipa."  Complaint, at 1.  Count One alleges that certain [current and former] limited partners of Yucaipa (the "Limited Partner Defendants") were recipients of Transfers that are avoidable as "actual" fraudulent transfers pursuant to 6. Del. C. § 1304(a)(1).  Complaint at 141.  Count Two alleges that the Limited Partner Defendants are recipients of certain Transfers that are avoidable as "constructive" fraudulent transfers pursuant to 6. Del. C. § 1304(a)(2) and 1305(a).  *Id.* at 145.  Count Three seeks a declaratory judgment that the General Partner is liable for the debts of Yucaipa "under controlling law," and to require the General Partner to "seek

---

[5] On May 2, 2022, following trial on the remaining claims in the Estate Action and the Lender Action, this Court issued its Findings of Fact and Conclusions of Law [Estate Action, D.I. 1006; Lender Action, D.I. 742], and a related judgment [Estate Action, D.I. 1008; Lender Action, D.I. 744] in favor of Yucaipa on the remaining claims. The Trustee has appealed that judgment.

DOCS_DE:238468.5 96991/001

return of Transfers to Transferee Defendants" by enforcing Section 10.2(b) of Yucaipa's partnership agreement.  *Id.* at 148-150.  Since Yucaipa is a Delaware limited partnership, "controlling law" is likely a reference to Delaware partnership law.  Moreover, Yucaipa's partnership agreement is governed by Delaware law.[6]  All three claims asserted in the Complaint (collectively, the "Claims") are, therefore, governed by Delaware law.[7]

In sum, Plaintiff, in its capacity as a creditor of Yucaipa, sued the Defendants – none of which are parties to the Adversary Proceedings, and only one of which even made an appearance in the Chapter 11 Cases[8] – alleging that the Limited Partner Defendants received transfers made by Yucaipa years after confirmation of the Plan that are avoidable under Delaware law.  Plaintiff further asserts that the General Partner is liable for Yucaipa's debts under Delaware law and should be made to enforce certain provisions of Yucaipa's partnership agreement, which is governed by Delaware law, in demanding the return of funds distributed by the partnership to its partners.  The Claims were not raised in the Adversary Proceedings, nor could they have been, as they are premised upon entirely new facts and circumstances, which first arose many years after the commencement of the Adversary Proceedings and after confirmation of the Plan.

## IV.
## ARGUMENT

Plaintiff bears the burden of demonstrating that this Court has jurisdiction over this

---

[6] Partnership Agreements § 16.7.

[7] Delaware state law would govern the underlying substantive issues of Plaintiff's claim for declaratory relief.  *See, e.g., CGU Life Ins. Co. of Am. v. Metro. Mortg. & Sec. Co.*, 131 F. Supp. 2d 670, 675 (E.D. Pa. 2001) (citing *Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F. Supp. 1090, 1093 (E.D. Pa. 1994), aff'd, 37 F.3d 1485 (3rd Cir. 1994)

[8] Western Conferences of Teamsters Pension Trust filed a proof of claim in Allied Holdings' Chapter 11 Case for certain ERISA liabilities under a benefits plan.  *See* Main Case, Claims Register, POC #483.

action.  *See Fairchild Liquidating Trust v. New York (In re Fairchild Corp.)*, 452 B.R. 525, 530 (Bankr. Del. 2011) (Sontchi, J.) (*citing Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d. Cir. 1991)); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). Plaintiff cannot meet that burden here, and the Court should, therefore, dismiss the Complaint. *See id.*, at 529.

A.    **The Court Lacks Subject Matter Jurisdiction.**

      1.    **The Court Has Limited Jurisdiction Post-Confirmation.**

The Third Circuit has held that "the source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of [a plan]," but rather 28 U.S.C. § 1334, which vests in the district courts "original and exclusive jurisdiction of all cases under title 11, and original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Resorts*, 327 F.3d at 161.  District courts routinely refer all such cases and proceedings to the bankruptcy courts. *Id.* at 162.

For matters referred by the district court, a bankruptcy court's jurisdiction may extend to four types of title 11 matters: "(1) cases under title 11, (2) proceeding[s] arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." *Resorts* at 162.  The first three categories are "core" proceedings over which bankruptcy courts have "full adjudicative power."  *Id.*  By contrast, a bankruptcy court can only submit proposed findings of fact and conclusions of law to the district court with respect "non-core" proceedings that are merely "related to" a bankruptcy case.  *In re Exide Techs.*, 544 F.3d 196, 205 (3d Cir. 2008).  Generally, "related to" jurisdiction may be invoked when "the outcome of th[e] proceeding could conceivably have any effect on the estate being administered in

8

bankruptcy." *Pacor, Inc. v. Higgins (In re Pacor)*, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis omitted), *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995).

However, the Third Circuit has further held that a bankruptcy court's jurisdiction is "limited after confirmation of a plan" of reorganization. *Resorts*, 372 F.3d at 168; *see also Fairchild Corp.*, 452 B.R. at 531. Indeed, once a debtor's plan has been confirmed, the bankruptcy court retains "related to" jurisdiction over non-core proceedings *only* if the action "affect[s] an integral aspect of the bankruptcy process--there must be a close nexus to the bankruptcy plan or proceeding." *Resorts*, 372 F.3d at 166–67; *see also Triad Guar. Ins. v. Am. Home Mortg. Inv. Corp. (In re Am. Home Mortg. Holding)*, 477 B.R. 517, 529-30 (Bankr. D. Del. 2012) (Sontchi, J.) ("the Third Circuit Court of Appeals established a test to ensure that the exercise of post-confirmation 'related to' jurisdiction is confined to those proceedings that impact an aspect integral to the bankruptcy process. If an action is filed after the confirmation date, the bankruptcy court's 'related to' jurisdiction does not extend beyond those claims or proceedings that possess a 'close nexus' to the bankruptcy plan or proceeding.").

Generally, to possess the requisite close nexus, a matter must "affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *Resorts* at 166. A dispute that is merely "collateral" to the bankruptcy case will lack the requisite nexus and the bankruptcy court will not have subject matter jurisdiction over the dispute. *Id*. at 168-69.

The facts of *Resorts* are instructive. In that case, a litigation trust created in a chapter 11 debtor's case took assignment of certain claims under a plan of reorganization and acted as a representative of creditors of the debtor's estate; assets obtained by the trust would be available

for distribution to the debtor's former creditors.  *Id*. at 157.  Years after the entry of the

confirmation order, the trustee of the trust asserted causes of action under state law against an

accounting firm that was retained by the trust pursuant to a litigation trust agreement, which had

been approved by the bankruptcy court together with the plan.  *See id*. at 158.  The trustee

alleged that the accounting firm made several errors that impacted the allocation of assets

between the trust and the reorganized debtor, which harmed the beneficiaries of the trust.  *Id*. at

158-59.  Although the reorganized debtor was not a party to the dispute, the trustee invoked the

bankruptcy court's jurisdiction over the proceeding, for reasons including that the confirmed

plan and litigation trust agreement included "sweeping jurisdictional retention provisions" that

allegedly provided for the bankruptcy court's retention of exclusive jurisdiction over the trust's

claims.  *Id*. at 160.

    In reversing the order of the district court, the Third Circuit concluded that the

bankruptcy court lacked subject matter jurisdiction over the proceeding and explained:

> [T]his proceeding lacks a close nexus to the bankruptcy plan or
> proceeding and affects only matters collateral to the bankruptcy process.
> The resolution of these malpractice claims will not affect the estate; it
> will have only incidental effect on the reorganized debtor; it will not
> interfere with the implementation of the Reorganization Plan; though it
> will affect the former creditors as Litigation Trust beneficiaries, they no
> longer have a close nexus to bankruptcy plan or proceeding because they
> exchanged their creditor status to attain rights to the litigation claims;
> and as stated, the jurisdictional retention plans [*sic*] cannot confer
> jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28
> U.S.C. § 157.  For these reasons, the malpractice claims here lack the
> requisite close nexus to be within the Bankruptcy Court's "related to"
> jurisdiction post-confirmation.

*Id.* at 169.

    The Third Circuit also found significant that, by its very nature, the post-confirmation

litigation trust was established to be independent of the debtor's estate and that the bankruptcy

court, therefore, necessarily had a weaker jurisdictional connection to the trust's claims. *Id*. ("the

Litigation Trust was created in part so that the Plan could be confirmed and the debtor freed from

bankruptcy court oversight without waiting for the resolution of the litigation claims.  The

deliberate act to separate the litigation claims from the bankruptcy estate weakens the Trustee's

claim that the Litigation Trust has the same jurisdictional nexus as that of the estate."); *cf. In re*

*Pennysaver USA Publ'g, LLC*, 587 B.R. 43, 52 (Bankr. D. Del. 2018) (Sontchi, J.) ("In a post-

confirmation context, a litigation trust or liquidating trust does not equal the estate.  In fact, the

very issue with post-confirmation proceedings is that the connection to the estate all but vanishes

in the face of a plan of reorganization, where parties have purposefully and by agreement

removed a debtor from court oversight.").

The Third Circuit further held that the plan's jurisdictional retention provisions were not

meaningful: "Bankruptcy courts can only act in proceedings within their jurisdiction.  If there is

no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in

a plan of reorganization or trust agreement are fundamentally irrelevant." *Id.* at 161 (citing

*Donaldson v. Bernstein*, 104 F.3d 547, 552 (3d Cir. 1997)).

The Third Circuit concluded:

> Resolution of this matter will not require a court to interpret or construe
> the Plan or the incorporated Litigation Trust Agreement.  Whether
> [defendant] was negligent or breached its contract will not be determined
> by reference to those documents.  There is no dispute over their intent.
> The Trustee's claims are "ordinary" professional negligence and breach
> of contract claims that arise under state common law.  Though the Plan
> and Trust Agreement provide the context of the case, this bare factual
> nexus is insufficient to confer bankruptcy jurisdiction.

> The malpractice action could result in an increase in the Litigation
> Trust's finite assets.  But the potential to increase assets of the Litigation

Trust and its beneficiaries does not necessarily create a close nexus
sufficient to confer "related to" bankruptcy court jurisdiction post-
confirmation. . . .  Furthermore, if the mere possibility of a gain or loss of
trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit
involving a continuing trust would fall under the "related to" grant.  Such
a result would widen the scope of bankruptcy court jurisdiction beyond
what Congress intended for non-Article III bankruptcy courts.
Accordingly, resolution of these malpractice claims will not affect the
interpretation, implementation, consummation, execution, or
administration of the Plan.

*Id.* at 170-71.

> **2.     This is Not a Core Proceeding and Does Not Arise In the Chapter 11
> Cases.**

Plaintiff alleges incorrectly – and without any support – that this case is a "core

proceeding" and one that "arises in" the Debtors' Chapter 11 Cases.  [Complaint, at 11, 15].[9]

The Third Circuit has held that "a core proceeding under section 157 is one that 'invokes a

substantive right provided by title 11' or one that 'by its nature, could arise only in the context of

a bankruptcy case.'"  *Resorts*, at 162-63 (quoting *Torkelsen v. Maggio (In re Guild & Gallery*

*Plus)*, 72 F.3d 1171, 1178 (3d Cir. 1996)).

Here, Plaintiff's asserted Claims arise entirely under Delaware state law and do not

invoke any substantive right provided by title 11.  Further, Plaintiff's Claims certainly could

(and, in fact, did) arise outside the context of a bankruptcy case.  *See, e.g., id.* at 163 (rejecting

litigation trustee's argument that a post-confirmation state law claim against a non-debtor was a

---

[9] Plaintiff also asserts, without any support, that this Court has the Constitutional power to enter a final order in this
proceeding.  That is clearly incorrect.  A bankruptcy court lacks authority to finally adjudicate non-core, state law
claims without the consent of the parties.  *See, e.g., Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165
(2014) (holding that fraudulent conveyance claims asserted on behalf of debtor's estate were not core claims, "that
Article III does not permit these claims to be treated as 'core,'" and that the bankruptcy court should have submitted
proposed findings of fact and conclusions of law pursuant to Section 157(c)(1)).  That is clearly true here, where
non-core claims that do not belong to any debtor's estate have been asserted by a non-debtor against other non-
debtors.  The Defendants do not consent to this Court's entry of final orders or judgments in this proceeding.

"core" proceeding because the claim arose post-confirmation and did "not directly affect the debtor or the liquidation of the estate's assets").  Delaware courts routinely adjudicate state-law fraudulent transfer and partner liability claims similar to those asserted in the Complaint.  *See, e.g., Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*, No. 2020-0194-KSJM, 2020 Del. Ch. LEXIS 311, at *5 (Ch. Oct. 8, 2020) (dismissing fraudulent transfer claims under the Delaware Uniform Fraudulent Transfer Act); *Quadrant Structured Prods. Co. v. Vertin*, 2015 Del. Ch. LEXIS 266, 2015 WL 6157759, at *20 (Del. Ch. Oct. 20, 2015), *aff'd*, 151 A.3d 447 (Del. 2016) (holding that defendants did not make or receive fraudulent transfers in violation of Delaware law); *Brinckerhoff v. Enbridge Energy Co.*, 67 A.3d 369, 370 (Del. 2013) (affirming lower court's dismissal of claims against general partner and interpreting provisions of the governing limited partnership agreement).

That Plaintiff asserts claims to avoid fraudulent conveyances does not mean that Plaintiff's claims are "core" claims within the scope of 28 U.S.C. § 157(b)(2)(H).  *See* Complaint, at 15.  The statute includes within its scope only "core" claims "arising under title 11, or arising in a case under title 11."  *Id.*  Where, as here, fraudulent transfer claims are asserted by a non-debtor against other non-debtors, years after confirmation of a plan, the claims do not arise under title 11 or in a case under title 11.  *See, e.g., Exide Techs.*, 544 F.3d at 207 ("Even assuming that the claims fall within the list, none — on its face — invokes a substantive right under the Bankruptcy Code.  Each claim is a state law cause of action, sounding in contract and tort.").  The Court, therefore, lacks "arising in" jurisdiction.

**3.      The Court Does Not Have "Related To" Jurisdiction Because There is No Close Nexus to the Bankruptcy Plan or Proceeding.**

DOCS_DE:238468.5 96991/001

This proceeding also does not fall within the Court's limited, post-confirmation, "related to" jurisdiction. As summarized above, the "essential inquiry" in any post-confirmation jurisdictional analysis is whether there is a sufficiently "close nexus" between the bankruptcy plan or proceeding and the post-confirmation matter. *Resorts*, 372 F.3d at 166.

This proceeding has no material connection to the Chapter 11 Cases, let alone the requisite "close nexus." The Complaint does not identify a single provision of the Plan that would need to be construed in connection with this case, let alone allege that this dispute would affect the interpretation, implementation, consummation, execution, or administration of the confirmed Plan. Indeed, as quoted above, the Confirmation Order and the Plan expressly disclaimed any connection between the Plan and any litigation involving Yucaipa or its affiliates. Confirmation Order, at 54; Plan, §3.7(e). Moreover, the outcome of this proceeding will have no impact on the Debtors or their estates, which were terminated upon confirmation, and will certainly not "affect an integral aspect of the bankruptcy process." *See Triad*, 477 B.R. at 532. This proceeding is arguably not even "collateral to the bankruptcy process." *Resorts*, at 168-69.

Several courts have held that a bankruptcy court lacks subject matter jurisdiction over proceedings similar to this one. For example, in *Faulkner v. Eagle View Capital Mmgt. (In re Heritage Org., L.L.C.)*, 454 B.R. 353, 356 (Bankr. N.D. Tex. 2011), a chapter 11 trustee obtained a judgment against certain fraudulent transfer defendants while the debtor's case was pending. A chapter 11 plan was subsequently confirmed in the case and the trustee was appointed as the representative of a post-confirmation creditors' trust. *Id*. at 356. The trustee, acting as a judgment creditor, then filed a new complaint in the bankruptcy court asserting claims under Texas's Uniform Fraudulent Transfer Act against alleged recipients of fraudulent transfers from

14

certain of the original defendants/judgment debtors, some of which were made prior to

confirmation.  *Id*. at 357.

The court held that it lacked jurisdiction over the trustee's state law claims and explained:

> . . . [N]o bankruptcy law will be involved in the resolution of the TUFTA claim.  No facts or law deriving from the reorganization will determine the dispute. . . .  [T]he Trustee is not asserting this claim by virtue of his status as Trustee of Heritage's bankruptcy estate, as he was in connection with the First Adversary Proceeding.  He is instead asserting rights as a judgment creditor — of entities who were never in bankruptcy at all.  Therefore, it cannot be said that his prosecution of the TUFTA claim asserted here was a key feature of the Heritage Plan.  For example, the Trustee, as a judgment creditor of Ettman Trust, which was never in bankruptcy, is suing Treasured Investment — an entity which was also never in bankruptcy and which was not even a party to the First Adversary Proceeding — to recover property that Ettman Trust is alleged to have fraudulently transferred to Treasured Investment.  The fact that the Trustee got his judgment against Ettman Trust in a bankruptcy court seems of little legal significance.

> Here, the TUFTA claim is merely "related to" a case under title 11, as it would have an existence outside of bankruptcy; it is not a core proceeding, and it is related to the bankruptcy in only the most general sense — really, only by the fact that the Trustee got his judgment against the non-debtors in the bankruptcy court.  The TUFTA claim will involve new and different proof, beyond that already proffered during the First Adversary Proceeding — for example, the Trustee will have to prove the elements of a claim under TUFTA as to each of the Judgment Debtors. . . .

> For these reasons, the Court concludes that it lacks post-confirmation subject matter jurisdiction over the Trustee's TUFTA claim under section 1334.

*Id.* at 366-67.

Similarly, in *Marshall & Ilsley Trust. Co., N.A. v. Lapides (In re Transcolor Corp.)*, 2007

Bankr. LEXIS 3436, *1, *9; 2007 WL 2916408 (Bankr. D. Md. 2007), the bankruptcy court

awarded a money judgment against an insider and alter ego of the debtor to a creditor of the

debtor, while the debtor's bankruptcy case was pending.  The judgment creditor's successor

subsequently sued to avoid certain transfers made by the insider to a third party under

15

Maryland's Uniform Fraudulent Conveyance Act.  *Id*. at *12.  Although the debtor's case

remained pending at the time, the court concluded that it lacked subject matter jurisdiction over

the new dispute, because it was not "related to" the debtor's case.  *See id*. at *54.  The court

explained:

> The instant and former complaints do not share common issues of law
> and fact. The avoidance and recovery of the transfers at issue here are
> not based upon allegations or causes of action contained in the first
> complaint.  The property which the present complaint seeks to recover
> cannot be traced to any fraud or defalcation alleged in the earlier
> complaint to have committed against the debtor corporation or its
> creditors. . . .

*Id*. at *58; *see also Boyer v. Conte (In re Import & Mini Car Parts, Ltd., Inc.)*, 200 B.R.

857 (Bankr. D. Ind. 1996) (holding that bankruptcy court lacked subject matter jurisdiction over

new state law fraudulent transfer action brought by trustee for administrative creditors in effort to

collect judgment awarded against the debtor's former principal), *aff'd, sub nom. Miller v. Conte*,

203 B.R. 124 (N.D. Ind. 1996), *aff'd sub nom. In re Mini Car Parts, Ltd., Inc.*, 97 F.3d 1454 (7th

Cir. 1996).

Finally, the fact that the outcome of this litigation has the potential to impact the value of

the Trust's assets does not create the close nexus necessary for this Court to have "related to"

jurisdiction.  *See Resorts Int'l*, 372 F.3d at 170 (noting that "the mere possibility of a gain or loss

of trust assets" does not suffice to confer jurisdiction); *In re PRS Ins. Grp., Inc.*, 445 B.R. 402,

405 (Bankr. D. Del. 2011) ("The mere potential to increase the assets of a post-confirmation trust

is insufficient to establish the required 'close nexus.'"); *Fairchild Corp.*, 452 B.R. at 531 ("the

possibility of increasing the assets of a trust and distribution to creditors does not necessarily

create a close nexus that would confer jurisdiction on the bankruptcy court.").[10]

For all these reasons, the Court lacks "related to" jurisdiction over this proceeding.[11]

### 4.    The Plan's Jurisdiction Retention Provisions are Inapplicable.

Contrary to the suggestion in the Complaint that the Plan's purported retention of jurisdiction in this Court over the "Litigation Claims" is sufficient to confer jurisdiction in this Court (*see* Complaint, at 9), the Third Circuit has held that such provisions cannot confer subject matter jurisdiction where none exists under section 1334. *See, e.g., Triad*, 477 B.R. at 528 ("Bankruptcy jurisdiction is proscribed by statute; neither the parties nor the court can expand upon it by merely providing so in the plan or confirmation order.") (citing *Resorts*, at 161).

Further, this proceeding does not fall within the scope of the Plan's retention provisions. None of the Claims in the Complaint are "Litigation Claims," *i.e.*, those claims that were pursued against Yucaipa in the Adversary Proceedings and claims related to "the facts and circumstances described in the Amended Complaint." *See* Plan, §1.2(102).  This action was commenced against entirely new parties and is based entirely on new facts and circumstances that were never raised in the Adversary Proceedings.  The Adversary Proceedings are premised on allegations that Yucaipa breached a contract and engaged in improper conduct years before the Debtors filed

---

[10] Similarly, Plaintiff's suggestion that it is acting as a representative of – and that it is pursuing claims that were assigned by – the Debtors' estates in bringing this action is misplaced.  *See* Complaint, at 8.  The claims asserted in the Complaint were never held by the Debtors and were never assigned to Plaintiff as a representative of creditors of the Debtors.  The claims asserted in the Complaint arose years after the entry of the Confirmation Order and are being pursued by the Plaintiff in its capacity as a judgment creditor of a non-Debtor.

[11] For the same reasons, Plaintiff's assertion that this proceeding is an "adversary proceeding" that "relates to the Chapter 11 Cases," as required by Fed. R. Bankr. P. 7008, is also misplaced.  Complaint, at 10.  The state law claims asserted in this proceeding by a judgment creditor against non-debtor third parties are not, and never were, claims of the Debtors, and will have no impact on the Debtors' estates.  Since this proceeding does not relate to the Chapter 11 Cases, it cannot qualify as an "adversary proceeding."

Similarly, Plaintiff's unfounded assertions of proper venue (see Complaint, at 14) also fail, because the claims do not arise under title 11 and the claims are not related to a case under title 11.

the Chapter 11 Cases.  By contrast, this proceeding is premised on allegations that the Limited

Partner Defendants received transfers approximately ten years later and that the General Partner

has certain liability and should be required to enforce certain alleged rights in a partnership

agreement under Delaware law.  This proceeding shares no common facts, circumstances, or

causes of action that are described in the Amended Complaint.  Further, unlike the Litigation

Claims, the Complaint asserts Claims that were never held by the Debtors and which first arose

years after the Debtors' Plan was confirmed.

Furthermore, the Confirmation Order made clear that the "exclusive jurisdiction"

retention language contained in Section 9.1(e) of the Plan did not apply even to the Litigation

Claims.  *See* Confirmation Order, at par. 54 ("nothing in the Plan, Plan Supplement, or this

Confirmation Order shall be deemed to (i) provide the Bankruptcy Court with jurisdiction over

any Litigation Claims . . ., [or] (ii) limit or impair any named or unnamed defendant's right to

contest the Bankruptcy Court's jurisdiction over any Litigation Claim. . . .").  That provision is

also clear that the jurisdictional retention provisions of the Plan do not apply to any litigation

involving Yucaipa or its affiliates, such as the General Partner.  *See id.*  In short, the Plan did not

provide for this Court's retention of jurisdiction over the Claims asserted in the Complaint and,

even if it had, any such retention provision would be unenforceable.

   **5.**  **The Court Does Not Have Supplemental or Ancillary Jurisdiction Over This Proceeding.**

Plaintiff asserts that "this Court may employ Fed. R. Civ. P. 69(a)(1), made applicable

through Fed. R. Bankr. P. 7069, to enforce its Judgment and/or authority do so pursuant to its

supplemental and ancillary jurisdiction."  Complaint, at 12.  But Rule 69 "is not capable of

conferring jurisdiction upon this Court or any other." *Heritage Org.*, 454 B.R. at 372, n. 14

(rejecting argument that bankruptcy court had ancillary jurisdiction to oversee a post-judgment

fraudulent transfer dispute and noting that "bankruptcy courts do not enjoy the same inherent,

enforcement ancillary jurisdiction as do the district courts.").[12]

      Rather, the bankruptcy court must always have jurisdiction under section 1334.  Where,

as here, that jurisdiction is lacking, no rule of civil procedure or other grounds for supplemental

jurisdiction will provide such jurisdiction.  *See, e.g., Transcolor Corp.*, 2007 Bankr. LEXIS

3436, at *53 ("beyond issuing garnishments, the postjudgment jurisdiction of bankruptcy courts

is limited by Section 1334.  Unless a subsequent lawsuit to enforce a bankruptcy judgment is

within the subject matter jurisdiction of the bankruptcy court, as either under, arising under,

arising in or related to a case under title 11, it may not be maintained in the bankruptcy court.");

*see also Jeffrey L. Miller Invs., Inc. v. Premier Realty Advisors, LLC (In re Jeffrey L. Miller*

*Invs., Inc.)*, Nos. 8:16-bk-10036-MGW, 8:21-ap-00150-MGW, 2021 Bankr. LEXIS 2771, at *2

(Bankr. M.D. Fla. Sep. 30, 2021) (Court had no jurisdiction over proceedings supplementary to

its issuance of a judgment against certain defendants pre-confirmation, where debtor sought to

avoid alleged fraudulent transfers made by the judgment debtors post-confirmation); *Anderson v.*

*Patel (In re Diplomat Constr., Inc.)*, 512 B.R. 721, 724-25 (Bankr. N.D. Ga. 2014) ("F.R.B.P.

7069 . . . is a procedural rule and does not provide a separate basis for a substantive legal

---

[12] Moreover, many courts have held that a bankruptcy court does not have supplemental or ancillary jurisdiction under 28 U.S.C. § 1367.  *See, e.g., Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1024 (5th Cir. 1999) ("bankruptcy courts cannot exercise supplemental jurisdiction.") (citing *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995)); *see also Halvajian v. Bank of N.Y., N.A.*, 191 B.R. 56, 58 (D. N.J. 1995) ("the Court is persuaded by the Fifth Circuit's decision in [*Walker*], which . . . held that a bankruptcy court may not exercise supplemental jurisdiction."); *Samson Res. Co. v. J. Aron & Co. (In re Semcrude, L.P.)*, 2010 Bankr. LEXIS 4567, at *57 (Bankr. D. Del. Dec. 13, 2010) (same).

claim.") (citing *In re Import & Mini Car Parts, Ltd., Inc.*, 200 B.R. 857, n. 1 (Bankr. N.D. In. 1996) ("[R]ule 69 merely creates a procedural mechanism for exercising post-judgment jurisdiction; it cannot expand the scope of that jurisdiction.")).

Moreover, this Court has already exercised its authority to enforce the Judgment by permitting the domestication of the Judgment in California.  Any further relief sought by Plaintiff under state law in aid of the Judgment should be brought in the appropriate non-bankruptcy court.  *See, e.g., Transcolor Corp.*, 2007 Bankr. LEXIS 3436, at *55 ("Because the federal judgment issued originally by this Court has been domesticated by its having been filed among the Land Records of Anne Arundel County, . . . there is no necessity for this Court to enforce the judgment pursuant to its supplementary jurisdiction.  The judgment may now more appropriately be enforced by the plaintiff in the state courts of Maryland that have subject matter jurisdiction over the property and the judgment.").

For the reasons discussed above, the Court lacks subject matter jurisdiction over this proceeding under Section 1334.  The Court's entry of the Judgment against Yucaipa does not provide an independent basis for jurisdiction.  This proceeding should, therefore, be dismissed.

**B.**     **In the Alternative, the Court Should Exercise its Discretion to Abstain From Hearing This Case.**

For the reasons discussed above, the Court should dismiss this action for lack of subject matter jurisdiction.  However, even if the Court were to conclude that it has subject matter jurisdiction, it should abstain from hearing the dispute pursuant to Bankruptcy Rule 5011 and 28 U.S.C. § 1334(c)(1) and dismiss the case.  Section 1334(c)(1) provides as follows:

Except with respect to a case under chapter 15 of title 11, nothing in this section prevents

20

a district court in the interest of justice, or in the interest of comity with State courts or respect

for State law, from abstaining from hearing a particular proceeding arising under title 11 or

arising in or related to a case under title 11.

In determining whether abstention is appropriate under section 1334(c)(1), courts in this

district typically consider twelve factors:

(i)      The effect or lack thereof on the efficient administration of the estate;

(ii)     the extent to which state law issues predominate over bankruptcy issues;

(iii)    the difficulty or unsettled nature of the applicable state law;

(iv)     the presence of a related proceeding commenced in state court or other non-
         bankruptcy court;

(v)      the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(vi)     the degree of relatedness or remoteness of the proceeding to the main bankruptcy
         case;

(vii)    the substance rather than the form of an asserted "core" proceeding;

(viii)   the feasibility of severing state law claims from core bankruptcy matters to allow
         judgments to be entered in state court with enforcement left to the bankruptcy
         court;

(ix)     the burden of the court's docket;

(x)      the likelihood that the commencement of the proceeding in bankruptcy court
         involves forum shopping by one of the parties;

(xi)     the existence of a right to a jury trial; and

(xii)    the presence in the proceeding of non-debtor parties.

See In re DHP Holdings II Corp., 435 B.R. 220, 223–24 (Bankr. D. Del. 2010).

"The evaluation of these factors is not 'merely a mathematical exercise' [and] [c]ourts

21

place more weight on some of the factors than others; particularly important are factors (1) the

effect on the administration of the estate, (2) whether the claim involves only state law issues,

and (7) whether the proceeding is core or non-core."  *Id.* at 224 (citations omitted).  Each of

these "important" factors and nearly all of the other factors weigh in favor of abstention here:

> 1.  <u>Effect on efficient administration of the estate.</u>  Abstention would have no effect on the administration of the Debtors' estates.  The Plan was confirmed more than six years ago and the Debtors' estates were terminated upon confirmation.

> 2.  <u>Extent state law issues predominate.</u>  The Complaint raises *only* state law issues.  No bankruptcy issues exist.

> 3.  <u>Unsettled issues of state law.</u>  Resolution of the fraudulent transfer claims would require a fact-intensive inquiry regarding Yucaipa's actual intent in making the challenged transfers, as well as complex issues of insolvency and reasonably equivalent value in which Delaware courts have an interest.  Count Three of the Complaint raises difficult issues of general partner liability under Delaware statute and rights and obligations under a partnership agreement that is governed by Delaware law.  Moreover, the claims give rise to complex defenses, including issues of standing and the applicability of statutes of limitation.[13]

> 4.  <u>Presence of a related proceeding commenced in state court or other non-bankruptcy court.</u>  The Plaintiff filed a nearly identical complaint initiating the California Action in California state court, which may be a more appropriate forum.

> 5.  <u>Independent federal jurisdiction.</u>  Upon information and belief, federal diversity jurisdiction is lacking with respect to a number of the Defendants.

> 6.  <u>Degree of relatedness to the main bankruptcy case.</u>  This dispute has no meaningful connection to the Chapter 11 Cases.  The Debtors' Plan was confirmed six years ago. The state law Claims are not claims of the Debtors' estates, but rather belong to Plaintiff in her capacity as a judgment creditor.

> 7.  <u>Core or non-core.</u>  As summarized above, this is not a "core" proceeding.

---

[13] "[E]ven if a matter does not involve unsettled issues of state law, where the state law issues so predominate the proceeding . . . this factor weighs in favor of having the state court decide it."  *In re Integrated Health Servs., Inc.*, 291 B.R. 615, 620 (Bankr. D. Del. 2003); *see also Broadhollow Funding, LLC v. Bank of Am., N.A. (In re Am. Home Mortg.)*, 390 B.R. 120, 138 (Bankr. D. Del. 2008) (same); *DHP Holdings II Corp.*, 435 B.R. at 227 ("Although the parties have not identified any unsettled state law issues, a state court would be better positioned to identify and resolve any such issues, should they arise.  Therefore, the Court finds that this factor favors abstention.").

8.   <u>Feasibility of severing core matters.</u>  The Complaint presents no "bankruptcy matters" that should be severed from state law claims.

9.   <u>Burden on the court's docket.</u> This litigation, which involves only non-debtor parties and state law claims first arising and asserted post-confirmation, constitutes an entirely new proceeding.  This litigation would require new discovery, motion practice, and a trial, for purposes of adjudicating non-debtors' rights under state law.  Moreover, the Defendants assert a right to a jury trial, which this Court cannot conduct.[14]  It would be inappropriate to burden this Court's docket with such non-bankruptcy litigation.

10.   <u>Forum shopping.</u>  Plaintiff filed the Complaint shortly after this Court awarded Plaintiff a large judgment against Yucaipa. Rather than moving immediately to enforce her new state law claims against third parties in an appropriate forum, Plaintiff sought to invoke this Court's jurisdiction in the hope that it would grant Plaintiff additional relief. By later filing a nearly identical complaint in California superior court to preserve her claims, Plaintiff has effectively acknowledged that she is forum shopping.

11.   <u>Right to jury trial.</u>  The Complaint asserts claims that are triable by a jury and the Defendants will demand a jury on those claims.

12.   <u>Presence of non-debtor parties.</u>  This proceeding involves only non-debtor parties.

In sum, nearly every relevant factor – and each of the factors considered to be most important to the analysis – weighs strongly favor of abstention.  Therefore, even if the Court were to conclude that it has subject matter jurisdiction over this proceeding, it should nevertheless abstain and dismiss the case under 28 U.S.C. § 1334(c)(1).  *Cf. Anderson v. Patel (In re Diplomat Constr., Inc.)*, 512 B.R. 721, 724-25 (Bankr. N.D. Ga. 2014) (questioning the bankruptcy court's jurisdiction over a fraudulent transfer action brought by a Chapter 7 trustee as a judgment creditor under state law while the debtor's case was pending, and abstaining so that the trustee could pursue his claims in state court).

---

[14] *See* 11 U.S.C. § 157(e); *Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir. 1990); *GE Capital Corp. v. Teo*, 2001 U.S. Dist. LEXIS 22266, at *12-13 (D.N.J. Dec. 14, 2001) (noting that Third Circuit has "clear prohibition on bankruptcy jury trials in non-core proceedings").

**C.**     **Count Three of the Complaint is Barred by Delaware's Statute of Limitations.**

If the Court determines not to dismiss or abstain from hearing this proceeding for the

reasons discussed above, it should still dismiss Count Three of the Complaint because that claim

is barred by Delaware's statute of limitations.  Section 15-307(c) of the Delaware Revised

Uniform Partnership Act provides:

> A judgment against a partnership is not by itself a judgment against a
> partner.  A judgment against a partnership may not be satisfied from the
> assets of a partner liable as provided in §  15-306 of this title for a
> partnership obligation unless there is also a judgment against the partner
> for such obligation.

6 Del. C. § 15-307(c).[15]

Thus, a plaintiff must obtain an independent judgment against a general partner before

the general partner may be held liable for an obligation of the partnership.  Where, as here, a

plaintiff attempts to hold a general partner liable for an obligation of the partnership only after

the expiration of the statute of limitations on the underlying claim, however, the claim against

the general partner will be barred.  For example, in *Valley Nat'l Bank v. A.E. Rouse & Co.*, 121

F.3d 1332, 1334 (9th Cir. 1997), the plaintiff bank brought suit against defendant partners to

enforce a default judgment it obtained against the partnership.  The district court granted

summary judgment in favor of the defendants and the Ninth Circuit affirmed, holding that that

the judgment against the partnership could not be enforced against the defendants as partners of

those partnerships, because the defendants were neither served nor named in the underlying

lawsuit.  The court held that the plaintiff's only recourse against the partner defendants was to

---

[15] The Delaware Revised Uniform Partnership Act is made applicable to the liabilities of a general partner of a
Delaware limited partnership to persons other than the Partnership and its partners by virtue of Section 17-403(a) of
the Delaware Revised Uniform Limited Partnership Act.  6 Del. C. 17-403(a).

DOCS_DE:238468.5 96991/001

bring an action against them on the original debt. *Id.* at 1338.  However, because a suit against the defendants on the original debt was barred by the statute of limitations, the court held that the defendants were entitled to summary judgment. *Id.; see also Sunseri v. Moen*, 382 Ill. App. 3d 821 (2008) (judgment, which only named the partnership, could not be enforced against the partner, individually; amended complaint that named the partner was time-barred and did not relate back to the initiation of the action to enforce the judgment); *Sunseri v. Proctor*, 487 F. Supp. 2d 905, 908 (E.D. Mich. 2007), *aff'd*, 286 F. App'x 930 (6th Cir. 2008) ("Where, as here, a plaintiff obtains a judgment against the partnership as an entity, but fails to obtain a binding judgment against a partner's individual assets, and consequently cannot enforce that judgment against the partner, the plaintiff must sue the partner based on the underlying misconduct.  While the plaintiff may use collateral estoppel to prevent the partner from relitigating the issue of liability, the plaintiff must still bring suit within the applicable limitations period for the underlying wrong.").

Here, Plaintiff failed to name the General Partner as a defendant in the Adversary Proceedings and the Judgment was not obtained against the General Partner.  The statutes of limitations applicable to the claims at issue in the Adversary Proceedings expired years ago.[16] As a result, Count Three is barred by Delaware's statute of limitations and Plaintiff cannot obtain relief against the General Partner.

---

[16] *See, e.g.,* 10 Del. Code § 8106 ("no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of such cause of such action.").

**D.      Count Three of the Complaint is Barred by the Express Terms of the Partnership Agreement on Which it is Based.**

Plaintiff seeks a declaratory judgment "requiring the General Partner seek return of Transfers to Transferee Defendants pursuant to Section 10.2(b) of the Partnership Agreements to satisfy the Judgment and any subsequent additional judgment that may issue in favor of the Trustee." Complaint, at 150.  As an initial matter, Section 10.2(b) of the Partnership Agreements describes certain rights of indemnification that bear no relation to Plaintiff's demand.  Plaintiff likely intended to reference Section 10.1(b) of the Partnership Agreements ("Section 10.1(b)"). However, even if the Complaint had referenced Section 10.1(b), relief is not available under that provision for at least two independent reasons: (i) Plaintiff is not entitled to enforce Section 10.1(b), and (ii) even if Plaintiff could enforce Section 10.1(b), that provision does not require the General Partner to seek the return of any Transfers.[17]

**1.      Plaintiff Cannot Enforce Section 10.1(b).**

Section 10.1(b) provides:

> Return of Distributions. Notwithstanding anything in this Agreement to the contrary, and subject to the limitations set forth in Section 10.1(c), at any time and from time to time, the General Partner *may* require each Partner (including any former Partner) to return any and all distributions made to such Partner *up to an amount equal to such Partner's* pro rata *share of the Partnership's indemnity obligations for Damages under Section 10.1(a)*, regardless of whether the Portfolio Investments which gave rise to such distributions are related to the Damages for which indemnity is sought. For the purposes of the foregoing sentence, a Partner's pro rata share of each of the Partnership's indemnity

---

[17] The Complaint expressly references (but does not attach) the Partnership Agreements and Count Three of the Complaint is predicated on the terms of the Partnership Agreements.  The Court should, therefore, consider the actual terms of those Partnership Agreements and they may be attached to a motion to dismiss.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007); *Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d. Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").  True and correct copies of the two substantively identical Partnership Agreements are attached hereto as **Exhibits "A"** and **"B."**

> obligations under Section 10.1(a) shall be based, (i) if such obligation is related to a specific Portfolio Investment, on the percentage received by such Partner of the aggregate distributions (other than any GP Carry) received by all Partners arising out of such Portfolio Investment (it being understood that any Limited Partner that did not receive a distribution related to such Portfolio Investment shall not be required to return any distributions for indemnity obligations related to such Portfolio Investment), and (ii) if such obligation is not related to any specific Portfolio Investment, on the percentage received by such Partner of the aggregate distributions (other than any GP Carry) received by all Partners arising out of all Portfolio Investments.

Section 10.1(b) (emphasis added).

Plaintiff may not enforce this provision for two reasons. First, Section 10.1(e) of the

Partnership Agreements provides:

> (e) No Third Party Rights. Nothing in this Section 10.1, express or implied, is intended or shall be construed to give any Person other than the Partnership, the Partners or the Manager any legal or equitable right, remedy or claim under or in respect of this Section 10.1 or any provision contained herein.

Section 10.1(e). Thus, Section 10.1(e) states expressly and unambiguously that third parties –

like Plaintiff – have no right to enforce Section 10.1(b). *See, e.g., Insituform of N. Am., Inc. v.*

*Chandler*, 534 A.2d 257, 268 (Del. Ch. 1987) ("The general rule [is] that strangers to a contract

ordinarily acquire no rights under it …"); *Stuchen v. Duty Free Int'l, Inc.*, 1996 Del. Super.

LEXIS 187, 1996 WL 33167249, at *9 (Del. Super. Apr. 22, 1996) ("The general rule in this

state is that a stranger or nonparty to a contract has no legal right to enforce it."); *see also*

*Guardian Constr. Co. v. Tetra Tech Richardson, Inc*., 583 A.2d 1378, 1386 (Del. Super. 1990)

("Ordinarily, a stranger to a contract acquires no rights thereunder …").

Second, the recovery of distributions is a right of and for the benefit of the Partnerships

and is, therefore, derivative in nature. As a result, a claim to compel the General Partner to

exercise such right – including Plaintiff's demand for a judgment requiring the General Partner

27

to do so – is a derivative claim.  Under Delaware law, Plaintiff lacks standing to assert a

derivative claim because such claims can be asserted against a limited partnership only by a

partner or by the assignee of a partner of the partnership, and Plaintiff is neither.  *See, e.g.,*

*Gavin/Solmonese LLC v. Citadel Energy Partners LLC (In re Citadel Watford City Disposal*

*Partners)*, 603 B.R. 897 (Bankr. D. Del. May 2, 2019).  In holding that a liquidating trustee

lacked standing to pursue breach of fiduciary claims on behalf of creditors of a Delaware limited

partnership, the court in *Citadel Watford* held that the Delaware limited partnership statute was

"unambiguous on its face" and "requires that a proper derivative action plaintiff 'must be a

partner or an assignee of a partnership interest.'"  *Id.* at 903 (quoting 6 Del. C. § 17-1002).  Since

the trustee was neither, it lacked standing to bring a derivative claim on behalf of the partnership.

*Id.* at 904; *cf. In re PennySaver USA Publishing, LLC*, 587 B.R. 445, 467 (Bankr. D. Del 2018)

(Sontchi, J.) ("If the claim is derivative, it fails because derivative claims can only be brought by

members or assignees of LLCs").

> ## 2.    The General Partner is Not Required to Take Action Under Section 10.1(b).

By its plain terms, Section 10.1(b) does not require the General Partner to seek a return of

any distributions.  That section merely authorizes the General Partner, on behalf of the

Partnership, to seek a return of distributions under certain limited circumstances, by providing

that the General Partner "may require" the Partners to return such distributions.  The provision

grants the General Partner the discretion to determine whether or not to seek a return of

distributions; the provision is not mandatory.

Moreover, Section 10.1(b) does not apply by its own terms.  That provision only allows

the General Partner to seek a return of distributions for the limited purpose of funding a claim

against the Partnership for indemnification made by a person expressly entitled to

indemnification under the Partnership Agreements (*i.e.*, a "Covered Person").  No such

indemnity claim is alleged to have been made, whether by the General Partner or by any other

Covered Person.  The making of such a claim by the General Partner against the Partnership is

not automatic or required; whether and when to make (or waive) such a claim is within the

General Partner's discretion.[18]

In sum, Plaintiff seeks to enforce a provision of the Partnership Agreements that (i) it has

no standing to enforce, and (ii) does not apply by its own terms.  Count Three should, therefore,

be dismissed.

E.   **Counts One and Two of the Complaint Must Be Dismissed to the Extent They Seek
     Avoidance of Transfers Made More Than Three Years Ago.**

Section 17-607(c) of the Delaware Revised Uniform Limited Partnership Act provides:

> Unless otherwise agreed, a limited partner who receives a distribution
> from a limited partnership shall have no liability under this chapter or
> other applicable law for the amount of the distribution after the
> expiration of 3 years from the date of the distribution.

6 Del. C. § 17-607(c) (emphasis added).

"Section 17-607(c) is unambiguous: a limited partner is not liable for any distribution

received from a limited partnership, regardless of whether that distribution violated section

17-607(a) or 'other applicable law,' if more than three years have passed since the distribution."

*Diamond v. Friedman (In re Century City Doctors Hospital, LLC)*, 466 B.R. 1, 13 (Bankr. C.D.

---

[18] Furthermore, even if Section 10.1(b) were otherwise applicable, Plaintiff's demand ignores other limitations on the General Partner's authority under Section 10.1(b), such as the contractual restrictions on the return of distributions contained in Section 10.1(c) of the Partnership Agreements, which Section 10.1(b) is made expressly "subject to."  *See* Partnership Agreements, Section 10.1(c) (restricting timing and amounts subject to recovery).

29

Cal. 2012) (quoting *Freeman v. Williamson*, 383 Ill. App. 3d 933, 937 (2008)).  Section 17-607(c) is a statute of repose that applies to defeat claims brought under state law regardless of whether a potential plaintiff knows of his or her cause of action.  *Id*. at 13 ("Section 17-607(c) defines substantive rights.  It does not merely alter or modify a time period within which a cause of action may be brought after accrual but, rather, *extinguishes any right a potential plaintiff has to bring a cause of action against a limited partner for a distribution without regard to whether a cause of action has actually accrued or whether any injury has resulted.")* (emphasis in original) (quoting *Freeman*, 383 Ill. App. 3d at 940); *cf. Reclaimant Corp. v. Deutsch*, 211 A.3d 976, 987 (Conn. 2019) ("We agree with the courts in *Century City Doctors Hospital, LLC*, and *Freeman* that § 17-607 (c) properly is characterized as a statute of repose because it 'clearly terminates the possibility of the limited partner's liability after a defined period of time, three years after receiving a distribution, regardless of whether a potential plaintiff knows of his or her cause of action.'").

Moreover, Section 17-607(c) has been applied specifically to bar claims to avoid distributions made to limited partners as fraudulent transfers under Delaware law.  The court in *Century City Doctors Hospital* held that "§ 17-607(c)'s three-year bar trumps DUFTA's four-year statute of limitations in the context of an alleged wrongful distribution by a limited partnership organized under Delaware law.  A contrary reading would offend the plain, unambiguous text of the statute."  *Id*. at 16.

For the same reasons, Counts One and Two of the Complaint must be dismissed to the extent Plaintiff seeks to avoid any transfers that occurred more than three years before the filing of the Complaint.

**V.**

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the

Complaint for lack of subject matter jurisdiction.  In the alternative, if the Court were to find that

it has jurisdiction, the Court should abstain from hearing this matter pursuant to 28 U.S.C.

§ 1334(c)(1).  If the Court determines not to dismiss or abstain from hearing this proceeding for

the reasons summarized above, it should still dismiss (i) Count Three of the Complaint because

that claim is barred by Delaware's statute of limitations and Section 10.1(b) of the Partnership

Agreements is not enforceable by Plaintiff or by its own terms, and (ii) Counts One and Two of

the Complaint should be dismissed to the extent Plaintiff seeks to avoid any transfers that

occurred more than three years before the Complaint was filed.


[Remainder of page intentionally left blank]

DOCS_DE:238468.5 96991/001

Dated: June 1, 2022

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Peter J. Keane (DE Bar No. 5503)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Fax: (302) 652-4400
Email: ljones@pszjlaw.com
      dbertenthal@pszjlaw.com
      pkeane@pszjlaw.com

-and-

GLASER WEIL FINK HOWARD AVCHEN &
SHAPIRO LLP
Patricia L. Glaser (admitted pro hac vice)
Gali Grant (admitted pro hac vice)
Matthew P. Bernstein (admitted pro hac vice)
10250 Constellation Blvd.
19th Floor
Los Angeles, CA 90067
Telephone: (310) 553-3000
Fax: (310) 556-2920
Email: pglaser@glaserweil.com
      ggrant@glaserweil.com
      mbernstein@glaserweil.com

Counsel for the Yucaipa Defendants

DOCS_DE:238468.5 96991/001