## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>ASHINC Corporation, *et al.*,[1]<br><br>          Debtors. | Chapter 11 |
| American Private Equity Partners II, LP, *et al.*,<br><br>          Petitioners,<br><br>          v.<br><br>Catherine E. Youngman, Litigation Trustee for ASHINC Corporation,<br><br>          Respondent. | Civil Action No. 22-cv-302-CFC<br><br>Bankruptcy Case No. 12-11564<br><br>Adv. Proc. No. 21-51179-MFW |

## OPPOSITION OF CATHERINE E. YOUNGMAN, AS LITIGATION TRUSTEE AND PLAN ADMINISTRATOR FOR ASHINC CORPORATION, TO DEFENDANTS' MOTIONS TO DISMISS

---

[1] The Debtors in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) (58-0360550); AAINC Corporation (f/k/a Allied Automotive Group, Inc.) (58-2201081); AFBLLC LLC (f/k/a Allied Freight Broker LLC) (59-2876864); ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company) (90-0169283); ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.) (58-1710028); AXALLC LLC (f/k/a Axis Areta, LLC) (45-5215545); AXCCO Canada Company (f/k/a Axis Canada Company) (875688228); AXGINC Corporation (f/k/a Axis Group, Inc.) (58-2204628); Commercial Carriers, Inc. (38-0436930); CTSINC Corporation (f/k/a CT Services, Inc.) (38-2918187); CTLLC LLC (f/k/a Cordin Transport LLC) (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582). Debtors' address for service of process is 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

Jeffrey H. Zaiger (*pro hac vice*)
Judd A. Linden (*pro hac vice*)
ZAIGER LLC
2187 Atlantic Street, 9th Floor
Stamford, CT 06902
Tel.: (917) 572-7701
jzaiger@zaigerllc.com

Douglas J. Pepe (*pro hac vice*)
COHEN AND GRESSER LLP
800 Third Avenue
New York, NY 10022
Tel.: (212) 957-7605
dpepe@cohengresser.com

Seth A. Niederman (DE Bar No. 4588)
FOX ROTHSCHILD LLP
Citizens Bank Center
919 N. Market Street, Suite 300
Wilmington, DE 19801
Tel.: (302) 654-7444
Fax: (302) 656-8920
sniederman@foxrothschild.com

Steven F. Molo (*pro hac vice*)
Robert K. Kry (*pro hac vice*)
Justin M. Ellis (*pro hac vice*)
Joshua D. Bloom (*pro hac vice*)
Ryan Yeh (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Tel.: (212) 607-8160
rkry@mololamken.com

Jordan A. Rice (*pro hac vice*)
MOLOLAMKEN LLP
300 North LaSalle Street
Chicago, IL 60654
Tel.: (312) 450-6700

*Counsel for the Litigation Trustee and Plan Administrator*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

SUMMARY OF ARGUMENT ............................................................1

STATEMENT OF FACTS ...............................................................5

I.    Background.................................................................................5

    A.    Allied's Financing ..............................................................5

    B.    The Adverse Decisions Against Yucaipa..............................6

    C.    Yucaipa's Fraudulent Transfers .........................................10

II.    Procedural History ...................................................................11

ARGUMENT ...............................................................................12

I.    The Court Has Subject-Matter Jurisdiction...................................12

    A.    This Is a Core Proceeding ..................................................13

    B.    The Court Has "Related To" Jurisdiction ............................15

        1.    This Proceeding Has a "Close Nexus" to the Bankruptcy Plan and Proceeding..................................................15

        2.    Defendants' Contrary Arguments Lack Merit.........................20

    C.    The Court Has Supplemental and Ancillary Jurisdiction....................24

II.    The Court Should Not Abstain ....................................................27

    A.    The City Pension Defendants Do Not Establish the Requirements for Mandatory Abstention..............................28

    B.    Permissive Abstention Is Inappropriate ..............................31

III.    The Trustee's Claims Are Adequately Pled ..................................36

    A.    The Complaint Adequately Alleges Actual Fraudulent Transfers..................................................................37

        1.    The Trustee's Claim Is Subject to a Relaxed Standard ...........37

2.      The Trustee's Claim Satisfies Ordinary Rule 9(b)
Standards ...................................................................39

B.      The Complaint Adequately Alleges Constructive
Fraudulent Transfers....................................................44

C.      The 2017 Distribution Claims Are Not Time-Barred .........47

D.      The Declaratory Judgment Claim Is Not Time-Barred.......49

IV.     The Defendant-Specific Arguments Lack Merit ...........................52

A.      The Foreign LPs Are Subject to Personal Jurisdiction .......52

1.      The Foreign LPs Have Sufficient Minimum Contacts ............53

2.      Exercising Jurisdiction Would Comport with Traditional
Notions of Fair Play and Substantial Justice ...........................55

B.      The State Defendants Are Not Immune from Suit............................57

1.      Sovereign Immunity Does Not Apply to This Bankruptcy
Proceeding..................................................................57

2.      The State Defendants Do Not Show They Are Arms of
the State ....................................................................60

C.      The NYC Funds Were Not Entitled to Presuit Notice .......................66

1.      This Suit Concerns a Proprietary Function...............................67

2.      The Presuit Notice Requirement Does Not Apply to This
Bankruptcy Proceeding.............................................69

D.      The ERISA Defendants' Anti-Alienation Defense Is Meritless .........70

E.      State Street's "Mere Conduit" Defense Cannot Be Resolved on
a Motion to Dismiss ...................................................75

CONCLUSION ...................................................................77

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*A Commc'ns Co. v. Bonutti*,
  55 F. Supp. 3d 1119 (S.D. Ill. 2014) .................................................................. 49

*In re AES Thames, L.L.C.*,
  No. 11-10334, 2016 WL 11595116 (Bankr. D. Del. Oct. 28, 2016) ................. 75

*In re Akbari-Shahmirzadi*,
  No. 11-cv-15351, 2016 WL 6783245
  (Bankr. D.N.M. Nov. 14, 2016) ......................................................................... 54

*In re Allen*,
  No. 13-14348, 2014 WL 1246292 (Bankr. D.N.J. Mar. 26, 2014) ................... 76

*In re Allied Sys. Holdings Inc.*,
  556 B.R. 581 (D. Del. 2016) ................................................................................ 8

*Alston v. Forsyth*,
  379 F. App'x 126 (3d Cir. 2010) ....................................................................... 29

*Am. Imaging of Jersey City, Inc. v. Baldonado*,
  No. A-0788-11T2, 2013 WL 3762638
  (N.J. Super. Ct. App. Div. July 19, 2013) ......................................................... 51

*Am. Star Energy & Mins. Corp. v. Stowers*,
  457 S.W.3d 427 (Tex. 2015) .............................................................................. 51

*Am. Tel. & Tel. Co. v. Merry*,
  592 F.2d 118 (2d Cir. 1979) .............................................................................. 71

*In re Amcad Holdings, LLC*,
  579 B.R. 33 (Bankr. D. Del. 2017) .................................................................... 42

*In re APF Co.*,
  308 B.R. 183 (Bankr. D. Del. 2004) .................................................................. 37

*In re Appleseed's Intermediate Holdings, LLC*,
  470 B.R. 289 (D. Del. 2012) .............................................................................. 43

*In re AstroPower Liquidating Tr.*,
    335 B.R. 309 (Bankr. D. Del. 2005) ............................................................*passim*

*In re AstroPower Liquidating Tr.*,
    No. 05-50867, 2006 WL 1173853 (Bankr. D. Del. Apr. 19, 2006) ...................76

*In re AstroPower Liquidating Tr.*,
    No. 05-50867, 2006 WL 2850110 (Bankr. D. Del. Oct. 2, 2006)......................55

*In re Bernard L. Madoff Inv. Sec. LLC*,
    525 B.R. 871 (Bankr. S.D.N.Y. 2015)........................................................54, 56

*Blake v. Kline*,
    612 F.2d 718 (3d Cir. 1979) .............................................................60, 62, 66, 68

*Boggs v. Boggs*,
    520 U.S. 833 (1997)..........................................................................................73

*In re Bos. Generating LLC*,
    617 B.R. 442 (S.D.N.Y. 2020) ..........................................................................49

*Bradley v. W. Chester Univ. of Pa. State Sys. of Higher Educ.*,
    880 F.3d 643 (3d Cir. 2018) ..............................................................................60

*In re British Am. Ins. Co. Ltd.*,
    600 B.R. 890 (Bankr. S.D. Fla. 2019) ...............................................................19

*In re BWI Liquidating Corp.*,
    437 B.R. 160 (Bankr. D. Del. 2010)......................................................15, 22, 24

*In re CD Liquidation Co., LLC*,
    462 B.R. 124 (Bankr. D. Del. 2011).............................................................19, 20

*In re Centaur, LLC*,
    No. 10-10799, 2013 WL 4479074 (Bankr. D. Del. Aug. 19, 2013)...................44

*Central Va. Cmty. Coll. v. Katz*,
    546 U.S. 356 (2006).....................................................................................*passim*

*In re Charys Holding Co., Inc.*,
    No. 08-10289, 2010 WL 2774852 (Bankr. D. Del. July 14, 2010)..............37, 43

*Christy v. Pa. Turnpike Comm'n*,
  54 F.3d 1140 (3d Cir. 1995) .......................................................................60, 63

*In re Chuza Oil Co.*,
  No. 18-11836-T7, 2021 WL 559155
  (Bankr. D.N.M. Feb. 12, 2021)..........................................................................75

*Coar v. Kazimir*,
  990 F.2d 1413 (3d Cir. 1993) .............................................................................71

*Cooper v. Se. Pa. Transp. Auth.*,
  548 F.3d 296 (3d Cir. 2008) ........................................................................61, 63

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  333 F. Supp. 3d 380 (D. Del. 2018)....................................................................62

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  932 F.3d 126 (3d Cir. 2019) ........................................................24, 25, 26, 27

*In re DBSI, Inc.*,
  409 B.R. 720 (Bankr. D. Del. 2009)....................................................................35

*In re DBSI, Inc.*,
  445 B.R. 344 (Bankr. D. Del. 2011)....................................................................43

*In re DBSI, Inc.*,
  463 B.R. 709 (Bankr. D. Del. 2012)....................................................................58

*In re DBSI, Inc.*,
  467 B.R. 309 (Bankr. D. Del. 2012)....................................................................56

*Deane v. Maginn*,
  No. 17-cv-346, 2022 WL 624415 (Del. Ch. Mar. 2, 2022)................................49

*Del. Bay Surgical Servs., P.C. v. Swier*,
  900 A.2d 646 (Del. 2006) ...................................................................................48

*Deutsche Bank AG v. Devon Park Bioventures, L.P.*,
  C.A. No. 2017-0822-SG, 2021 WL 2711472
  (Del. Ch. June 30, 2021).....................................................................................55

*In re Dewey & LeBouef LLP*,
  522 B.R. 464 (Bankr. S.D.N.Y. 2014)...........................................................53, 54

*Dick v. Town of Wappinger*,
  63 A.D.3d 661 (N.Y. App. Div. 2009) ...............................................................67

*In re Direct Response Media, Inc.*,
  466 B.R. 626 (Bankr. D. Del. 2012)...................................................................31

*Donaldson v. Bernstein*,
  104 F.3d 547 (3d Cir. 1997) .......................................................................18, 19

*In re DVI, Inc.*,
  No. 03-12656, 2008 WL 4239120 (Bankr. D. Del. Sept. 16, 2008) .................75

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*,
  314 B.R. 354 (S.D. Tex. 2004) ..........................................................................32

*Evanston Ins. Co. v. Dillard Dep't Stores, Inc.*,
  602 F.3d 610 (5th Cir. 2010) .............................................................................51

*In re EXDS, Inc.*,
  352 B.R. 731 (Bankr. D. Del. 2006)..............................................21, 22, 23, 24

*In re FAH Liquidating Corp.*,
  567 B.R. 464 (Bankr. D. Del. 2017)..............................................................18, 36

*Febres v. Camden Bd. of Educ.*,
  445 F.3d 227 (3d Cir. 2006) .......................................................................61, 64, 65

*Fitchik v. N.J. Transit Rail Operations, Inc.*,
  873 F.2d 655 (3d Cir. 1989) .......................................................................64, 65

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021)........................................................................................53

*In re FormTech Indus., LLC*,
  439 B.R. 352 (Bankr. D. Del. 2010)..............................................................13, 14

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007) ..............................................................................39

*French v. Long Island Child.'s Museum*
  163 A.D.3d 778 (N.Y. App. Div. 2018) .............................................................67

*Gambone v. Lite Rock Drywall*,
  288 F. App'x 9 (3d Cir. 2008) ....................................................25, 54

*In re Glencoe Acquisition, Inc.*,
  No. 12-12071, 2015 WL 3777972 (Bankr. D. Del. June 16, 2015) ...................44

*Gobeille v. Liberty Mut. Ins. Co.*,
  577 U.S. 312 (2016)...............................................................70

*In re Goldschein*,
  241 B.R. 370 (Bankr. D. Md. 1999) ...............................................74

*Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*,
  964 F. Supp. 2d 320 (D. Del. 2013)................................................56

*In re Green Field Energy Servs., Inc.*,
  No. 13-12783, 2015 WL 5146161 (Bankr. D. Del. Aug. 31, 2015)............42, 43

*Guidry v. Sheet Metal Workers Nat'l Pension Fund*,
  493 U.S. 365 (1990)...............................................................72

*In re Haws*,
  158 B.R. 965 (Bankr. S.D. Tex. 1993) .............................................21

*In re Heritage Org., LLC*,
  454 B.R. 353 (Bankr. N.D. Tex. 2011).........................................20, 21

*Hopkins v. Plant Insulation Co.*,
  342 B.R. 703 (D. Del. 2006).......................................................36

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*,
  438 F.3d 298 (3d Cir. 2006) ......................................................25

*In re Imp. & Mini Car Parts, Ltd., Inc.*,
  200 B.R. 857 (Bankr. N.D. Ind. 1996) .............................................21

*ISN Software Corp. v. Richards, Layton & Finger, P.A.*,
  226 A.3d 727 (Del. 2020) .........................................................50

*JPMorgan Chase Bank, N.A. v. Ballard*,
  213 A.3d 1211 (Del. Ch. 2019) ................................................38, 39

*Kadlecik v. Vill. of Endicott*,
174 A.D.2d 923 (N.Y. App. Div. 1991) ............................................................67

*Katz v. City of New York*,
661 N.E.2d 1374 (N.Y. 1995)............................................................................69

*Kingsbury v. Westlake Mgmt. Co.*,
674 F. App'x 792 (10th Cir. 2016) ...............................................................50, 51

*Kirkland v. DiLeo*,
581 F. App'x 111 (3d Cir. 2014) ......................................................................63

*In re LaRoche Indus.*,
312 B.R. 249 (Bankr. D. Del. 2004) ................................................................33

*Laurel Gardens, LLC v. Mckenna*,
948 F.3d 105 (3d Cir. 2020) .........................................................................52, 53

*In re Lenox Healthcare, Inc.*,
343 B.R. 96 (Bankr. D. Del. 2006)....................................................................76

*In re LGI, Inc.*,
322 B.R. 95 (Bankr. D.N.J. 2005) ...................................................16, 18, 20, 23

*In re Liquid Holdings Grp., Inc.*,
No. 16-10202, 2019 WL 3380820 (Bankr. D. Del. July 25, 2019)...................37

*Lyman Com. Sols., Inc. v. Lung*,
No. 12-cv-4398, 2015 WL 1808693 (S.D.N.Y. Apr. 20, 2015)........................49

*Mackey v. Lanier Collection Agency & Serv., Inc.*,
486 U.S. 825 (1988)..........................................................................................72

*Maliandi v. Montclair State Univ.*,
845 F.3d 77 (3d Cir. 2016) .........................................................................61, 64

*Master-Halco, Inc. v. D'Angelo*,
351 B.R. 267 (D. Conn. 2006).........................................................................32

*In re Maxus Energy Corp.*,
597 B.R. 235 (Bankr. D. Del. 2019)...........................................................*passim*

*Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*,
    666 F.3d 68 (2d Cir. 2011) ...............................................................72

*In re Millennium Lab Holdings II, LLC*,
    No. 15-12284, 2019 WL 1005657 (Bankr. D. Del. Feb. 28, 2019).............45, 46

*In re Moon*,
    385 B.R. 541 (Bankr. S.D.N.Y. 2008)..............................................76

*Morgan Guar. Tr. Co. of N.Y. v. Blacksburg Assocs., L.P.*,
    No. 90-cv-6076, 1990 WL 209297 (E.D. Pa. 1990)...........................54

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977) ...........................................................62

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins.
Co.*, 514 U.S. 645 (1995) .....................................................................74

*Nat'l City Mortg. Co. v. Stephen*,
    647 F.3d 78 (3d Cir. 2011) .......................................................27, 31

*O'Connor v. Sandy Lane Hotel Co.*,
    496 F.3d 312 (3d Cir. 2007) ................................................55, 56, 57

*O'Toole v. Arlington Tr. Co.*,
    681 F.2d 94 (1st Cir. 1982)............................................................72

*Oakwood Shopping Ctr., Ltd. P'ship v. Villa Enters. of Midwest, Inc.*,
    No. Civ. A. 10-2758, 2011 WL 3350402 (E.D. La. Aug. 3, 2011)....................29

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3d Cir. 1984) ...........................................................15

*In re Pan Am. Corp.*,
    950 F.2d 839 (2d Cir. 1991) ...........................................................33

*Patterson v. Pa. Liquor Control Bd.*,
    915 F.3d 945 (3d Cir. 2019) ......................................................60, 61

*Patterson v. Shumate*,
    504 U.S. 753 (1992)......................................................................72

*In re PennySaver USA Publ'g, LLC*,
  602 B.R. 256 (Bankr. D. Del. 2019) ................................................................40

*Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*,
  149 F.3d 197 (3d Cir. 1998) ............................................................................55

*Pepsi-Cola Bottling Co. of Salisbury, Md. v. Handy*,
  No. 1973-S, 2000 WL 364199 (Del. Ch. Mar. 15, 2000)..................................49

*In re Phila. Ent. & Dev. Partners, L.P.*,
  611 B.R. 51 (Bankr. E.D. Pa. 2019) ................................................................58

*Planned Consumer Mktg. v. Coats & Clark, Inc.*,
  522 N.E.2d 30 (N.Y. 1988)..............................................................................74

*Rabadi v. City of Yonkers*,
  No. 21-cv-1258, 2022 WL 889734 (S.D.N.Y. Mar. 25, 2022) .........................69

*Rahl v. Bande*,
  316 B.R. 127 (S.D.N.Y. 2004) .........................................................................32

*Ramirez v. STi Prepaid LLC*,
  644 F. Supp. 2d 496 (D.N.J. 2009) ..................................................................39

*Republic of Argentina v. Weltover, Inc.*,
  504 U.S. 607 (1992).........................................................................................68

*Resnik v. Woertz*,
  774 F. Supp. 2d 614 (D. Del. 2011)..................................................................44

*In re Resorts Int'l, Inc.*,
  372 F.3d 154 (3d Cir. 2004) ...................................................................*passim*

*In re Rocco Co.*,
  No. 10-18799, 2014 WL 7404566 (D.N.J. Dec. 29, 2014) ...............................76

*Rovinsky v. Choctaw Mfg. & Dev. Corp.*,
  No. 09-cv-324, 2009 WL 3763989 (D.N.J. Nov. 10, 2009)..............................66

*Sandvik AB v. Advent Int'l Corp.*,
  83 F. Supp. 2d 442 (D. Del. 1999)....................................................................50

*Schall v. Joyce*,
    885 F.2d 101 (3d Cir. 1989) ................................................................33

*Schrempf v. State*,
    487 N.E.2d 883 (N.Y. 1985)........................................................67, 68

*Schwegmann Bank & Tr. Co. of Jefferson v. Simmons*,
    880 F.2d 838 (5th Cir. 1989) ..............................................................54

*Sebastian v. State*,
    720 N.E.2d 878 (N.Y. 1999)...............................................................67

*Seiden v. Kaneko*,
    No. CV 9861-VCN, 2015 WL 7289338 (Del. Ch. Nov. 3, 2015).....................45

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
    140 S. Ct. 2183 (2020)........................................................................65

*In re Semcrude, L.P.*,
    442 B.R. 258 (Bankr. D. Del. 2010)...............................28, 30, 31

*In re Seven Fields Dev. Corp.*,
    505 F.3d 237 (3d Cir. 2007) ...............................................................24

*Shaffer v. Heitner*,
    433 U.S. 186 (1977)............................................................................55

*Shaw v. Long Island R.R. Co.*,
    No. 16-cv-6972, 2017 WL 5634122 (E.D.N.Y. Nov. 22. 2017)......................69

*In re Somerset Reg'l Water Res., LLC*,
    949 F.3d 837 (3d Cir. 2020) ...............................................................13

*In re SportCo Holdings, Inc.*,
    No. 19-11299, 2021 WL 4823513 (Bankr. D. Del. Oct. 14, 2021)....................42

*In re Sportsman's Warehouse, Inc.*,
    457 B.R. 372 (Bankr. D. Del. 2011)................................................30

*In re SRC Liquidation LLC*,
    581 B.R. 78 (D. Del. 2017)..................................................................38

*Stoe v. Flaherty*,
    436 F.3d 209 (3d Cir. 2006) ...............................................................28

*Sunseri v. Proctor*,
    487 F. Supp. 2d 905 (E.D. Mich. 2007) ..............................................51

*Thomas, Head & Greisen Emps. Tr. v. Buster*,
    95 F.3d 1449 (9th Cir. 1996) ..............................................................25

*In re Today's Destiny, Inc.*,
    Adv. No. 06-3285, 2009 WL 1232108
    (Bankr. S.D. Tex. May 1, 2009) .........................................................29

*Torres v. City of New York*,
    No. 09-cv-9357, 2017 WL 2191601 (S.D.N.Y. May 17, 2017) ..........67

*Townsquare Media Inc. v. Brill*,
    652 F.3d 767 (7th Cir. 2011) ..............................................................26

*In re Transcolor Corp.*,
    Adv. No. 05-9103, 2007 WL 2916408 (Bankr. D. Md. 2007) ............21

*Trapp v. New Jersey*,
    No. 17-cv-10709, 2018 WL 4489680 (D.N.J. Sept. 19, 2018) ...........63

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009) .....................................................................19, 24

*In re Truong*,
    285 F. App'x 837 (3d Cir. 2008) ........................................................26

*Turturro v. City of New York*,
    68 N.E.3d 693 (N.Y. 2016) ...........................................................67, 68

*In re UD Dissolution Corp.*,
    629 B.R. 11 (Bankr. D. Del. 2012) .....................................................56

*In re United Tax Grp., LLC*,
    No. 14-10486, 2018 WL 1135496 (Bankr. D. Del. Feb. 28, 2018) ....40

*In re Valley Media, Inc.*,
    289 B.R. 27 (Bankr. D. Del. 2003) .....................................................34

*Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.*,
    121 F.3d 1332 (9th Cir. 1997) ............................................................51

*In re Vaso Active Pharms., Inc.*,
    No. 10-10855, 2012 WL 4793241 (Bankr. D. Del. Oct. 9, 2012) ....................43

*In re Vaughan Co., Realtors*,
    493 B.R. 597 (Bankr. D.N.M. 2013) ..................................................73

*Velis v. Kardanis*,
    949 F.2d 78 (3d Cir. 1991) ................................................................74

*In re Venoco LLC*,
    998 F.3d 94 (3d Cir. 2021) ......................................................*passim*

*Wagner v. Galbreth*,
    500 B.R. 42 (D.N.M. 2013) ........................................................72, 73

*In re Weiand Auto. Indus.*,
    612 B.R. 824 (Bankr. D. Del. 2020) ............................................14, 19

*In re Wellington Apartment, LLC*,
    353 B.R. 465 (Bankr. E.D. Va. 2006) ................................................26

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ........................................................................53

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

U.S. Const. art. I, § 8, cl. 4 ...................................................................57

28 U.S.C. § 157(b)(3) ............................................................................14

28 U.S.C. § 1334 ...............................................................................1, 24

28 U.S.C. § 1334(a) ..............................................................................13

28 U.S.C. § 1334(b) ..............................................................................13

28 U.S.C. § 1334(c)(1) ..........................................................................31

28 U.S.C. § 1334(c)(2) ..........................................................................28

29 U.S.C. § 1056(d)(1) ................................................................70, 71, 73

29 U.S.C. § 1144(a) ................................................................................73

26 C.F.R. § 1.041(a)-13(c)(1) ...............................................................71

Cal. Const. art. XVI, § 17 .....................................................................65

Cal. Gov't Code § 20095 ......................................................................65

Cal. Gov't Code § 20120 ......................................................................65

1 *Del. C.* § 303 .......................................................................................48

6 *Del. C.* § 15-306(a) ......................................................................50, 51

6 *Del. C.* § 15-307(b) ...........................................................................51

6 *Del. C.* § 15-307(c) ...........................................................................51

6 *Del. C.* § 15-307(d) ...........................................................................51

6 *Del. C.* § 17-403(b) ...........................................................................50

6 *Del. C.* § 17-607(c) ..................................................................47, 48, 49

6 *Del. C.* § 18-607(c) ...........................................................................48

6 *Del. C.* § 1304(a)(1) ..........................................................................11

6 *Del. C.* § 1304(a)(2) ..........................................................................11

6 *Del. C.* § 1304(a)(2)(b) .....................................................................45

6 *Del. C.* § 1304(b) ...............................................................................40

6 *Del. C.* § 1304(b)(1) ..........................................................................40

6 *Del. C.* § 1304(b)(3) ..........................................................................41

6 *Del. C.* § 1304(b)(4) ..........................................................................41

6 *Del. C.* § 1304(b)(5) ..........................................................................42

6 *Del. C.* § 1304(b)(8) ..........................................................................41

6 *Del. C.* § 1304(b)(9) ............................................................42

6 *Del. C.* § 1305(a) ..............................................................11

N.M. Stat. § 6-8-2(A) ...........................................................65

N.M. Stat. § 6-8-3(C) ...........................................................65

N.M. Stat. § 6-8-7 ................................................................65

N.M. Stat. § 6-8-10 ..............................................................65

N.M. Stat. §§ 45-7-601 *et seq* ...............................................65

N.Y. Gen. Mun. Law § 50-e ..................................................66

N.Y. Gen. Mun. Law § 50-i(1) ..............................................66

N.Y.C. Admin. Code § 7-201(a) .............................................66

Okla. Stat. tit. 54, § 1-306(a) ................................................51

Okla. Stat. tit. 54, § 1-307(b) ................................................51

Okla. Stat. tit. 54, § 1-307(c) ................................................51

Okla. Stat. tit. 54, § 1-307(d) ................................................51

## OTHER AUTHORITIES

Collier on Bankruptcy (16th ed. 2022) .....................................26, 28, 29

Charles A. Wright *et al.*, *Federal Practice and Procedure* (rev. 2022) .................38

Catherine E. Youngman, in her capacity as the Litigation Trustee and Plan Administrator (the "Trustee") for ASHINC Corporation (formerly known as Allied Systems Holdings, Inc.) and related Debtors ("Allied"), respectfully submits this combined opposition to (1) the Board of Fire and Police Pension Commissioners and the Board of Administration of the Los Angeles City Employees' Retirement System's (the "City Pension Defendants'") Motion to Dismiss [D.I. 20], (2) Yucaipa American Alliance Fund I, LLC and Yucaipa American Management, LLC's (the "Yucaipa Defendants'") Motion to Dismiss [D.I. 29], and (3) the Limited Partner Defendants' (the "LP Defendants'," and together with the others, the "Defendants") Motion to Dismiss [D.I. 22], in the above-captioned adversary proceeding (the "Adversary Proceeding").

## SUMMARY OF ARGUMENT

1.   **The Court has jurisdiction.**   The Court has subject-matter jurisdiction over this Adversary Proceeding for several independent reasons.

First, this is a "core" proceeding under 28 U.S.C. § 1334.  A proceeding to enforce an order or judgment in another core proceeding is itself a core proceeding. The Trustee's fraudulent transfer claims seek to enforce the Bankruptcy Court's

judgment in prior core proceedings against Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. ("Yucaipa").[2]

Alternately, the Court has "related to" jurisdiction.  The Adversary Proceeding has a "close nexus" to Allied's bankruptcy plan.  The Plan expressly contemplated the proceedings against Yucaipa and provided that the Bankruptcy Court would retain jurisdiction over them.  This Adversary Proceeding also affects the implementation of the Plan and the integrity of the bankruptcy process.

Finally, this Court has supplemental and ancillary jurisdiction.  Even apart from any bankruptcy-specific grant of jurisdiction, federal courts retain jurisdiction to enforce their own judgments by recovering fraudulent transfers that attempt to evade those judgments.  That principle authorizes these proceedings too.

**2.    The Court should not abstain.**  The City Pension Defendants do not satisfy their burden of establishing the requirements for mandatory abstention, including the requirement that the action can be "timely adjudicated" in state court.  Nor is permissive abstention warranted.  Abstention would result in piecemeal state-court litigation all over the country and undermine, rather than promote, judicial economy.

---

[2] The Trustee is a judgment creditor against Yucaipa.  Compl. ¶1.  This Adversary Proceeding also named Yucaipa's General Partner, Yucaipa American Fund I, LLC, as a defendant.  *Id.* ¶7.  Yucaipa's General Partner declined the Trustee's request that it submit to entry of judgment for Yucaipa's unsatisfied debts owed to the Debtors' estate.  *Id.* ¶149.

### 3. __The Trustee's claims are adequately pled.__

a.   The Trustee's actual fraudulent transfer claim is subject to a relaxed pleading standard.  Even if it were not, the claim satisfies Rule 9(b).  The Trustee identifies each of the alleged fraudulent transfers by date, amount, and recipient. The Trustee also alleges numerous "badges of fraud" sufficient to show intent to defraud.  Chief among those badges is that Yucaipa made each of the transfers after it had already suffered significant defeats in litigation proceedings and was facing hundreds of millions of dollars in damages.

b.   The constructive fraudulent transfer claim is similarly well-pled. Yucaipa reasonably should have contemplated when it made the transfers at issue that it would incur substantial liability.  The transfers left Yucaipa unable to satisfy those foreseeable liabilities.

c.   The Trustee's claims relating to Yucaipa's 2017 distributions are timely.  The claims are subject to a four-year limitations period.  The three-year deadline Defendants invoke applies only when claims are brought by a **_partnership_**, not to claims brought by third parties such as those at issue here.

d.   The Trustee's claim for a declaratory judgment that Yucaipa's General Partner is jointly and severally liable for the June 23, 2021 Judgment against the partnership is similarly timely.  That claim did not accrue until the Bankruptcy Court entered that Judgment.  This suit was filed mere months later.

4.     **The defendant-specific arguments are meritless.**

a.     The Foreign LP Defendants are subject to personal jurisdiction. Those defendants have sufficient minimum contacts with the United States because they chose to become partners in a Delaware partnership subject to a Delaware choice-of-law clause, to assert defenses unique to Delaware partnerships, and to receive the fraudulent transfers at issue from that Delaware partnership. Those are sufficient contacts to support personal jurisdiction.

b.     The so-called "State" Defendants are not immune from suit under the Eleventh Amendment. Sovereign immunity does not apply in bankruptcy proceedings to recover fraudulent transfers. And the State Defendants fail to establish that they are in fact arms of the State.

c.     The NYC Funds were not entitled to presuit notice. New York's notice requirements apply to governmental, not proprietary, functions. The conduct at issue — the receipt of fraudulent transfers in connection with a fund's investment activities — is quintessentially proprietary. Additionally, the presuit notice provision requirements are inapplicable because they stem from state-law immunity that does not apply in this bankruptcy proceeding.

d.     The ERISA Defendants' reliance on ERISA's anti-alienation provision similarly fails. That provision protects only benefit payments to plan

beneficiaries.  It does not shield ERISA plans themselves from claims arising out of their investment activities.

e.     Finally, State Street is not entitled to dismissal as a "mere conduit." That argument is an affirmative defense that cannot be resolved at this stage.

## STATEMENT OF FACTS

### I.   BACKGROUND

#### A.   Allied's Financing

Allied operated a car hauling business in North America.  Compl. ¶54.[3] After Allied emerged from an earlier bankruptcy in 2007, Yucaipa held 66% of its equity and controlled its board of directors.  *Id.* ¶¶57-58.  Allied's exit financing included a $265 million First Lien facility.  *Id.* ¶60.  The First Lien Credit Agreement ("FLCA") provided that only a "Requisite Lender" — one or more lenders holding more than 50% of the outstanding debt — could take certain actions on behalf of all lenders.  *Id.* ¶¶60, 64.

When Allied's financial condition continued to deteriorate, Yucaipa negotiated a Third Amendment to the FLCA with the First Lien lenders.  Compl. ¶67.  That amendment obligated Yucaipa to make capital contributions upon the acquisition of debt, limited the amount of debt it could purchase, and prohibited

---

[3] "Compl." refers to the Trustee's Complaint in this Adversary Proceeding, Del. Bankr. Adv. 21-51179.  *See* Bankr. Adv. Pro., D.I. 1.  "Bankr. Adv. Pro., D.I., __" refers to documents filed in the Adversary Proceeding.  The Complaint is also filed on this Court's docket at D.I. 35.

Yucaipa from acting as a Requisite Lender.  *Id.*  Yucaipa also negotiated for an amendment to Allied's Second Lien facility enabling Yucaipa to buy debt with an option of converting acquired Second Lien holdings into equity.  *Id.* ¶68.  Despite these maneuvers, Allied continued to struggle.  After Allied defaulted on certain covenants in the FLCA, the First Lien lenders were poised to exercise their remedies, which would have wiped out Yucaipa's substantial equity investment. *Id*. ¶¶71-72.

With its investments in peril, Yucaipa tried to become a Requisite Lender despite the FLCA's restrictions.  Compl. ¶73.  In August 2009, Yucaipa purchased more than 50% of Allied's First Lien debt from another lender and caused Allied to enter into a Fourth Amendment removing the restrictions on Yucaipa's ownership of that debt.  *Id.* ¶¶79-80.  In 2012, other First Lien lenders — BDCM Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd., and Spectrum Investment Partners, L.P. (together, "BD/S") — sued Yucaipa in New York state court, seeking to invalidate the Fourth Amendment.  *Id.* ¶88.  The New York court granted that relief, and that decision was affirmed on appeal.  *Id*. ¶¶90-92.

## B.    The Adverse Decisions Against Yucaipa

In May 2012, while the New York lawsuit was ongoing, BD/S filed an involuntary petition for bankruptcy against Allied in the Delaware Bankruptcy Court.  Compl. ¶93.  The next month, Allied filed its own voluntary bankruptcy

petitions. *Id*. ¶94. Allied's creditors then filed two adversary proceedings against Yucaipa in the Bankruptcy Court (the "Yucaipa Adversary Proceedings"). *Id*. ¶¶1, 95.[4] Allied also filed a third, related adversary proceeding (the "Allied Adversary Proceeding").[5] The Yucaipa Adversary Proceedings sought over one hundred million dollars in damages from Yucaipa for various claims, including breach of the FLCA's capital contribution requirements, recovery and avoidance of fraudulent transfers, breaches of fiduciary duties, and equitable subordination of Yucaipa's debt holdings. *Id*. ¶96.

In December 2015, the Bankruptcy Court confirmed Allied's Chapter 11 Plan of Reorganization. Confirmation Order, Del. Chapter 11, D.I. 3383.[6] The Confirmation Order appointed Catherine Youngman as the Trustee for the Litigation Trust created by the Plan and the Plan Administrator of the bankruptcy cases. *Id*. ¶¶20, 22. Under the Plan, the Trustee is the Estate's representative responsible for, among other things, prosecuting "Litigation Claims" on behalf of the Debtors' estates. Del. Chapter 11, D.I. 3360-1 ("Plan") at 3-10 (definitions);

---

[4] Those two actions are (1) the "Estate Action" commenced by Allied's Official Committee of Unsecured Creditors in February 2013, Del. Bankr. Adv. 13-50530, and (2) the "Lender Action" commenced by BD/S in November 2014, Del. Bankr. Adv. 14-50971. Compl. ¶¶1, 95.

[5] That proceeding sought a judicial declaration regarding the validity and enforceability of the Third and Fourth Amendments and to determine which First Lien Lender was the Requisite Lender. Del. Bankr. Adv. 12-50947.

[6] "Del. Chapter 11, D.I. __" refers to documents filed in the Delaware Chapter 11 Case, Del. Bankr. Case No. 12-11564.

*id.* § 5.10(b).  Those Litigation Claims are defined to include actions "arising out of" or "related to" the Yucaipa Adversary Proceedings.  Plan at 9-10.  After the Plan became effective, the Trustee was substituted as plaintiff in those proceedings.  Plan §§ 5.10(c), 5.11(a)-(b); Substitution Order, Yucaipa Adv. Pro., D.I. 415.[7]  The Bankruptcy Court retained jurisdiction to "hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Litigation Claims."  Plan § 9.1(e); *id.* at 9 (definition of "Litigation Claims").

In August 2013, the Bankruptcy Court granted partial summary judgment in favor of Allied's creditors in both the Estate Action and the Allied Adversary Proceeding, holding that "(1) BD/S, not Yucaipa, were Requisite Lenders, (2) the Third Amendment was validly enacted and governed, and (3) Yucaipa was collaterally estopped from asserting the Fourth Amendment's validity."  Compl. ¶ 97.  Yucaipa appealed that ruling but lost.  *See In re Allied Sys. Holdings Inc.*, 556 B.R. 581, 608-09 (D. Del. 2016), *aff'd*, *In re ASHINC Corp.*, 683 F. App'x 131, 142 (3d Cir. 2017).  Yucaipa thus knew by early 2017 that the Fourth Amendment was invalid and that the Third Amendment was binding.  Compl. ¶ 98.

---

[7] "Yucaipa Adv. Pro., D.I. __" refers to documents filed in the Estate Action, Del. Bankr. Adv. 13-50530.  This brief excludes references to duplicate filings entered in the Lender Action, Del. Bankr. Adv. 14-50971.

Additional adverse rulings by 2017 eliminated Yucaipa's discernable defenses, crossclaims, and counterclaims. *Id.* ¶99.

On May 4, 2021, the Bankruptcy Court issued a further order granting in part and denying in part the Trustee's and Yucaipa's cross-motions for summary judgment. Yucaipa Adv. Pro., D.I. 825 (the "2021 Summary Judgment Decision"). On June 23, 2021, the Bankruptcy Court awarded the Trustee damages of $132.4 million on certain claims asserted in the Estate Action (the "Judgment"). Yucaipa Adv. Pro., D.I. 841.[8]  Yucaipa has not satisfied the Judgment and has represented in court filings and post-judgment discovery responses that it lacks sufficient assets to pay. Compl. ¶2.

In March 2022, the Bankruptcy Court conducted a trial on the remaining claims in the Yucaipa Adversary Proceedings. On May 2, 2022, the Bankruptcy Court entered a judgment that the Trustee take nothing on those claims. *See* Yucaipa Adv. Pro., D.I. 1008. That judgment is on appeal and presently stayed before this Court. *See* Dist. Ct. Case Nos. 22-cv-634 & 22-cv-635.[9]

---

[8] Yucaipa has appealed the Judgment, and the appeal is presently stayed before this Court. *See* Dist. Ct. Case Nos. 21-cv-994 & 21-cv-995.

[9] This Court recently decided related objections by Yucaipa concerning the breach of contract claim in the Lender Action. *See* Memorandum Opinion at 32, Dist. Ct. Case No. 21-cv-01060, D.I. 5 (D. Del. July 11, 2022). Yucaipa noticed an appeal from that decision to the Third Circuit. *Id.*, D.I. 7 (Aug. 4, 2022).

### C.     Yucaipa's Fraudulent Transfers

Despite the ongoing Yucaipa Adversary Proceedings and the string of adverse decisions it suffered in those proceedings, Yucaipa transferred approximately $379.7 million to its limited partner investors between October 2017 and May 2019.  Compl. ¶ 103.

Yucaipa concealed those transfers from the Trustee for years.  In May 2019, the Trustee's counsel noticed a deposition of Yucaipa's corporate representative.  Compl. ¶ 109.   Despite being told that one of the topics to be addressed was Yucaipa's ability to satisfy any judgment, the corporate representative was unable to testify about it.  *Id.* ¶¶ 110-112.  In early 2020, after Yucaipa refused to disclose the identity of recipients of distributions it had made, the Trustee moved for Rule 2004 discovery in the Bankruptcy Court, which Yucaipa opposed.  *Id.* ¶¶ 114-15. The Bankruptcy Court finally allowed discovery to proceed in July 2021 after entry of the Judgment.  *Id.* ¶ 120.   And Yucaipa finally produced records that allowed the Trustee to identify certain transfers.  *Id.*

Those records did not provide the Trustee with complete information. Yucaipa withheld discovery relating to non-investor transfers until July 2022, well after the Trustee filed this Adversary Proceeding and more than a year after the Bankruptcy Court ordered discovery.  Zaiger Decl. ¶¶ 2-3 &  Exs. 1, 2.  Moreover,

the Trustee has received discovery only from Yucaipa, not from any of the transferees.  *Id.* ¶4.

Yucaipa has also tried unsuccessfully to delay enforcement of the Judgment. It sought a stay pending appeal while refusing to post any bond.  Compl. ¶¶122-124.  The Bankruptcy and District Courts granted limited stays, which expired in August 2021.  *Id.*  Yucaipa still has not paid any portion of the Judgment.  *Id.* ¶126.

## II.   PROCEDURAL HISTORY

In October 2021, the Trustee filed the Adversary Proceeding at issue here. The Complaint names as defendants Yucaipa and its limited partner investors that received the transfers.   Compl. ¶4.   The Complaint asserts three counts: (1) avoidance and recovery of actual fraudulent transfers under the Uniform Fraudulent Transfer Act ("UFTA"), 6 *Del. C.* §1304(a)(1); (2) avoidance and recovery of constructive fraudulent transfers under the UFTA, 6 *Del. C.* §§1304(a)(2), 1305(a); and (3) a declaratory judgment that Yucaipa's General Partner is liable for Yucaipa's debts.  *Id.* ¶¶129-150.

On March 4, 2022, the LP Defendants filed a Motion to Withdraw the Reference with respect to the Adversary Proceeding.  D.I. 1.  The Trustee and the LP Defendants, with the consent of the Yucaipa Defendants, then stipulated to

withdraw the bankruptcy reference and have the Adversary Proceeding proceed in this Court.  D.I. 18.  This Court approved that stipulation on July 20, 2022.  D.I. 19.

On May 31, 2022, and June 1, 2022, the Yucaipa Defendants, the LP Defendants, and the City Pension Defendants each filed separate Motions to Dismiss in the Bankruptcy Court.  Bankr. Adv. Pro., D.I. 74, 76, 79.  After this Court withdrew the reference, the parties refiled those motions on this Court's docket.  D.I. 20, 22, 29.  This Opposition is the Trustee's combined response.

## ARGUMENT

Yucaipa distributed hundreds of millions of dollars to its investors for no consideration despite the imminent prospect of massive judgments it had no other means to pay.  Following Yucaipa's inevitable claim that it does not have assets to satisfy those judgments, the Trustee now seeks to recover those fraudulent transfers.  Defendants raise a panoply of jurisdictional and other defenses in an effort to retain their ill-gotten gains.  None of them has any merit.

## I.    THE COURT HAS SUBJECT-MATTER JURISDICTION

Defendants first dispute the Court's subject-matter jurisdiction to hear these proceedings.  City Defs. Br. [D.I. 21] 9-16; Yucaipa Br. [D.I. 29] 8-20.  In fact, the Court has jurisdiction on three separate grounds.

Under the Bankruptcy Code, district courts have "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction

of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334(a), (b). "[C]ases under title 11," and proceedings "arising in" or "arising under" title 11, are "core" proceedings. *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004). Proceedings "related to cases under title 11" are "non-core." *Id.* at 161-62.

This Court has jurisdiction for three independent reasons. The Court has "core" jurisdiction because this proceeding seeks to enforce a judgment issued in another core proceeding. Alternately, the Court has "non-core" jurisdiction because this proceeding has a "close nexus" to Allied's bankruptcy plan. Finally, this Court has supplemental and ancillary jurisdiction to enforce the Judgment previously entered in the Yucaipa Adversary Proceedings.

### A.    This Is a Core Proceeding

This is a core proceeding because the Trustee seeks to enforce a judgment that was itself an exercise of the Bankruptcy Court's core jurisdiction. "Enforcement and interpretation of orders issued in core proceedings are also considered core proceedings within the bankruptcy court's jurisdiction." *In re FormTech Indus., LLC*, 439 B.R. 352, 357 (Bankr. D. Del. 2010). Where the parties "assert[] rights that were established in connection with one of the Bankruptcy Court's core functions," that subsequent dispute also qualifies as "core." *In re Somerset Reg'l Water Res., LLC*, 949 F.3d 837, 844 (3d Cir. 2020).

Through this Adversary Proceeding, the Trustee seeks to enforce and collect the $132 million Judgment the Bankruptcy Court entered in the Yucaipa Adversary Proceedings.  Compl. ¶1.  The Bankruptcy Court held that it had core jurisdiction over the claims in the Estate Action supporting that Judgment.  *See* 2021 Summary Judgment Decision at 6; Judgment at 4-5.  Indeed, Yucaipa admitted that those claims were core.  Trustee's Response to Yucaipa's Mot. for Stay at 2-6, Yucaipa Adv. Pro., D.I. 855 (July 2, 2021).[10]

The Trustee's fraudulent transfer claims seeking to enforce that prior Judgment are therefore core claims as well.  *See FormTech*, 439 B.R. at 357.  That these claims arise under state law is no answer.  Yucaipa Br. 12.  Under the Bankruptcy Code, "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."  28 U.S.C. §157(b)(3).  Accordingly, "[t]he fact that a core proceeding involves state law claims does not necessarily 'alter the core nature of a proceeding.'"  *In re Weiand Auto. Indus.*, 612 B.R. 824, 855-56 (Bankr. D. Del.

---

[10] The Trustee conceded that Lender Claim 2 — the breach of contract claim in the Lender Action that overlaps with Estate Claim 5 — was a "non-core" claim. Memorandum Opinion at 5, Dist. Ct. Case No. 21-cv-01060-CFC, D.I. 5 (D. Del. July 11, 2022).  This Court adopted the Bankruptcy Court's proposed factual findings and conclusions of law with respect to Lender Claim 2.  *Id.* at 32.  The $132 million Judgment the Trustee seeks to enforce in this proceeding is fully supported by the claims in the Estate Action.  Compl. ¶2; Judgment at 4.  Thus, the non-core status of Lender Claim 2 does not undermine the core status of the claims being enforced in this Adversary Proceeding.

2020).  The Trustee's fraudulent transfer claims seek to enforce a prior judgment in a core proceeding, so these are core claims too.

## B.   The Court Has "Related To" Jurisdiction

Alternately, the Court has jurisdiction because this Adversary Proceeding is "related to" Allied's bankruptcy case.   Although the Trustee brought this proceeding after Allied's Plan had been confirmed, the proceeding still has a close nexus to the Plan.  The Plan specifically described the claims at issue and treated them as important assets to be distributed to creditors.   This proceeding thus directly affects the Plan's implementation.

### 1.   *This Proceeding Has a "Close Nexus" to the Bankruptcy Plan and Proceeding*

Courts have "related to" jurisdiction over matters that "could conceivably have any effect on the estate being administered in bankruptcy."  *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis omitted).  Once a plan has been confirmed, the Third Circuit requires a claim to have a "close nexus to the bankruptcy plan or proceeding" to support that jurisdiction.  *Resorts*, 372 F.3d at 166.   "Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus."  *Id.* at 167.

Courts have repeatedly held that a bankruptcy plan's description of specific claims supports post-confirmation "related to" jurisdiction.  *See, e.g.*, *In re BWI*

*Liquidating Corp.*, 437 B.R. 160, 165 (Bankr. D. Del. 2010) (close nexus "may be found where the plan specifically enumerates the cause of action"); *In re AstroPower Liquidating Tr.*, 335 B.R. 309, 324-25 (Bankr. D. Del. 2005); *In re LGI, Inc.*, 322 B.R. 95, 108 (Bankr. D.N.J. 2005). "[W]here, as here, the Plan specifically describes an action over which the Court had 'related to' jurisdiction pre-confirmation and expressly provides for the retention of such jurisdiction to liquidate that claim for the benefit of the estate's creditors, there is a sufficiently close nexus with the bankruptcy proceeding." *AstroPower*, 335 B.R. at 325.

That standard is met here. The Yucaipa Adversary Proceedings were central to the Plan. The Plan defined "Litigation Claims" as "Estate Claims and the Lender Direct Claims" that correspond to the Estate and Lender Actions in the Yucaipa Adversary Proceedings. Plan at 9. It defined "Estate Claims" as the claims asserted in the "Amended Complaint" in the Estate Action and "any additional claims of the Debtors' Estates ***arising out of, or related to,*** the facts and circumstances described in the Amended Complaint." *Id.* at 3, 7 (emphasis added). The Plan provided that the Trustee "shall be a representative of the Debtors' Estates" and have power "to make all decisions with respect to the prosecution of the Litigation Claims." *Id.* § 5.10(b). The Bankruptcy Court retained "exclusive jurisdiction" to "hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to,

the Litigation Claims" and to "enforce all orders, judgments . . . and rulings entered in connection with the Chapter 11 Cases or provided for under the Plan." *Id.* §§ 9.1(e), (*l*).

This Adversary Proceeding falls squarely within that description. Although the Plan obviously could not have described this yet-to-be-filed fraudulent conveyance proceeding by name, it clearly provided that the Bankruptcy Court would retain jurisdiction over any further claims "arising out of, or related to," the claims in Yucaipa Adversary Proceedings. Plan at 3, 7. Contrary to Yucaipa's suggestion that this proceeding "shares no common facts, circumstances, or causes of action that are described in the Amended Complaint" in the Yucaipa Adversary Proceedings, Yucaipa Br. 18, this fraudulent conveyance proceeding seeks to enforce the Judgment based on the claims in that very complaint.

To be clear, the Trustee does not contend that the Plan supports "related to" jurisdiction merely because the parties conferred jurisdiction by agreement. The point is that the Plan's references to claims like these establish the requisite "close nexus" because they show that the claims were valuable estate assets important to the Plan's implementation. Litigation that is "critical to the Plan's implementation" would naturally be "more specifically described in the . . . Plan." *AstroPower*, 335 B.R. at 325. The specific description of the claims demonstrates that they are an "important substantive element of the Plan to be prosecuted by the

[Trustee]."  *LGI*, 322 B.R. at 103; *see also In re FAH Liquidating Corp.*, 567 B.R. 464, 470 (Bankr. D. Del. 2017) ("many" references in plan showed that dispute was "inseparable from the Plan").

The Plan specifically described the claims in the Yucaipa Adversary Proceedings — seeking recovery of hundreds of millions of dollars in pre-petition losses — because those claims were critically important assets of Allied's estate and key to the Plan's implementation.   The Trustee pursued the claims in the Yucaipa Adversary Proceedings, and now brings this Adversary Proceeding to enforce the Judgment, for the benefit of all of Allied's creditors who are the express beneficiaries of the Litigation Trust.   *See* Plan at 10 (definition of "Litigation Trust Beneficiaries").   The importance of the claims is self-evident. Since the Effective Date, the Trustee has distributed only a *de minimis* fraction of the creditors' allowed claims.  *See* Quarterly Distribution Report at 2, Del. Ch. 11, D.I. 4225 (May 12, 2022).  To date, the Trustee has not distributed a single cent in connection with the $132 million Judgment at stake, which took over seven years of hard-fought litigation against Yucaipa to secure.   This Adversary Proceeding seeks to collect a valuable asset that belongs to Allied's estate and creditors and thus has the requisite "close nexus" to the Plan.

This proceeding also has the requisite "close nexus" because it is necessary to preserve the integrity of the bankruptcy process.  In *Donaldson v. Bernstein*, 104

F.3d 547 (3d Cir. 1997), the Third Circuit recognized jurisdiction over state law claims that "implicate[] the integrity of the bankruptcy process." *Id.* at 553. The court explained that "'misconduct during the bankruptcy proceeding' by the debtor often compels the court to allow the fraud to be addressed." *Id.*; *see also Resorts*, 372 F.3d at 165 (citing *Donaldson* with approval). The Supreme Court similarly held in *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009), that a "[b]ankruptcy [c]ourt plainly ha[s] jurisdiction to . . . enforce its own prior orders." *Id.* at 151. Indeed, that is the "most basic and intrinsic authority of . . . any court." *In re CD Liquidation Co., LLC*, 462 B.R. 124, 136 (Bankr. D. Del. 2011); *see also Weiand*, 612 B.R. at 856 (finding both "core" and "related to" jurisdiction because "caselaw generally supports a bankruptcy court's jurisdiction to . . . enforce its own orders").

In *In re British American Insurance Co. Ltd.*, 600 B.R. 890 (Bankr. S.D. Fla. 2019), for example, a party brought a supplemental proceeding in bankruptcy court to recover assets fraudulently transferred to a defendant's wife. *Id.* at 893. The court held that, even though it did not have core jurisdiction, it had "related to" jurisdiction over the fraudulent conveyance claim. *Id.* at 897.

The same logic applies here. Yucaipa engaged in blatant efforts to avoid the Bankruptcy Court's impending judgment by transferring assets to investors,

leaving itself unable to pay.  Those actions imperil the integrity of the bankruptcy process.  This Court has "related to" jurisdiction to remedy that misconduct.

### 2.   *Defendants' Contrary Arguments Lack Merit*

Yucaipa and the City Pension Defendants claim that *Resorts* forecloses "related to" jurisdiction here.  City Defs. Br. 12-13; Yucaipa Br. 9.  But as they admit, *Resorts* involved a malpractice claim by a litigation trustee against an accounting firm for "post-confirmation work."  City Defs. Br. 12.  That claim had no connection to a judgment for the debtors' pre-petition losses.  Nor was there any specific mention of the claim in the bankruptcy plan, which included only a boilerplate "sweeping jurisdictional retention provision[]."  372 F.3d at 160.  The malpractice claim in *Resorts* was an "accidental happenstance" that arose out of the post-confirmation operation of the trust.  *LGI*, 322 B.R. at 103.

Here, by contrast, the Trustee's fraudulent transfer claims arise out of pre-petition losses.  The Plan specifically describes the claims.  And there is no risk of "unending jurisdiction" like there was in *Resorts*, 372 F.3d at 167.[11]

Defendants' out-of-circuit cases are similarly irrelevant.  In *In re Heritage Organization, LLC*, 454 B.R. 353 (Bankr. N.D. Tex. 2011), for example, the court

---

[11] Allied's Chapter 11 Plan was essentially a liquidation plan.  *See* Joint Procedural History at 3, Yucaipa Adv. Pro., D.I. 599 (July 25, 2019) ("substantially all of Allied's assets" sold in December 2013); LP Defs. Br. 2-3 (bankruptcy "resulted in a ***liquidation*** that did not pay . . . secured claims in full" (emphasis added)).  "[A] liquidating debtor exists for the singular purpose of executing an order of the bankruptcy court."  *In re Venoco LLC*, 998 F.3d 94, 108 (3d Cir. 2021).

followed Fifth Circuit law and did not even mention the words "close nexus." And the plan in that case did not describe the claims being enforced — it contained only broad jurisdiction-retention provisions. *Id.* at 359 (bankruptcy court "retained jurisdiction to the fullest extent legally permitted"). Delaware courts have routinely relied on precisely this distinction where the plan specifically describes litigation claims. *See, e.g.*, *In re EXDS, Inc.*, 352 B.R. 731, 736 (Bankr. D. Del. 2006) ("The language of the Plan [here] is clearly more descriptive than the language used [in other cases]."); *AstroPower*, 335 B.R. at 325; *see also EXDS*, 352 B.R. at 736-37 (distinguishing *In re Haws*, 158 B.R. 965 (Bankr. S.D. Tex. 1993), another case the City Pension Defendants cite, based on "[t]he specificity of the references to the claims" in the plan). There are other differences too. For example, some of the fraudulent transfers in *Heritage* were made by a "stranger" to the first proceeding. 454 B.R. at 366. Here, all the transfers were made by Yucaipa, the judgment debtor in the Yucaipa Adversary Proceedings.[12]

Defendants urge that parties cannot establish jurisdiction by consent. City Defs. Br. 13; Yucaipa Br. 17-18. But that principle, while true, misses the mark. As discussed, the Plan's specific reference to the claims at issue matters not

---

[12] *In re Transcolor Corp.*, Adv. No. 05-9103, 2007 WL 2916408 (Bankr. D. Md. 2007), involved a "prejudgment transfer that occurred nearly 25 years before the federal judgment was rendered." *Id.* at *18. And *In re Import & Mini Car Parts, Ltd., Inc.*, 200 B.R. 857 (Bankr. N.D. Ind. 1996), involved enforcement of a claim assigned by a bankruptcy liquidation trustee to another trustee acting on behalf of administrative creditors.

because it creates jurisdiction out of whole cloth, but because it proves a "close nexus" to the Plan.  A plan that "specifically enumerate[s] the cause of action" demonstrates a "close nexus" because it indicates the importance of the claims to the bankruptcy case.  *BWI*, 437 B.R. at 165; *see also EXDS*, 352 B.R. at 738 ("Specific reference to the Claims in the Plan shows that the debtor and the creditors considered the Claims to be assets of the estate.").

Defendants insist that the Plan and Confirmation Order "expressly disclaimed any connection between the Plan and any litigation involving Yucaipa or its affiliates."  Yucaipa Br. 14; City Defs. Br. 7.  They did no such thing.  Section 3.7(e) of the Plan merely provided that the Plan "shall have no effect on or prejudice in any way Yucaipa['s] . . . rights, claims or defenses."  And paragraph 54 of the Confirmation Order merely stated that nothing in the Plan or Confirmation Order would be deemed to "provide the Bankruptcy Court with jurisdiction over any Litigation Claims" or "limit or impair any named or unnamed defendant's right to contest the Bankruptcy Court's jurisdiction."  City Defs. Br. 6-7.  That language merely reflects the point that jurisdiction cannot be established by consent, while confirming that Yucaipa (and other defendants) retain the right to challenge jurisdiction — a right they had in any event and are exercising now in this case.  Nowhere did the Plan or Confirmation Order "expressly disclaim[] any connection" to the litigation against Yucaipa.  City Defs. Br. 7; Yucaipa Br. 14.

22

Defendants further deny a "close nexus" on the ground that the estate terminated years ago.  City Defs. Br. 15; Yucaipa Br. 14.  But the Third Circuit has already made clear in *Resorts* that the termination of the estate does not "entirely bar post-confirmation bankruptcy jurisdiction."  372 F.3d at 165.  *Resorts* noted that "litigation trusts by their nature maintain a connection to the bankruptcy even after the plan has been confirmed."  *Id.* at 167.  "The question is ***how close*** a connection warrants post-confirmation bankruptcy jurisdiction."  *Id.* (emphasis added).  *Resorts* thus does not indicate that "post-confirmation jurisdiction over cases brought by litigation trusts has become any less certain."  *EXDS*, 352 B.R. at 739.  While the fact that claims are brought post-confirmation by a liquidating trustee may be a reason to apply the "close nexus" standard in the first place, *Resorts*, 372 F.3d at 166, it is not an additional thumb on the scale when applying that standard.  Defendants' contrary position "would recharacterize the nature of post-confirmation trust litigation so that every post-confirmation trust case would fail the 'close nexus' test."  *LGI*, 322 B.R. at 104.

Nor does the fact that the fraudulent conveyance claims were asserted six years after confirmation defeat jurisdiction.  Yucaipa Br. 2, 17 n.10.[13]  The "close nexus" test applies in "all disputes raised post-confirmation, regardless of when the

---

[13] Technically, the Debtors' estates did not cease to exist until the Plan became effective on December 20, 2016, nearly a year after confirmation.  Plan § 8.3; Notice of Effective Date at 1, Del. Chapter 11, D.I. 3744 (Dec. 21, 2016).

conduct alleged in the complaint occurred." *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 265 (3d Cir. 2007); *BWI*, 437 B.R. at 165 ("[T]he timing of the conduct alleged in the complaint is not a factor to be considered in determining whether there is a close nexus."). In *Travelers*, the Supreme Court upheld a bankruptcy court's jurisdiction to enforce its own order more than ***twenty years*** after confirmation. *See* 557 U.S. at 141 (order entered in December 1986).

Finally, the recovery at stake here goes far beyond the "mere possibility of a gain or loss." Yucaipa Br. 16-17; *see* City Defs. Br. 12. Although "the potential to increase assets of the [Trust] . . . does not ***necessarily*** create a close nexus," *Resorts*, 372 F.3d at 170 (emphasis added), it is sufficient here where the claims were specifically enumerated in the Plan and would have a significant impact on creditor recovery, *see EXDS*, 352 B.R. at 739. This Court thus has "related to" jurisdiction over this proceeding.

### C.    The Court Has Supplemental and Ancillary Jurisdiction

Wholly apart from core or non-core bankruptcy jurisdiction under § 1334, this Court also has jurisdiction to enforce the Bankruptcy Court's prior Judgment under principles of supplemental and ancillary jurisdiction. "It is well established that federal courts have ancillary jurisdiction to enforce their judgments." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 136-37

(3d Cir. 2019).  That jurisdiction applies to a "broad range of supplementary proceedings involving third parties."  *Id.*[14]

In *IFC Interconsult, AG v. Safeguard International Partners, LLC*, 438 F.3d 298 (3d Cir. 2006), for example, the Third Circuit held that it had supplemental jurisdiction over a garnishment action to enforce a judgment against a new defendant.  Even though the claims were "new actions" because there was "a new party and a new theory for the party's liability," the claims were still "predicated on a pre-existing judgment."  *Id.* at 314.  The court reasoned that "there is an essential difference between an action to enforce a judgment via garnishment and an action to establish liability in the first place."  *Id.*  That same logic applies to fraudulent transfer actions against third parties to collect a prior judgment.  *See Gambone v. Lite Rock Drywall*, 288 F. App'x 9, 13 (3d Cir. 2008) (holding that district court had ancillary jurisdiction over fraudulent conveyance claim in post-judgment enforcement proceeding); *Thomas, Head & Greisen Emps. Tr. v. Buster*, 95 F.3d 1449, 1453 (9th Cir. 1996) ("There can be little question that federal courts generally possess the power to protect their judgments by setting aside fraudulent conveyances of the judgment debtor.").

---

[14] The case law refers to both "supplemental" and "ancillary" jurisdiction, but similar principles apply under either label.  *See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 309 (3d Cir. 2006) ("We do not see the relevant inquiries for ancillary and supplemental jurisdiction as separate.").

Here, the Trustee seeks only to collect a prior judgment, not to establish liability in the first place. This Adversary Proceeding attempts to reach Yucaipa's assets found in the hands of the other Defendants. Thus, the Court has supplemental jurisdiction over the proceeding.

Yucaipa argues that bankruptcy courts do not have the same supplemental jurisdiction to enforce their judgments as district courts. Yucaipa Br. 19. Many courts have disagreed. *See Townsquare Media Inc. v. Brill*, 652 F.3d 767, 771-72 (7th Cir. 2011) (summarizing conflicting cases); 1 Collier on Bankruptcy ¶3.02[8] (16th ed. 2022); *In re Wellington Apartment, LLC*, 353 B.R. 465, 471-73 (Bankr. E.D. Va. 2006). The Third Circuit has stated that a bankruptcy court has jurisdiction to "void any future fraudulent transfers" that "continued unabated in the face of [its] order." *In re Truong*, 285 F. App'x 837, 840 (3d Cir. 2008).

In any event, the Court need not resolve that issue because the Adversary Proceeding has now been withdrawn from the Bankruptcy Court and is pending before this Court. There is no dispute that **district courts** can exercise supplemental and ancillary jurisdiction. That the Bankruptcy Court, not this Court, originally entered the Judgment is immaterial. In *Crystallex*, the Third Circuit held that an attachment action in Delaware to enforce an arbitration award was a "continuation of" an earlier D.C. District Court action to confirm the award. 932 F.3d at 132-134, 138. Because the D.C. District Court had jurisdiction, "the

Delaware District Court and [the Third Circuit] also have jurisdiction." *Id.* at 138. The principle applies with even greater force here, where the Bankruptcy Court is a mere component of this Court.[15]

Supplemental and ancillary jurisdiction thus provide a third and independent basis for jurisdiction over this enforcement proceeding.

## II.   THE COURT SHOULD NOT ABSTAIN

Yucaipa and the City Pension Defendants urge that, even if the Court has jurisdiction, it should abstain from exercising it.  Yucaipa Br. 20-23; City Defs. Br. 16-20.  But they ignore the Court's "'virtually unflagging obligation' to exercise its jurisdiction."  *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 82 (3d Cir. 2011). The City Pension Defendants — the only ones seeking mandatory abstention — fail to satisfy the applicable standards.  And neither set of Defendants justifies permissive abstention, an extraordinary and narrow remedy that should be rarely invoked in cases such as this.  Abstention in this case would result in inefficient piecemeal litigation across the country that would undermine rather than advance judicial economy and delay distributions to Allied's creditors.

---

[15] Yucaipa argues that the Bankruptcy Court "has already exercised its authority to enforce the Judgment by permitting the domestication of the Judgment in California."  Yucaipa Br. 20.  That action does not somehow disable this Court from *further* enforcing the Judgment by adjudicating the Trustee's fraudulent conveyance claims in this forum.

### A.   The City Pension Defendants Do Not Establish the Requirements for Mandatory Abstention

The City Pension Defendants fail to meet their burden of establishing the requirements for mandatory abstention under 28 U.S.C. § 1334(c)(2).   A district court is required to abstain only if the movant satisfies five requirements:

> (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11; (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

*Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006).   As the parties seeking mandatory abstention, the City Pension Defendants bear the burden of establishing that all five requirements are met.   *Id.* at 219 n.5 (party seeking abstention has "the burden of proving his right to mandatory abstention"); *In re Semcrude, L.P.*, 442 B.R. 258, 274 (Bankr. D. Del. 2010) (similar).

In their three-paragraph discussion of mandatory abstention, the City Pension Defendants do not even try to establish requirements (3) and (5).   They assert that the Trustee "does not realistically have an independent basis for federal jurisdiction, as it relied on no federal laws."   City Defs. Br. 17.   But they ignore that diversity jurisdiction can separately support federal jurisdiction.   *See* Collier, *supra*, ¶ 3.05[2].   Where the parties seeking mandatory abstention "offer no evidence that [they] lack the required diversity of citizenship," they fail to meet

"their burden with respect to mandatory abstention." *In re Today's Destiny, Inc.*, Adv. No. 06-3285, 2009 WL 1232108, at *3 (Bankr. S.D. Tex. May 1, 2009); *see Oakwood Shopping Ctr., Ltd. P'ship v. Villa Enters. of Midwest, Inc.*, No. Civ. A. 10-2758, 2011 WL 3350402, at *4 (E.D. La. Aug. 3, 2011).[16]

The City Pension Defendants also fail to show that a state court can "timely adjudicate" this action. Courts typically consider "(1) the backlog of the state court's calendar, (2) the status of the bankruptcy proceeding, (3) the complexity of the issues presented, and (4) whether the state court proceeding would prolong the administration of the estate." *In re Maxus Energy Corp.*, 597 B.R. 235, 246 (Bankr. D. Del. 2019). This requirement "is the most difficult to apply." Collier, *supra*, ¶3.05[2]. Yet the City Pension Defendants do not discuss it at all. Their failure to address that requirement likewise justifies denying their request for mandatory abstention.

The City Pension Defendants could not satisfy this requirement even if they tried. The California state court action is in its infancy. Shortly after the complaint was filed on October 7, 2021, the parties stipulated to a stay of the action. *See* Ordered Stipulation to Extend Deadline to Respond to Complaint, *Youngman v. Yucaipa*, Case No. 21STCV37137 (Super. Ct. Cal. L.A. Cnty. Jan. 4, 2022)

---

[16] Having failed to allege, let alone demonstrate, lack of diversity, the City Pension Defendants cannot do so in reply. *See Alston v. Forsyth*, 379 F. App'x 126, 129 (3d Cir. 2010) (vacating district court decision that relied on arguments raised for first time in reply brief).

(stipulation executed and served on Nov. 30, 2021) (Zaiger Decl. Ex. 3).  A state court action still "at the starting line" cannot satisfy this requirement.  *Semcrude*, 442 B.R. at 274; *see also In re Sportsman's Warehouse, Inc.*, 457 B.R. 372, 389-90 (Bankr. D. Del. 2011) (posture of action made it "unlikely" to be timely adjudicated).

The Trustee, moreover, filed the California action only as a protective measure to preserve its rights under the statute of limitations in case this Court declined to exercise jurisdiction.  *See* Ordered Fourth Stipulation to Extend Deadline to Respond to Complaint at 4, *Youngman v. Yucaipa*, Case No. 21STCV37137 (Super. Ct. Cal. L.A. Cnty. June 24, 2022) (Zaiger Decl. Ex. 4) (parties recognized that "certain rulings by the [Delaware] Court with respect to, inter alia, its jurisdiction . . . may have significant impact on whether it is necessary to continue to pursue the claims in this proceeding").  The action remains stayed while this Court considers the Adversary Proceeding.  *Id.*  The California action thus is not proceeding toward resolution at all, much less in a "timely" manner.

Finally, the Court can and should consider the untimeliness and inefficiency that would result from duplicative parallel proceedings.  Even if the Court granted the City Pension Defendants' request for mandatory abstention, the actions against Yucaipa and the LP Defendants would proceed in this Court, as neither of them sought mandatory abstention.  *Semcrude*, 442 B.R. at 274 (requiring timely motion

for mandatory abstention).  That prospect further undercuts any claim of timely adjudication.  *See id.* at 275-76 (denying mandatory abstention where it would result in "duplicative motion practice and repetitious discovery" and there was "no immediately apparent mechanism for the reliable consolidation and coordination of [the] claims").  For that reason, too, the Court should reject the City Pension Defendants' request for mandatory abstention.

## B.   Permissive Abstention Is Inappropriate

Yucaipa and the City Pension Defendants — but not the LP Defendants — also seek permissive abstention under 28 U.S.C. § 1334(c)(1).  City Defs. Br. 17-20; Yucaipa Br. 20-23.  But they ignore a federal court's "'virtually unflagging obligation' to exercise its jurisdiction."  *Nat'l City Mortg.*, 647 F.3d at 82.  Permissive abstention is an "extraordinary and narrow exception" when cases such as this are properly brought before the court, and thus should be "rarely . . . invoked."  *In re Direct Response Media, Inc.*, 466 B.R. 626, 658 (Bankr. D. Del. 2012).  Defendants assert that all twelve of the relevant factors favor abstention.  In fact, the vast majority weigh strongly against it.  This is not one of the rare cases where the Court should abstain.

Factor 1:  Effect on administration of the estate.  Defendants urge that the Debtors' estates were terminated years ago.  City Defs. Br. 18; Yucaipa Br. 22.  But mere confirmation of the Plan does not mean this factor favors abstention.

This factor weighs against abstention where the proceeding has a "close nexus" to a confirmed plan that assigned specific claims to a litigation trustee for the benefit of creditors.  *AstroPower*, 335 B.R. at 330.  This proceeding has a close nexus to the Plan, which assigned claims to the Trustee to collect an asset important to the Plan's implementation.  This factor thus weighs against abstention.

This factor also weighs against abstention due to the prospect of inefficient piecemeal litigation.  As in *Maxus Energy*, "[g]ranting the Motion would require [at least] two separate courts to consider a similar set of operative facts concerning related defendants and with respect to similar issues."  597 B.R. at 247.  "[J]udicial economy would not be served by abstention" where "it would be inefficient to have piecemeal litigation proceeding on parallel tracks."  *Master-Halco, Inc. v. D'Angelo*, 351 B.R. 267, 272 (D. Conn. 2006); *see also Rahl v. Bande*, 316 B.R. 127, 136 (S.D.N.Y. 2004); *In re Enron Corp. Sec.*, *Deriv. & "ERISA" Litig.*, 314 B.R. 354, 359 (S.D. Tex. 2004).  As the LP Defendants have observed, "[c]onsideration of the Adversary Proceeding by the District Court would effectively consolidate all matters relating to Yucaipa before a single court."  LP Defs. Mot. to Stay Br. 15, Bankr. Adv. Pro., D.I. 86 (June 1, 2022).  Presumably for that reason, the LP Defendants did not join in the Yucaipa and City Pension Defendants' request for abstention.  LP Defs. Br. [D.I. 23] 61.

Factor 2:  Predominance of state-law issues.  Although the Trustee's complaint pleads only state-law claims, those claims are closely linked to Allied's bankruptcy and the Judgment obtained in connection with the Plan.  This factor thus is insufficient to justify abstention.

Factor 3:  Unsettled nature of state-law issues.  Yucaipa and the City Pension Defendants argue that "[r]esolution of the fraudulent transfer claims would require a fact-intensive inquiry."  City Defs. Br. 18; *see* Yucaipa Br. 22.  But this factor focuses on unsettled ***legal*** questions, not factual disputes.  *See Schall v. Joyce*, 885 F.2d 101, 113 (3d Cir. 1989) (abstention not appropriate where uncertainty "concerns factual rather than legal questions").  Abstention is appropriate only "when novel or unsettled issues of ***state law*** are involved."  *In re LaRoche Indus.*, 312 B.R. 249, 254 (Bankr. D. Del. 2004) (emphasis added); *see also In re Pan Am. Corp.*, 950 F.2d 839, 846 (2d Cir. 1991).  Even if the facts "are complex," fraudulent transfer claims "are generally not unsettled or unfamiliar" as a ***legal*** matter.  *Maxus Energy*, 597 B.R. at 248.

Factor 4:  Presence of related proceedings in state court.  Although the Trustee filed protective actions in other state courts, they have been stayed while the Adversary Proceeding is before this Court.  This factor thus "weighs against abstention" because abstaining would send defendants to different state courts and

33

"would neither conserve judicial resources nor avoid the possibility of inconsistent rulings." *Maxus Energy*, 597 B.R. at 248.

Factor 5:  Independent basis for federal jurisdiction.  Once again, neither the City Pension Defendants nor Yucaipa analyze whether diversity jurisdiction exists. Yucaipa merely asserts that "federal diversity jurisdiction is lacking with respect to a number of the Defendants" without analysis.  Yucaipa Br. 22.  Defendants thus fail to carry their burden on this factor.

Factor 6:  Relatedness to bankruptcy case.  As shown above, this proceeding has a "close nexus" to Allied's bankruptcy.  It will have a major impact on creditor distributions and represents the last major remaining source of recovery for Allied's creditors.  This factor thus cuts sharply against abstention.  *See Maxus Energy*, 597 B.R. at 249 (factor "strongly" weighs against abstention where adjudication "may determine the population of nearly the entire res").

Factor 7:  Core/non-core status of claims.  The claims in the Adversary Proceeding are core bankruptcy claims as they relate to the Judgment rendered in another core proceeding.  *See* pp. 13-15, *supra*.

Factor 8:  Feasibility of severing state-law claims.  Even if the Court could technically sever the state law claims against certain Defendants, doing so would produce inefficient piecemeal litigation.  This factor thus weighs against abstention. *See In re Valley Media, Inc.*, 289 B.R. 27, 31-32 (Bankr. D. Del. 2003)

("[W]hile it is feasible to sever that state law claim, it is unadvisable as it would create judicial inefficiency.").

Factor 9:  Burden on court's docket.  The claims against the LP Defendants would remain in this Court even if the Court abstained from the claims against the City Pension Defendants and Yucaipa.  The additional burdens from denying abstention would thus be negligible.  This Court, moreover, "is already familiar with much of the case's background." *Maxus Energy*, 597 B.R. at 249.  This factor thus weighs strongly against abstention too.

Factor 10:  Likelihood of forum shopping.  Yucaipa and the City Pension Defendants accuse the Trustee of "forum shopping" by filing its fraudulent conveyance claims in the same court that awarded it a "large judgment."  City Defs. Br. 20; Yucaipa Br. 23.  But this case is now before this Court, not the Bankruptcy Court.  D.I. 19.  In any event, bringing claims before the court "in which the main [bankruptcy] case [was pending] and pursuant to a [plan] that expressly contemplated as much can hardly be considered forum shopping." *AstroPower*, 335 B.R. at 332; *see also In re DBSI, Inc.*, 409 B.R. 720, 730 (Bankr. D. Del. 2009) (no forum shopping where "[t]his Court was the situs for the underlying bankruptcy case").

Defendants assert that, by filing a protective action in California, the Trustee "effectively acknowledged that she is forum shopping."  City Defs. Br. 20; *see*

35

Yucaipa Br. 23.  That argument makes no sense.  The Trustee filed the California action only as a protective measure in case this Court declines jurisdiction.  If the action proceeds here, the Trustee will not proceed with that action.

Factor 11:  Right to jury trial.  Defendants' asserted right to trial by jury will not be compromised in federal court.  This Court is "suited as well as the [state] court to conduct . . . a jury trial."  *Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 715 (D. Del. 2006).

Factor 12:  Presence of non-debtor parties.  This factor weighs against abstention too.  "[T]he twelfth factor does not favor abstention" where the "estate's creditors are the real parties in interest in th[e] dispute."  *AstroPower*, 335 B.R. at 332.  Even where the parties are non-debtors, this factor weighs against abstention where the dispute "maintain[s] a connection to the bankruptcy even after the plan has been confirmed."  *FAH*, 567 B.R. at 472.

Numerous factors thus weigh against abstention.  This is not an extraordinary case in which the Court should decline jurisdiction.

## III.   THE TRUSTEE'S CLAIMS ARE ADEQUATELY PLED

The LP Defendants argue that the Trustee has not sufficiently alleged the fraudulent transfers at issue in this case.  LP Defs. Br. 21-27.  That argument fails.  Contrary to the LP Defendants' arguments, the Trustee's actual fraudulent transfer claim is subject to a relaxed pleading standard.  Even if that were not the case and

Federal Rule of Civil Procedure 9(b) applied, the Trustee's allegations plainly meet that standard.   Further, the LP Defendants do not and cannot contest that the Trustee's constructive fraudulent transfer claim is subject only to Rule 8 notice pleading standards.   The Complaint easily passes muster under that minimal standard.   Additionally, the Trustee's claims to recover fraudulent transfers made in 2017, as well as her claim seeking a declaratory judgment against Yucaipa's General Partner, are not time-barred.

### A.   The Complaint Adequately Alleges Actual Fraudulent Transfers

#### 1.   *The Trustee's Claim Is Subject to a Relaxed Standard*

The LP Defendants argue that the Trustee's actual fraudulent transfer claim is subject to the enhanced pleading requirements of Rule 9(b).   LP Defs. Br. 22-23. But courts have long recognized that "[t]he requirements of Rule 9(b) are relaxed and interpreted liberally where a trustee or a trust formed for the benefit of creditors . . . is asserting the fraudulent transfer claims."   *In re Charys Holding Co., Inc.*, No. 08-10289, 2010 WL 2774852, at *3 (Bankr. D. Del. July 14, 2010); *see also In re Liquid Holdings Grp., Inc.*, No. 16-10202, 2019 WL 3380820, at *1 (Bankr. D. Del. July 25, 2019); *In re APF Co.*, 308 B.R. 183, 188 (Bankr. D. Del. 2004).   The LP Defendants urge that the Trustee has had the benefit of discovery from the Adversary Proceedings.   LP Defs. Br. 22-23.   But that is not a valid basis for refusing to apply the relaxed standard.

The LP Defendants do not cite a single case where the court declined to apply a relaxed pleading standard merely because the trustee had the benefit of discovery.   To the contrary, the LP Defendants' own cases refute any such exception.  In *In re SRC Liquidation LLC*, 581 B.R. 78 (D. Del. 2017), *aff'd*, 765 F. App'x 726 (3d Cir. 2019), the court acknowledged that the trustee was a "successor, effectively, to a Committee that had all the benefits of Discovery Rule 2004" and had "all of the financial records of the company or had access to much more than [the court] would see in a Chapter 7 case."  *Id.* at 87.  Nevertheless, the court held that "[i]t is a well settled proposition that a Bankruptcy Trustee, typically, receives more deference at the Rule 12 stage" and did not apply a heightened pleading standard.  *Id.*

In any case, the Trustee has received far from complete discovery on Yucaipa's fraudulent transfers.  To date, only Yucaipa has provided discovery, not any of the other Defendants.  Zaiger Decl. ¶4.  And until recently, that discovery did not include any information about transfers to non-Yucaipa investors.  *Id.* ¶¶2-3 & Exs. 1, 2.

Even aside from the Trustee's status, courts routinely relax applicable pleading standards where "the defendant is alleged to have concealed the facts that would permit the plaintiff to plead fraud with particularity."  5A Charles A. Wright *et al.*, *Federal Practice and Procedure* §1298 (rev. 2022).  In *JPMorgan Chase*

*Bank, N.A. v. Ballard*, 213 A.3d 1211 (Del. Ch. 2019), for example, the plaintiff alleged the fraudulent transfer of "$134 million in unlawful shareholder dividends, of which $117,148,242.07 were paid from 2006 through May 2011." *Id.* at 1245. Applying the state counterpart of Rule 9(b), the court held that this allegation was sufficient because "defendants obstructed J.P. Morgan from obtaining discovery concerning the details of the dividends paid during the period." *Id.*; *see also Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 502 (D.N.J. 2009) ("Because certain aspects of an alleged fraud may have been concealed by a defendant, courts apply Rule 9(b) 'with some flexibility.'").

The same principle applies here.  Yucaipa has strenuously resisted the Trustee's efforts to obtain discovery relevant to its fraudulent transfer claims.  The Trustee has pled all the details she can based on the limited information obtained. Under those circumstances, the Court should "apply 9(b) 'with some flexibility.'" *Ramirez*, 644 F. Supp. at 502.

### 2.   *The Trustee's Claim Satisfies Ordinary Rule 9(b) Standards*

In any case, the Trustee's actual fraudulent transfer claim is properly pled even under ordinary Rule 9(b) standards.  To satisfy Rule 9(b), a plaintiff "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  "Fraudulent intent, which may be

pled generally, has historically been shown using badges of fraud." *In re United Tax Grp., LLC*, No. 14-10486, 2018 WL 1135496, at *8 (Bankr. D. Del. Feb. 28, 2018).   The UFTA contains a non-exclusive list of eleven badges, including whether (1) the transfer was made to an insider; (2) the transfer was concealed; (3) the transfer comprised substantially all of the debtor's assets; (4) the transfer was made after the debtor had been sued; (5) the debtor received reasonably equivalent value in exchange for the transfer; and (6) the debtor was insolvent at the time of the transfer or rendered insolvent by it.   6 *Del. C.* § 1304(b).   "The presence or absence of any single badge of fraud is not conclusive." *In re PennySaver USA Publ'g, LLC*, 602 B.R. 256, 271 (Bankr. D. Del. 2019).

The Trustee's allegations satisfy that standard.  First, as to the "date, place, or time" requirement, the Trustee alleged those details for each of the more than 100 transfers Yucaipa made.   Compl. ¶¶ 131-138.   The Trustee alleged that Yucaipa made those transfers to avoid potentially hundreds of millions of dollars in judgments it faced in the Yucaipa Adversary Proceedings.  *Id.* ¶¶ 97-103, 140. Those transfers are also marked by several well-pled badges of fraud.

First, numerous transfers amounting to over $18 million were made to Yucaipa insiders.   6 *Del. C.* § 1304(b)(1); Compl. ¶¶ 104, 133(i)-(ii), 134(xvii), 137(xii)-(xiii), 138(xvii).   Those transfers benefited Yucaipa's founder and principal, Ron Burkle, at the Trustee's expense.  Compl. ¶ 104 & n.11.

Second, all the transfers were made while the Yucaipa Adversary Proceedings were pending, and after Yucaipa had suffered a series of adverse decisions, including critical rulings that it had breached the FLCA by attempting to usurp the Requisite Lender role and that the Third Amendment to the FLCA, including its capital contribution requirements, was valid and binding.  6 *Del. C.* § 1304(b)(4); Compl. ¶¶ 97-103 (identifying adverse rulings starting in August 2013); Compl. ¶¶ 131-138 (identifying transfers from October 2017 to May 2019).[17]  Yucaipa had not received a single substantive decision in its favor when it made any of the transfers at issue.  *Id.* ¶ 101.

Third, Yucaipa did not receive any, let alone reasonably equivalent, value for the transfers.  6 *Del. C.* § 1304(b)(8).  The transfers were pure distributions; none of the recipients provided any money or services in exchange.

Fourth, Yucaipa concealed the transfers from the Trustee.  6 *Del. C.* § 1304(b)(3).  The Trustee received no contemporaneous notice of any of the transfers.  And for years, Yucaipa has vigorously opposed the Trustee's efforts to obtain discovery about them.  Compl. ¶¶ 108-120.  Yucaipa only began to produce meaningful information after the Bankruptcy Court ordered it to do so.  *Id.* ¶ 120.

---

[17] Indeed, Judge Sontchi observed that a layperson could readily ascertain the damages stemming from Yucaipa's breach of its contribution commitments.  Feb. 4, 2021 Hr'g Tr. at 84:17-23, Yucaipa Adv. Pro., D.I. 818 ("[I]t's unclear to me why you would need an expert to calculate damages on this [breach of contract] claim.  Experts are only necessary . . . when they help the Court figure out something it can't figure out.  I know how to calculate damages.").

Fifth, the transfers rendered Yucaipa insolvent. 6 *Del. C.* §1304(b)(9). "[I]nsolvency is generally a factual determination not appropriate for resolution in a motion to dismiss." *In re SportCo Holdings, Inc.*, No. 19-11299, 2021 WL 4823513, at *15 n.147 (Bankr. D. Del. Oct. 14, 2021). A plaintiff can thus plead insolvency without providing specific financial information. *See id.* at *15 ("[A] close analysis of insolvency is not necessary at the motion to dismiss stage."); *In re Amcad Holdings, LLC*, 579 B.R. 33, 40 (Bankr. D. Del. 2017) (similar); *In re Green Field Energy Servs., Inc.,* No. 13-12783, 2015 WL 5146161, at *7 (Bankr. D. Del. Aug. 31, 2015) ("detailed valuation analysis" not necessary).

Sixth, the transfers comprised substantially all of Yucaipa's assets. 6 *Del. C.* §1304(b)(5). Yucaipa has admitted that it no longer has assets necessary to satisfy the Judgment. Compl. ¶2. Yucaipa thus appears to have succeeded in ridding itself of substantially all of its assets.

Seventh, Yucaipa's partnership agreements did not require or even permit Yucaipa to make the transfers. Those agreements permitted Yucaipa to distribute only "Available Assets" to its partners and required a good faith and reasonable reserve to be held for "the Partnership's expenses, liabilities, and other obligations (whether fixed or contingent)." Compl. ¶¶52-53, 105. Given the massive liabilities Yucaipa faced in the ongoing proceedings, Yucaipa's transfers did not meet that standard. The logical inference is that Yucaipa was attempting to leave

itself judgment-proof and run out the clock on any statute of limitations before the transfers could be discovered.

Those badges of fraud are more than sufficient to raise an inference of Yucaipa's fraudulent intent. *See Green Field*, 2015 WL 5146161, at *7 ("Four badges of fraud is certainly enough for an actual fraudulent transfer claim to survive a Rule 12(b)(6) motion."); *In re Appleseed's Intermediate Holdings, LLC*, 470 B.R. 289, 300 (D. Del. 2012) (same); *Charys*, 2010 WL 2774852, at *5 (same); *In re DBSI, Inc.*, 445 B.R. 344, 349 (Bankr. D. Del. 2011) (three badges sufficient).

The LP Defendants seriously challenge only two of those badges. LP Defs. Br. 23-24. As to concealment, they argue that the transfers could not have been concealed because the Trustee learned about them from public filings. But what matters is whether Yucaipa concealed the transfers at the time they were made. *See In re Vaso Active Pharms., Inc.*, No. 10-10855, 2012 WL 4793241, at *13 (Bankr. D. Del. Oct. 9, 2012) (examining concealment at time of transfers). The Trustee learned that transfers had been made only after the fact, from one investor's public reporting in late 2019. Motion for 2004 Examination, Del. Chapter 11, D.I. 4086 ¶¶ 1, 12 (July 31, 2020). That information disclosed nothing about the distributions to ***other*** Yucaipa investors or the timing of the distributions. Yucaipa belatedly disclosed that it had been regularly dissipating its assets only

after the Trustee confronted its counsel, and it steadfastly refused to disclose details prior to a court order by maintaining that the details were somehow the "secret sauce of the fund."  Compl. ¶¶ 1, 13, 118.

As to Yucaipa's insolvency, the Trustee has properly alleged that badge of fraud for the reasons above.  *See* pp. 40-43, *supra.*  In any event, insolvency is not a required element of an actual fraudulent transfer claim.  The Trustee alleges more than enough badges of fraud.[18]

## B. The Complaint Adequately Alleges Constructive Fraudulent Transfers

The Trustee's constructive fraudulent transfer claim, by contrast, is not subject to the heightened pleading requirements of Rule 9(b).  *See In re Glencoe Acquisition, Inc.*, No. 12-12071, 2015 WL 3777972, at *2 (Bankr. D. Del. June 16, 2015) ("Constructive fraudulent transfer claims are not evaluated ... under heightened pleading standard of [Rule] 9(b)."); *In re Centaur, LLC*, No. 10-10799, 2013 WL 4479074, at *3 (Bankr. D. Del. Aug. 19, 2013) (similar).  The Trustee need only generally allege that the debtor "[i]ntended to incur, or believed or reasonably should have believed that [it] would incur, debts beyond [its] ability to

---

[18] The LP Defendants' self-serving characterization of the documents Yucaipa produced is irrelevant.  LP Defs. Br. 24.  Those documents are not presently before the Court.  *See Resnik v. Woertz*, 774 F. Supp. 2d 614, 621 n.1 (D. Del. 2011) ("Generally, on a motion to dismiss pursuant to Rule 12(b)(6), a court may not consider material outside of the pleadings.").

pay as they became due," and that it received no reasonably equivalent value in exchange.  6 *Del. C.* § 1304(a)(2)(b).

It is undisputed that Yucaipa received no reasonably equivalent value in exchange for the distributions it made to investors.  And those transfers clearly left Yucaipa unable to satisfy the debts it reasonably should have foreseen from the pending Yucaipa Adversary Proceedings and the string of adverse decisions rendered.

Delaware cases recognize that a pending lawsuit can bear on whether a debtor "reasonably should have believed" it would be unable to pay debts as they came due.  In *Seiden v. Kaneko*, No. CV 9861-VCN, 2015 WL 7289338 (Del. Ch. Nov. 3, 2015), for example, the Court of Chancery refused to dismiss a fraudulent transfer claim where the "Defendant's transfer of his real property . . . shield[ed] [his] assets from a potential judgment arising from this litigation." *Id.* at *13.  The court held that it could "infer reasonably that [the debtor] had a 'reasonable belief' when transferring the Private Placement Proceeds that he would incur future debts such as a potential judgment in this action" that were beyond his ability to pay.  *Id.*

Similarly, in *In re Millennium Lab Holdings II, LLC*, No. 15-12284, 2019 WL 1005657 (Bankr. D. Del. Feb. 28, 2019), the trustee alleged that the defendants made transfers while they were "in a position to know, and did know, that [the debtor's] operations were the subject of investigations by the Department of

45

Justice" and that the debtor "had been sued under applicable qui tam statutes by several relators, and separately by a competitor alleging improper billing practices." *Id.* at *2. The defendants contested only the adequacy of consideration. But the court cited the allegation that the transaction left the company "unable to satisfy the claims asserted against it by the government and others and to pay the obligations incurred in the 2014 Transaction." *Id.* at *4.

This case is no different. Each of the four transfers occurred when Yucaipa at least "reasonably should have believed" that it would incur substantial debts in the Yucaipa Adversary Proceedings. Compl. ¶¶97-105, 144. By no later than March 2017, months before the first transfer, Yucaipa *knew* it had breached the FLCA by failing to make significant capital contributions. *Id.* ¶¶97-98. Yucaipa's crossclaims and counterclaims had been dismissed. *Id.* ¶99. So too its longshot RICO claims and several affirmative defenses in the Lender Action. *Id.* ¶¶99-100. Indeed, Yucaipa had not received a single substantive decision in its favor in either the Yucaipa Adversary Proceedings or the Allied Adversary Proceeding. *Id.* ¶101.

The liability Yucaipa faced in those proceedings dwarfed whatever assets it retained following the transfers. The Yucaipa Adversary Proceedings sought hundreds of millions of dollars in damages. Compl. ¶¶4, 96, 103. Yucaipa faced liability not only for breaching the FLCA, but also for earlier fraudulent transfers, breaches of fiduciary duty, and equitable subordination. *Id.* ¶¶96, 127. Despite

those looming debts, Yucaipa distributed hundreds of millions of dollars to its partners. *Id.* ¶¶131-138. Yucaipa has since admitted that it now lacks the assets necessary to satisfy the Judgment. *Id.* ¶2.

Yucaipa's struggles were not limited to those proceedings themselves. Yucaipa was also struggling to secure insurance coverage for those proceedings and related actions. Compl. ¶102. Those struggles put Yucaipa at risk for both the massive expenses of litigating the cases — which "far exceeded" $20 million even as of February 2017 — and the hundreds of millions of dollars in damages it faced. *Id.* ¶¶102-103.

In short, long before Yucaipa made any of the transfers, it knew or reasonably should have believed that it faced substantial liability from the proceedings. Yucaipa's transfers left it unable to pay that foreseeable liability. The Trustee's constructive fraudulent conveyance claim should proceed.

### C. The 2017 Distribution Claims Are Not Time-Barred

Defendants argue that the Trustee's claims for the earliest fraudulent transfers — those from October 2017 — are time-barred. LP Defs. Br. 33; Yucaipa Br. 29; City Defs. Br. 21. But the Trustee filed its Complaint on October 6, 2021, within the four-year limitations period in Delaware's Uniform Fraudulent Transfer Act. 6 *Del. C.* §17-607(c); Compl. ¶131. Defendants nonetheless

contend that the ***three-year*** deadline in the Revised Uniform Limited Partnership Act governs.  6 *Del. C.* § 17-607(c).  That argument misreads the statute.

When interpreting a statute, "[w]ords and phrases shall be read with their context."  1 *Del. C.* § 303.  "[E]ach section of [a statute] should be read in light of all others in the enactment."  *Del. Bay Surgical Servs., P.C. v. Swier*, 900 A.2d 646, 652 (Del. 2006).  Here, Section 17-607(c) provides that "a limited partner who receives a distribution from a limited partnership shall have no liability under this chapter or other applicable law for the amount of the distribution after the expiration of 3 years from the date of the distribution."  6 *Del. C.* § 17-607(c).  The provision's context makes clear that the provision concerns only claims involving partners and the partnership, not third parties.  Subsection (a) defines when a limited partnership's distribution to partners is improper.  Subsection (b) explains when a limited partner will be liable "to the limited partnership" for the distribution.  Keeping with that context, subsection (c) imposes a three-year deadline on a limited partner's liability ***to the partnership*** for a distribution.

That construction finds further support in how courts interpret the analogous provision in Delaware's Limited Liability Company Act ("LLC Act"), 6 *Del. C.* § 18-607(c).  Section 18-607 of the LLC Act specifies when an LLC's distribution to members is improper.  In light of that context, courts have interpreted the three-year limitations period in Section 18-607(c) to apply only to claims ***by the LLC***,

48

not third parties.  *See In re Bos. Generating LLC*, 617 B.R. 442, 467 (S.D.N.Y. 2020) (provision "modifies the liability of LLC members *to the LLC*"); *A Commc'ns Co. v. Bonutti*, 55 F. Supp. 3d 1119, 1126-27 (S.D. Ill. 2014) (provision does not "address all possible causes of action against a member of the limited liability company"); *Lyman Com. Sols., Inc. v. Lung*, No. 12-cv-4398, 2015 WL 1808693, at *5-6 (S.D.N.Y. Apr. 20, 2015) (interpreting similar New York provision not to apply to third-party claims); *cf. Pepsi-Cola Bottling Co. of Salisbury, Md. v. Handy*, No. 1973-S, 2000 WL 364199, at *5 (Del. Ch. Mar. 15, 2000) (provision applies only to "corporate cause[s] of action").

Section 17-607 of Revised Uniform Limited Partnership Act mirrors section 18-607 of the LLC Act.  The two provisions should therefore be interpreted consistently.  *See Deane v. Maginn*, No. 17-cv-346, 2022 WL 624415, at *6 (Del. Ch. Mar. 2, 2022) (courts interpret LLC Act by "looking to 'cases interpreting similar Delaware statutes concerning corporations and partnerships'").  Section 17-607(c) should therefore be construed not to apply to claims by third parties.

### D.    The Declaratory Judgment Claim Is Not Time-Barred

Count III seeks a declaration that Yucaipa's General Partner is jointly and severally liable for the Judgment and any subsequent judgments in the Adversary Proceeding.  Yucaipa argues that this claim is time-barred because it accrued when Yucaipa originally made the fraudulent transfers.  Yucaipa Br. 24-25.  That is

incorrect.   The claim did not accrue until the Bankruptcy Court entered the Judgment that is the basis for the claim.

"Delaware is an 'occurrence rule' jurisdiction, meaning a cause of action accrues 'at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action.'"   *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732 (Del. 2020).   The "wrongful act" that forms the basis for the declaratory judgment claim is the General Partner's refusal to honor its statutory responsibility for Yucaipa's liability on the Judgment.   That act occurred only once the Judgment was entered, not when the claims giving rise to the Judgment accrued.

It is blackletter law that a general partner is liable for the debts of a limited partnership.   6 *Del. C.* § 17-403(b); 6 *Del. C.* § 15-306(a).   It is irrelevant whether the general partner was involved in the conduct giving rise to the partnership's liability.   *See, e.g.*, *Sandvik AB v. Advent Int'l Corp.*, 83 F. Supp. 2d 442, 448 (D. Del. 1999) (permitting claim for breach of contract against general partner that was not a signatory to the contract), *aff'd*, 220 F.3d 99 (3d Cir. 2000).   Count III is essentially a claim to enforce the Judgment.   That claim did not arise until the Judgment was entered.

*Kingsbury v. Westlake Management Co.*, 674 F. App'x 792 (10th Cir. 2016), is squarely on point.   In that case, the plaintiff successfully sued a limited partnership nursing home for negligence.   *Id.* at 794.   The plaintiff then brought a

separate action to hold the general partner liable for the judgment. *Id.* The defendant argued that the statute of limitations on the underlying negligence claim had expired. *Id.* The Tenth Circuit rejected that argument, concluding that the plaintiff's claim seeking to hold the general partner liable under applicable partnership law was distinct from the underlying negligence claims and did not accrue until the judgment was entered. *Id.* at 795-96.[19]

Other courts have reached similar conclusion. *See Am. Star Energy & Mins. Corp. v. Stowers*, 457 S.W.3d 427 (Tex. 2015) (judgment creditor's cause of action against partners to satisfy judgment against partnership accrued only when final judgment was entered against partnership); *Evanston Ins. Co. v. Dillard Dep't Stores, Inc.*, 602 F.3d 610, 617 (5th Cir. 2010) (same); *Am. Imaging of Jersey City, Inc. v. Baldonado*, No. A-0788-11T2, 2013 WL 3762638, at *6 (N.J. Super. Ct. App. Div. July 19, 2013) (similar).

Like the plaintiffs' claims in those cases, the Trustee's claim against Yucaipa's General Partner is essentially a judgment enforcement claim under

---

[19] The Tenth Circuit explained why two of the Yucaipa's primary authorities are inapposite. *Valley National Bank of Arizona v. A.E. Rouse & Co.*, 121 F.3d 1332 (9th Cir. 1997), addressed a dissimilar statute and did "not speak to the issue of when the statute of limitations to collect a partnership debt against a partner commences." *Kingsbury*, 674 F. App'x at 797. Similarly, *Sunseri v. Proctor*, 487 F. Supp. 2d 905 (E.D. Mich. 2007), did not interpret any comparable partnership law. *Kingsbury*, 674 F. App'x at 797. Delaware law, by contrast, is materially identical to the Oklahoma law *Kingsbury* relied on. *Compare* Okla. Stat. tit. 54, § 1-306(a) *with* 6 *Del. C.* § 15-306(a) *and* Okla. Stat. tit. 54, § 1-307(b)-(d) *with* 6 *Del. C.* § 15-307(b)-(d).

Delaware partnership law.  It is not a claim for the underlying conduct that led to the Judgment.  The Trustee's claim therefore did not accrue until the Bankruptcy Court entered the Judgment.  Because this action was filed mere months later, the claim is timely.

## IV.   THE DEFENDANT-SPECIFIC ARGUMENTS LACK MERIT

Certain subgroups of Defendants challenge the Trustee's claims against them on a variety of grounds.  Those arguments all fail.

### A.   The Foreign LPs Are Subject to Personal Jurisdiction

The LPs based in foreign countries argue that they are not subject to personal jurisdiction because, in their view, they lack sufficient contacts with the United States related to the Trustee's claims.  LP Defs. Br. 35-45.  But the Foreign LPs purposefully availed themselves of U.S. law in connection with receiving fraudulent transfers from the U.S.-based partnership that they chose to join.  That is sufficient to subject them to personal jurisdiction.

In a case like this where nationwide service of process is permitted, the Court evaluates personal jurisdiction under the Fifth Amendment's Due Process Clause.  *See Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 122 (3d Cir. 2020).  First, the Court examines whether the defendants have sufficient contacts with the United States as a whole.  *Id*.  Second, the Court determines whether its exercise of

jurisdiction would comport with "traditional notions of fair play and substantial justice." *Id*. Both requirements are met here.

### 1.   *The Foreign LPs Have Sufficient Minimum Contacts*

A defendant's contacts with the forum are sufficient where the defendant "purposefully avail[ed] itself of the privilege of conducting activities" in the forum, such that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A defendant can meet that standard by "entering a contractual relationship centered" in the forum. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021). The plaintiff's claim must "arise out of or relate to the defendant's contacts." *Id.* But the plaintiff need not prove any causal relationship. *Id.* at 1026.

Applying those principles, courts have repeatedly held that an investor in a partnership in the forum may be subject to jurisdiction for claims arising out of that relationship. In *In re Dewey & LeBouef LLP*, 522 B.R. 464 (Bankr. S.D.N.Y. 2014), for example, the defendant was a partner of a New York limited liability partnership but worked solely in Germany for European clients. *Id.* at 467. The court nevertheless found personal jurisdiction over him in an action to claw back fraudulent transfers. The partner, the court explained, "agreed to become a partner in the New York LLP"; "submitted to the partnership's governing document" which was governed by New York law; and was compensated with funds sent from

New York.  *Id.* at 475-76.  That was enough to establish personal jurisdiction.  *Id.* at 476; *see also Morgan Guar. Tr. Co. of N.Y. v. Blacksburg Assocs., L.P.*, No. 90-cv-6076, 1990 WL 209297, at *2 (E.D. Pa. 1990) (denying motion to dismiss where partners expected "profit from the activities of [a] limited partnership" even if they "did not personally conduct any partnership activities" in the forum); *Schwegmann Bank & Tr. Co. of Jefferson v. Simmons*, 880 F.2d 838, 839-40 (5th Cir. 1989) (finding jurisdiction over out-of-state limited partner); *In re Bernard L. Madoff Inv. Sec. LLC*, 525 B.R. 871, 883-84 (Bankr. S.D.N.Y. 2015) (similar).

This case is no different.  The Foreign LPs chose to become partners in a partnership organized under Delaware law.  Etkin Decl., D.I. 24-1 & 24-2.  The partnership agreement contained a Delaware choice-of-law provision.  Etkin Decl., D.I. 24-1 at ¶16.7; D.I. 24-2 at ¶16.7.  In this very proceeding, the Foreign LPs are attempting to avail themselves of the benefits of that Delaware partnership by invoking Delaware's three-year limitations period.  LP Defs. Br. 33-35.

The Foreign LPs, moreover, received the fraudulent transfers at issue from a U.S.-based entity.  In *Gambone v. Lite Rock Drywall*, 288 F. App'x 9 (3d Cir. 2008), the Third Circuit concluded that a foreign defendant was subject to personal jurisdiction because he received a fraudulent transfer from a U.S. entity.  *Id.* at 14. Other cases have reached the same result.  *See, e.g.*, *In re Akbari-Shahmirzadi*, No. 11-cv-15351, 2016 WL 6783245, at *3 (Bankr. D.N.M. Nov. 14, 2016)

(concluding that receipt of fraudulent transfer was sufficient to support personal jurisdiction "even when the transfer is the only contact between the debtor and the foreign transferee").

The Foreign LPs cite *Shaffer v. Heitner*, 433 U.S. 186, 216 (1977), for the point that merely "buying securities in a corporation formed in Delaware" is not sufficient.  LP Defs. Br. 40-41.  But the Foreign LPs did far more than that here. They agreed to become partners in a Delaware partnership subject to a Delaware choice-of-law clause, intentionally received fraudulent transfers from that Delaware partnership, and then invoked the benefits of Delaware law in these proceedings.  Those contacts are sufficient to support jurisdiction.[20]

### 2. *Exercising Jurisdiction Would Comport with Traditional Notions of Fair Play and Substantial Justice*

Once the plaintiff has shown sufficient minimum contacts, the burden shifts to the defendant to "present a compelling case" that exercising jurisdiction would be unreasonable.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 324 (3d Cir. 2007).  It is "rare" that a defendant can make that showing.  *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998).  Courts consider the

---

[20] The Foreign LPs' remaining cases are not binding, and many are distinguishable. *See, e.g.*, *In re AstroPower Liquidating Tr.*, No. 05-50867, 2006 WL 2850110 (Bankr. D. Del. Oct. 2, 2006) (defendant was not investor in transferor); *Deutsche Bank AG v. Devon Park Bioventures, L.P.*, C.A. No. 2017-0822-SG, 2021 WL 2711472, at *7-8 (Del. Ch. June 30, 2021) (jurisdiction improper under state long-arm statute so discussion of due process standard was dictum).

burden on the defendant, the forum's interest in adjudicating the dispute, and the interests of other jurisdictions.  *O'Connor*, 496 F.3d at 324.

The Foreign LPs show no significant burdens from having to litigate in this forum.   Technological advances such as videoconferencing have significantly reduced whatever burdens might once have arisen from cross-border litigation. *See, e.g.*, *Madoff*, 525 B.R. at 886; *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 330 (D. Del. 2013).

The Trustee's and United States' interests in resolving this fraudulent transfer dispute in a single proceeding far outweigh any burden on the Foreign LPs.  In *In re DBSI, Inc.*, 467 B.R. 309 (Bankr. D. Del. 2012), for example, the court observed that "[r]equiring the Trustee to litigate his fraudulent transfer cases in numerous other jurisdictions would run counter to the bankruptcy policy" of resolving all disputes in one forum.  *Id.* at 316.  Piecemeal litigation would also waste resources.  *Id.*  This case is no different.

Finally, the international judicial system's interest in efficient resolution of disputes also favors jurisdiction.  "[R]esolving all interrelated claims against all Defendants in the same forum promotes judicial economy."  *In re UD Dissolution Corp.*, 629 B.R. 11, 28 (Bankr. D. Del. 2012).  The Foreign LPs assert that "[t]he foreign nations involved here would certainly disfavor" the Trustee's recovery of

fraudulently transferred assets.  LP Defs. Br. 44.  But they point to no foreign law that would preclude or even disfavor recovery in the circumstances alleged here.

The Foreign LPs thus fail to identify any reason, much less a "compelling" one, why exercising jurisdiction would be unfair here.  *O'Connor*, 496 F.3d at 324.

## B.    The State Defendants Are Not Immune from Suit

The so-called "State" Defendants — CalPERS and the New Mexico Funds — argue that they are immune from suit under the Eleventh Amendment.  LP Defs. Br. 45-51.  But sovereign immunity does not apply to a bankruptcy proceeding like this one seeking to recover fraudulently transferred assets.   And the State Defendants have failed to establish that they are arms of the State in any event.

### 1.    *Sovereign Immunity Does Not Apply to This Bankruptcy Proceeding*

The State Defendants' sovereign immunity defense is foreclosed by precedent that they fail to acknowledge, much less distinguish.  Supreme Court and Third Circuit precedent make clear that sovereign immunity does not apply to a bankruptcy proceeding like this one.

In *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006), the Supreme Court held that, "[i]n ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts."  *Id.* at 378 (citing U.S. Const. art. I, § 8, cl.

4).  In *In re Venoco*, 998 F.3d 94 (3d Cir. 2021), the Third Circuit applied *Katz* to a liquidation trustee's adversary proceeding against California state entities to recover for an unlawful taking of the debtors' property.  The Third Circuit held that *Katz* abrogated any sovereign immunity the defendants otherwise had.  *Id.* at 99.

The Third Circuit explained that a proceeding need not "be technically *in rem*" for *Katz*'s abrogation rule to apply.  *Venoco*, 998 F.3d at 104.  The proceeding need only "further a bankruptcy court's *in rem* jurisdiction."  *Id.*  The Third Circuit held that sovereign immunity would not apply where a proceeding (1) "decides and affects interests in the res, the property of the debtor and its estate"; (2) has a "broader effect on the equitable distribution of the debtor's property"; or (3) concerns a discharge order.  *Id.* at 104-05.  The court specifically identified "fraudulent transfer actions" as one example.  *Id.* at 105; *see also In re DBSI, Inc.*, 463 B.R. 709, 710-11 (Bankr. D. Del. 2012) (rejecting sovereign immunity defense to fraudulent transfer action); *In re Phila. Ent. & Dev. Partners, L.P.*, 611 B.R. 51, 65-68 (Bankr. E.D. Pa. 2019) (same), *aff'd*, 860 F. App'x 25 (3d Cir. 2021).

This Adversary Proceeding falls squarely within those categories.  First, the proceeding "decides and affects interests in . . . the property of the debtor and its estate."  *Venoco*, 998 F.3d at 104.  The Trustee is the "representative of the Debtors' Estates" in prosecuting certain "claims of the Debtors' Estates."  Plan at

7, 9, 22; *see* Compl. ¶17.  The Trustee recovered the Judgment against Yucaipa on contract and fraudulent transfer claims after enduring years of Yucaipa's scorched-earth litigation and delay tactics.  Judgment ¶¶1-2; Compl. ¶¶108-120.  Yucaipa, however, did not pay.  Consequently, the Trustee was forced to bring this proceeding to recover the proceeds Yucaipa fraudulently transferred to its investors — funds that should have been part of the Debtors' estates but for Yucaipa's misconduct.  The Trustee's claims thus directly "affect[] interests in . . . the property of the debtor and its estate." *Venoco*, 998 F.3d at 104.

This proceeding also falls within *Venoco*'s second category:  It has a "broader effect on the equitable distribution of the debtor's property."  998 F.3d at 105.  The Litigation Trust is designed to recover assets that, but for Yucaipa's fraudulent transfers, would have been part of the Debtors' estates and been distributed to creditors pursuant to a Court-approved Litigation Proceeds Waterfall. Plan at 10 (definition of "Litigation Trust Interests" and "Litigation Trust Beneficiaries").  The Trustee's efforts to claw back and recover those fraudulently transferred assets are essential to ensure equitable distribution of estate property.

That this Adversary Proceeding post-dates confirmation of the Plan is irrelevant.  In *Venoco*, the defendants similarly argued that *Katz* was inapplicable because "the Adversary Proceeding relates only to claims after the Plan was confirmed and became effective, when the Debtors' estate ceased to exist, so there

[was] no res for the bankruptcy court's jurisdiction to attach." 998 F.3d at 107. The Third Circuit rejected that argument. *Id.* at 107-08.

Nor does it matter that the Trustee asserts only state-law claims. *Venoco* expressly rejected the notion that "*Katz* only applies to claims 'created by the Bankruptcy Code.'" 998 F.3d at 103 n.8. "[T]he fact that various state laws are implicated is no ground for constitutional concern." *Id.*

*Venoco* thus squarely forecloses the State Defendants' immunity defense.

### 2.     *The State Defendants Do Not Show They Are Arms of the State*

Even apart from *Katz*, the State Defendants have not shown they are entitled to sovereign immunity. To claim immunity, a defendant must show it is an "arm" of the State. *Patterson v. Pa. Liquor Control Bd.*, 915 F.3d 945, 950 (3d Cir. 2019). Courts consider three factors: "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Id.* "[T]he funding factor break[s] the tie in a close case." *Bradley v. W. Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 655 (3d Cir. 2018). The party asserting immunity "bears the burden of proving its applicability." *Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995); *see, e.g.*, *Blake v. Kline*, 612 F.2d 718, 724 (3d Cir. 1979) (vacating finding that Pennsylvania state employee retirement fund was an arm of the State).

_Funding._  For the first factor, the State Defendants must show that "the money that would pay the judgment would come from the state." _Patterson_, 915 F.3d at 950.  In _Patterson_, for example, this factor weighed against immunity because the entity could "satisfy a judgment with its own source of revenue." _Id._ at 952.  Likewise, in _Febres v. Camden Board of Education_, 445 F.3d 227 (3d Cir. 2006), this factor weighed against immunity because the entity "ha[d] not established that it cannot satisfy a judgment with its own monies," even though up to 90% of its funding came from the State.  _Id._ at 232, 234; _see also Maliandi v. Montclair State Univ._, 845 F.3d 77, 88 (3d Cir. 2016) ("[W]e have regularly determined that alternative sources of funding — even where only a small part of the entity's overall budget — counsel against immunity."); _Cooper v. Se. Pa. Transp. Auth._, 548 F.3d 296, 306 (3d Cir. 2008) (similar).

None of the State Defendants has shown that a judgment in this case would necessarily be paid out of state funds.  Nor could they.  CalPERS, for example, reports vast sources of non-state revenue, including investment income and member contributions.  _See_ CalPERS, _Required Employer Contributions_ (updated July 13, 2022) (Zaiger Decl. Ex. 5) ("CalPERS retirement benefits are funded through contributions paid by contracting employers, members, and earnings from

CalPERS investments.").[21]   CalPERS has more than $477 **billion** in investments and earned a 21.3% return in 2021.  CalPERS, *Investments & Pension Funding: Facts at a Glance for Fiscal Year 2020-21* (Zaiger Decl. Ex. 6).  CalPERS could easily satisfy a judgment in this case without resort to state funds.

CalPERS urges that the State of California is obligated to cover any "shortfall" in pension benefits.  LP Defs. Br. 49.  That is not enough.  The remote theoretical possibility that the State would have to step in as a funder of last resort does not prove there is any realistic likelihood that **this** judgment would trigger a "shortfall."  In *Blake*, the Third Circuit vacated a finding that Pennsylvania's Public School Employees' Retirement Board was an arm of the State because the retirement fund had failed to show it would have to resort to state funds — as opposed to investment income or employee contributions — to satisfy a judgment.  612 F.2d at 723-24, 728.  Given CalPERS's even more enormous financial resources, the same reasoning applies here.

The New Mexico Funds, meanwhile, make only the conclusory assertion that "there can be no doubt that any judgments against the New Mexico funds

---

[21] Because the State Defendants have asserted sovereign immunity based on authorities outside the pleadings, this Court is free to consider other evidence as well, including the State Defendants' own public representations.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 388 (D. Del. 2018) (court evaluating factual challenge to jurisdiction is not limited to pleadings and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977))).

would be paid by the State of New Mexico." LP Defs. Br. 49. They do not explain (1) how the funds receive money; or (2) whether any investment income or member contributions would be sufficient to satisfy a judgment in this case. *See, e.g.*, N.M. State Inv. Council, *Investment Holdings Report* (May 31, 2022) (Zaiger Decl. Ex. 7) (describing investments); N.M. State Inv. Council, *60 Years Anniversary Report 2018*, at 25 (2018) (Zaiger Decl. Ex. 8) (describing substantial fixed income portfolio, which "produce[s] income" and "provide[s] liquidity in times of need"). Like CalPERS, the New Mexico Funds fail to carry their burden of showing that any judgment would be paid from state funds.

Status Under State Law.  For the second factor, courts consider "how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation." *Cooper*, 548 F.3d at 306. Courts also consider whether the entity may exercise the power of eminent domain and enter into contracts and make purchases on its own behalf. *Christy*, 54 F.3d at 1148. The State Defendants do not meaningfully address those issues and thus fail to carry their burden on this factor too.  *See Kirkland v. DiLeo*, 581 F. App'x 111, 117 (3d Cir. 2014) (defendant's failure to address factor "tend[ed] to suggest that the [defendant] [was] not an arm of the State"); *Trapp v. New Jersey*, No. 17-cv-10709, 2018 WL 4489680, at *4-5 (D.N.J. Sept. 19, 2018) (same).

CalPERS notes that it was created by statute and is listed as a unit of the California government under California law.  LP Defs. Br. 50.  But statutory labels "offer[] little guidance."  *Maliandi*, 845 F.3d at 91.  CalPERS acknowledges that it may sue and be sued in its own name and hold property in its own name, facts that weigh against immunity.  *Id.*  CalPERS does not address any of the remaining considerations.  At best, this factor is a wash.

The same goes for the New Mexico funds.  They do not dispute that they can sue and be sued or hold property in their own names.  Instead, they argue only that they were created by New Mexico law and are controlled by state officials.  The mere fact that an entity was created by state law does not make it an arm of the State.  *See Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 662, 664 (3d Cir. 1989) (entity created by state law not entitled to immunity).  And control by state officials goes to the third, not the second, factor.  *Febres*, 445 F.3d at 230-31 (government control relevant to third factor).

Degree of Autonomy.  The final factor focuses on state oversight and the entity's governance structure.  *Maliandi*, 845 F.3d at 96.  That factor cuts against immunity too.

CalPERS argues that it serves a government function.  LP Defs. Br. 51.  But it does not explain why that function is relevant to ***autonomy***, and it does not discuss state oversight at all.  *Id.*  In fact, CalPERS enjoys significant

independence.  Management and control of its retirement system "is vested in the Board."  Cal. Gov't Code § 20120.  The Board has "plenary authority and fiduciary responsibility for investment of moneys and administration of the [retirement] system" and "sole and exclusive fiduciary responsibility over the assets of the . . . retirement system."  Cal. Const. art. XVI, § 17.  Board members "shall be entitled to hold [their] office until the end of [their] term."  Cal. Gov't Code § 20095.  And Board member discipline is at "the discretion of the Board" itself.  CalPERS Bd. Admin., *Governance Policy* ¶ V(B)(2) (rev. Mar. 2021) (Zaiger Decl. Ex. 9). CalPERS has much greater autonomy than entities held ***not*** to be arms of the State. *See, e.g.*, *Febres*, 445 F.3d at 231 (entity not arm of the State even though governor had veto power); *Fitchik*, 873 F.2d at 663-64 (same).

The New Mexico Funds likewise say almost nothing about their autonomy. LP Defs. Br. 51.  They too have significant independence.   A majority of the members of their governing council are removable only for cause.  N.M. Stat. § 6-8-3(C); *id.* § 6-8-2(A); *cf. Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2191-92 (2020) (at-will removal authority essential for supervision).  The council's investment authority is largely unfettered beyond the broad standards of the Uniform Prudent Investor Act and other state guidelines.  N.M. Stat. §§ 45-7-601 *et seq*.; N.M. Stat. §§ 6-8-7, 6-8-10.  The New Mexico Funds thus likewise fail to show that the autonomy factor weighs in favor of immunity.

\*   \*   \*   \*   \*

Both CalPERS and the New Mexico Funds fail to carry their burden to show they are arms of the State entitled to sovereign immunity.  The Court can reject their immunity defense for that reason alone.  At a minimum, the Trustee should be permitted to take discovery regarding the factors above.  *See, e.g.*, *Blake*, 612 F.2d at 726 (holding that the "district court should have permitted discovery and held a hearing before ruling on [immunity]"); *Rovinsky v. Choctaw Mfg. & Dev. Corp.*, No. 09-cv-324, 2009 WL 3763989, at \*5 (D.N.J. Nov. 10, 2009) (denying motion to dismiss without prejudice to permit discovery).  This issue cannot be resolved on the pleadings.

## C.    The NYC Funds Were Not Entitled to Presuit Notice

The NYC Funds contend that this Court lacks jurisdiction over the claims against them because the Trustee failed to provide presuit notice under New York General Municipal Law §§ 50-e, 50-i(1) and New York City Administrative Code § 7-201(a).  LP Defs. Br. 51-56.  Those presuit notice provisions do not apply here because the NYC Funds were acting in a proprietary rather than governmental capacity when managing their investment portfolios.  And the provisions cannot be enforced against the Trustee's fraudulent transfer claims in any event.

66

### 1.   *This Suit Concerns a Proprietary Function*

New York's presuit notice requirements do not apply where a municipality "functions in a proprietary capacity." *Dick v. Town of Wappinger*, 63 A.D.3d 661, 662 (N.Y. App. Div. 2009); *see also French v. Long Island Child.'s Museum*, 163 A.D.3d 778, 778 (N.Y. App. Div. 2018) ("[P]rior written notice was not required because the County . . . was acting in a proprietary capacity."); *Kadlecik v. Village of Endicott*, 174 A.D.2d 923, 924 (N.Y. App. Div. 1991); *Torres v. City of New York*, No. 09-cv-9357, 2017 WL 2191601, at *2 (S.D.N.Y. May 17, 2017).  Where a municipality acts as a landlord, for example, "it functions in a proprietary capacity" and presuit notice is not required.  *Dick*, 63 A.D. at 662.

The functions here are proprietary rather than governmental.  Governmental functions are those "undertaken for the protection and safety of the public pursuant to the general police powers."  *Sebastian v. State*, 720 N.E.2d 878, 879 (N.Y. 1999).   Proprietary functions, by contrast, are "activities [that] essentially substitute for or supplement 'traditionally private enterprises.'"  *Id.* at 880; *see, e.g.*, *Turturro v. City of New York*, 68 N.E.3d 693, 700-01 (N.Y. 2016) (road design a proprietary function); *Schrempf v. State*, 487 N.E.2d 883, 886 (N.Y. 1985) (provision of "medical and psychiatric care" a proprietary function).

The Trustee's fraudulent transfer claims concern the NYC Funds' receipt of partnership distributions in the course of their investment activities on behalf of

pension funds.  Those activities are proprietary twice over.  For one thing, the operation of a pension fund is itself a proprietary function.  The NYC Funds are not engaging in any sovereign or regulatory function; they are administering employee benefits just like a private plan administrator might do.  But beyond that, this suit concerns the NYC Funds' ***investment activities*** on behalf of their funds.  The NYC Funds' receipt of disputed distributions from one of the investments in their portfolio is a quintessentially proprietary function.

In *Blake*, the Third Circuit held that Pennsylvania's state teachers pension fund performed a proprietary function.  612 F.2d at 724.  The court explained that the fund "appears to function as a private life insurance company, collecting and investing money, and paying pensions and death benefits, rather than as a government entity."  *Id.*; *see also Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614-17 (1992) (holding that a foreign government's issuance of debt securities was a commercial rather than sovereign function).  The NYC Funds are no different.  This dispute arises out of their investment activities in managing municipal pension systems and their receipt of disputed profit distributions from one of those investments.  Those activities are plainly proprietary.[22]

---

[22] That the NYC Funds may serve public goals in some sense is no answer.  Safe road design and medical and psychiatric care doubtless serve important public policy goals too, but those are also proprietary rather than governmental functions nonetheless.  *See Turturro*, 68 N.E.3d at 701; *Schrempf*, 487 N.E.2d at 886.

### 2.   *The Presuit Notice Requirement Does Not Apply to This Bankruptcy Proceeding*

Even if New York's presuit notice requirements purported to apply to the Trustee's claims, they could not be enforced in this proceeding. Those requirements are attributes of state sovereign immunity that are abrogated in a bankruptcy proceeding like this one.

The presuit notice requirements in Sections 50-i and 7-201 are attributes of state sovereign immunity. They impose conditions on the waiver of that immunity. *See Katz v. City of New York*, 661 N.E.2d 1374, 1376 (N.Y. 1995) (Section 7-201 is a "limited waiver of sovereign immunity"); *Shaw v. Long Island R.R. Co.*, No. 16-cv-6972, 2017 WL 5634122, at *4 (E.D.N.Y. Nov. 22. 2017) (Section 50-i "governed whether the plaintiff had complied with the requirements necessary for the waiver of sovereign immunity"). For that reason, New York treats the provisions as jurisdictional requirements. *See* LP Defs. Br. 52; *Rabadi v. City of Yonkers*, No. 21-cv-1258, 2022 WL 889734, at *8 (S.D.N.Y. Mar. 25, 2022) (failure to comply is "a jurisdictional rather than a procedural defect").

Precisely because those provisions derive from state sovereign immunity, they are not enforceable in a case like this that invokes the Court's bankruptcy jurisdiction. As explained above, *see* pp. 57-60, *supra*, the Supreme Court held in *Katz* that the Bankruptcy Clause abrogates state immunity under the Eleventh Amendment. 546 U.S. at 378. In *Venoco*, the Third Circuit extended *Katz's*

reasoning to state-law immunities as well.  The court held that "allowing [state defendants] to assert a state law immunity-from-suit defense separate from Eleventh Amendment immunity would make the decision in *Katz* a dead letter." 998 F.3d at 110.  "If that argument prevail[ed], state legislation [could] easily end-run the deemed waiver of state sovereign immunity effected by the Bankruptcy Clause and recognized in *Katz*."  *Id.*

For the reasons explained above, the Trustee's fraudulent transfer claims properly abrogate state immunity under *Katz* and *Venoco*.  They therefore abrogate New York's presuit notice requirements too.

### D.    The ERISA Defendants' Anti-Alienation Defense Is Meritless

The ERISA Defendants assert that the Trustee's fraudulent transfer claims are barred by ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1).  LP Defs. Br. 56-62.  That provision does not apply.  It protects benefit payments to plan beneficiaries.  It does not allow ERISA plans to retain illegitimate gains from their investment activities.

ERISA's principal goal is to "protect plan ***participants and beneficiaries***." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 324 (2016) (emphasis added).  The statute seeks "to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures."  *Id.* at 320-21.  To advance that goal, ERISA contains an anti-alienation provision that states

that "[e]ach [ERISA] pension plan shall provide that ***benefits provided under the***

***plan*** may not be assigned or alienated." 29 U.S.C. § 1056(d)(1) (emphasis added).

"[A]s indicated by the legislative history, the anti-alienation provision is intended

to 'protect ***plan beneficiaries*** by ensuring that plan assets are used only for

payment of benefits.'" *Coar v. Kazimir*, 990 F.2d 1413, 1420 (3d Cir. 1993)

(emphasis added). The provision protects beneficiaries from their "own financial

improvidence in dealing with third parties." *Am. Tel. & Tel. Co. v. Merry*, 592

F.2d 118, 124 (2d Cir. 1979).

The statute's implementing regulations confirm that focus. Treasury

Regulation § 1.401(a) provides:

> [T]he terms "assignment" and "alienation" include
>
> (i) Any arrangement providing ***for the payment to the employer of
> plan benefits*** which otherwise would be due the participant under the
> plan, and
>
> (ii) Any direct or indirect arrangement (whether revocable or
> irrevocable) whereby ***a party acquires from a participant or
> beneficiary*** a right or interest enforceable against the plan in, or to, all
> or any part of a plan benefit payment which is, or may become,
> payable to the participant or beneficiary.

26 C.F.R. § 1.401(a)-13(c)(1) (emphasis added).

Cases applying the anti-alienation provision thus routinely distinguish

between ***benefits to beneficiaries***, which may be subject to the anti-alienation

provision, and ***assets of the plan***, which are not. The Second Circuit, for example,

has squarely held that "undistributed funds held in trust . . . do not constitute

'benefits' within the meaning of the anti-alienation provisions" and that the "anti-alienation rule *does not prevent pension plan assets from being used to satisfy a judicial judgment that has been entered against the plan itself*." *Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan*, 666 F.3d 68, 73 (2d Cir. 2011) (emphasis added); *see also Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 826 (1988) (ERISA "clearly contemplates the enforcement of money judgments against a plan"); *O'Toole v. Arlington Tr. Co.*, 681 F.2d 94, 96 (1st Cir. 1982) (anti-alienation provision is "directed at 'benefits provided,' not the corpus of the fund").[23]

Consistent with those principles, courts have allowed fraudulent transfer claims against ERISA plans where the claims relate to the plans' investment activities rather than attempts by plan beneficiaries to alienate or assign their benefits.  In *Wagner v. Galbreth*, 500 B.R. 42 (D.N.M. 2013), the court allowed a fraudulent transfer claim against an ERISA plan that invested in a Ponzi scheme. *Id.* at 45.  The anti-alienation provision, it explained, restricts only "alienation of benefits that become payable to a plan participant or beneficiary," not parties' rights "to recover fraudulent transfers from the corpus of the . . . plans." *Id.* at 49. "When read in conjunction with the . . . regulations," the court noted, "it is clear

---

[23] *Contrast Patterson v. Shumate*, 504 U.S. 753, 765 (1992) (construing anti-alienation clause to exclude *plan benefits* from bankruptcy estate); *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376 (1990) (construing anti-alienation provision to preclude constructive trust over *plan benefits*).

that recapturing a fraudulent transfer does not constitute an 'assignment' or 'alienation' prohibited by ERISA." *Id.* at 48; *see also In re Vaughan Co., Realtors*, 493 B.R. 597, 607 (Bankr. D.N.M. 2013) (allowing fraudulent transfer claims).

That distinction is fatal to Defendants' arguments. Yucaipa is not a participant or beneficiary of the plans. Its fraudulent transfers thus have nothing to do with the anti-alienation provision because they do not implicate any attempt to assign or alienate "benefits provided under the plan." 29 U.S.C. § 1056(d)(1).

Defendants argue that the anti-alienation provision protects "plan assets," not just benefits, because assets could be used to pay benefits to participants. LP Defs. Br. 59. That argument proves far too much. ***Any*** claim against a pension plan could reduce the amount of assets available for payment to participants. If that alone were enough to trigger the anti-alienation provision, the provision would operate as a general grant of immunity from all lawsuits whatsoever. Nothing in the anti-alienation provision remotely suggests that extreme intent.

Defendants' reliance on ERISA's preemption provision adds nothing. LP Defs. Br. 59 (citing 29 U.S.C. § 1144(a)). The anti-alienation provision addresses only plan benefits, not investment activities, so no "preemption" issue arises. *Contrast Boggs v. Boggs*, 520 U.S. 833, 839-40 (1997) (finding preemption of state community property laws because they regulated pension ***benefits***). A pension plan cannot purchase securities and then refuse to pay for them on the ground that

73

ERISA preempts generally applicable state contract law.  For essentially the same reasons, a pension plan cannot receive unlawful distributions from its investments and then refuse to return them on the ground that ERISA preempts generally applicable state fraudulent conveyance law.  ERISA simply does not address those *investment* activities.

Defendants insist that ERISA preempts state laws that "significantly affect ERISA plan operation and administration."  LP Defs. Br. 60.  But no court has held that ERISA exempts pension plans from generally applicable state laws that regulate *investment* activities.  *See N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995) (construing ERISA not to preempt generally applicable state law).   Nor do the Trustee's claims impermissibly "interfere with nationally uniform plan administration."  LP Defs. Br. 61.  The Trustee merely seeks to hold the ERISA Defendants responsible for receiving fraudulent transfers in the course of their investment activities to the same extent as all of Yucaipa's other investors.[24]

---

[24] The Third Circuit has suggested that ERISA's anti-assignment provision does not apply to fraudulent transfer claims at all.  *See Velis v. Kardanis*, 949 F.2d 78, 82 (3d Cir. 1991) ("Congress intended to provide protection against the claims of creditors for a person's interest in pension plans, *unless vulnerable to challenge as fraudulent conveyances or voidable preferences*." (emphasis added)); *see also In re Goldschein*, 241 B.R. 370, 379 (Bankr. D. Md. 1999) (similar); *Planned Consumer Mktg. v. Coats & Clark, Inc.*, 522 N.E.2d 30, 38 (N.Y. 1988).   The Court need not go that far.  Even if ERISA's anti-alienation provision precludes a fraudulent transfer claim seeking to recover plan benefits (for example, where a

### E.   State Street's "Mere Conduit" Defense Cannot Be Resolved on a Motion to Dismiss

Defendants argue that the Trustee cannot recover from State Street because it was a "mere conduit," not a transferee.  LP Defs. Br. 62-64.  That affirmative defense should not be resolved on this motion to dismiss.

The Trustee has sufficiently alleged both actual and constructive fraudulent transfer claims against each of the LP Defendants, including State Street.  *See* pp. 37-47, *supra*.  Whether State Street received those transfers as a "mere conduit" is an affirmative defense that "cannot form the basis of a motion to dismiss."  *In re DVI, Inc.*, No. 03-12656, 2008 WL 4239120, at *3 (Bankr. D. Del. Sept. 16, 2008); *see also In re AES Thames, L.L.C.*, No. 11-10334, 2016 WL 11595116, at *4 (Bankr. D. Del. Oct. 28, 2016) (recognizing "mere conduit" theory as affirmative defense); *In re Chuza Oil Co.*, No. 18-11836-T7, 2021 WL 559155, *4 n.8 (Bankr. D.N.M. Feb. 12, 2021) ("Most courts view the conduit defense as an affirmative defense." (collecting cases)).

Defendants argue that State Street must be a "mere conduit" because the Complaint alleges that it received transfers in its capacity as trustee for the American Airlines pension plan.  LP Defs. Br. 62-63.  But those allegations do not conclusively indicate that State Street is a mere conduit.  The agreements

---

beneficiary fraudulently transfers assets to his own account in the plan), it does not reach claims that have nothing to do with benefits at all.

governing State Street's relationship with the American Airlines pension plan are neither described in the Complaint nor otherwise before the Court. *Cf. In re Allen*, No. 13-14348, 2014 WL 1246292, at *9 (Bankr. D.N.J. Mar. 26, 2014) (determining that trust was not transferee after reviewing terms of relevant trust documents). It is not apparent from the face of the Complaint that State Street was contractually bound simply to pass along all the transfers it received. *See In re AstroPower Liquidating Tr.*, No. 05-50867, 2006 WL 1173853, at *1 (Bankr. D. Del. Apr. 19, 2006) (denying motion to dismiss based on argument that defendant was contractually obligated to pass along transfers because that fact was "not apparent from the face of the Amended Complaint").

Indeed, if State Street retained any portion of the transfers, as a fee or otherwise, it would be a transferee at least to that extent. *See In re Rocco Co.*, No. 10-18799, 2014 WL 7404566, at *10 n.2 (D.N.J. Dec. 29, 2014) (noting that conduit defense "likely does not extend" to commissions retained); *In re Moon*, 385 B.R. 541, 553 n.34 (Bankr. S.D.N.Y. 2008) ("[T]he majority rule is that 'where a mere conduit retains possession of the funds, he will be liable up to the amount which he retains.'"); *In re Lenox Healthcare, Inc.*, 343 B.R. 96, 104 (Bankr. D. Del. 2006) (entity not "mere conduit" where transfers reimbursed it for amounts advanced on transferor's behalf).

State Street's "mere conduit" defense thus cannot be resolved at this early stage of proceedings.  In that respect too, the LP Defendants' motion to dismiss should be denied.

## <u>CONCLUSION</u>

Defendants' Motions to Dismiss should be denied.

Dated:  August 5, 2022

Respectfully submitted,

/s/ Seth A. Niederman

Jeffrey H. Zaiger (*pro hac vice*)
Judd A. Linden (*pro hac vice*)
ZAIGER LLC
2187 Atlantic Street, 9th Floor
Stamford, CT 06902
Tel.: (917) 572-7701
jzaiger@zaigerllc.com

Seth A. Niederman (DE Bar No. 4588)
FOX ROTHSCHILD LLP
Citizens Bank Center
919 N. Market Street, Suite 300
Wilmington, DE 19801
Tel.: (302) 654-7444
Fax: (302) 656-8920
sniederman@foxrothschild.com

Douglas J. Pepe (*pro hac vice*)
COHEN AND GRESSER LLP
800 Third Avenue
New York, NY 10022
Tel.: (212) 957-7605
dpepe@cohengresser.com

Steven F. Molo (*pro hac vice*)
Robert K. Kry (*pro hac vice*)
Justin M. Ellis (*pro hac vice*)
Joshua D. Bloom (*pro hac vice*)
Ryan Yeh (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Tel.: (212) 607-8160
rkry@mololamken.com

Jordan A. Rice (*pro hac vice*)
MOLOLAMKEN LLP
300 North LaSalle Street
Chicago, IL  60654
Tel.: (312) 450-6700

*Counsel for the Litigation Trustee and Plan Administrator*

## <u>CERTIFICATE OF COMPLIANCE AND SERVICE</u>

I certify that the foregoing Opposition complies with the Court's standing order dated November 6, 2019 regarding briefing in all cases.  This Opposition has been prepared using 14-point Times New Roman font and contains 18,214 words, excluding the case caption, tables of contents and authorities, signature block, and certificates.

I also certify that on August 5, 2022, I electronically filed the above document and supporting declaration with the Clerk of Court using CM/ECF, which will send electronic notification of the filings to all registered counsel.

August 5, 2022                    */s/ Seth A. Niederman*
                                  Seth A. Niederman (DE Bar No. 4588)